UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__10/26/2020__

FEDERAL TRADE COMMISSION *et al.*,

    Plaintiffs,

    v.

Outreach Calling, Inc., a Nevada corporation, also
dba Market Process Group *et al.*,

    Defendants.

Case No. 1:20-cv-07505(MKV)(GWG)

**STIPULATED ORDER FOR
PERMANENT INJUNCTION AND
MONETARY JUDGMENT AS TO
DEFENDANT THOMAS
BERKENBUSH**

Plaintiffs Federal Trade Commission ("Commission" or "FTC"), the State of New York,

by its Attorney General, Letitia James ("New York"); the Commonwealth of Virginia, by,

through, and at the relation of its Attorney General, Mark R. Herring ("Virginia"); the State of

Minnesota, by its Attorney General, Keith Ellison ("Minnesota"); and Gurbir S. Grewal,

Attorney General of the State of New Jersey, and Paul R. Rodríguez, Acting Director of the New

Jersey Division of Consumer Affairs (collectively, "New Jersey"), filed their Complaint for

Permanent Injunction and Other Equitable Relief ("Complaint"), for a permanent injunction,

civil penalties, and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b), 57b, Section 6 of the

Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15

U.S.C. §§ 6101-6108, and state statutes: (1) N.Y. Exec. Law §§ 63(12), 171-a, 172-d, 173, 173-

a, and 175, and N.Y. Gen. Bus. Law § 349; (2) Virginia Code §§ 57-48 to 57-69; (3) Minnesota

Statutes §§ 8.31, 309.50 to 309.61, 325D.44; and (4) the New Jersey Consumer Fraud Act,

N.J.S.A. 56:8-1 to -20 and the Charitable Registration and Investigation Act, N.J.S.A. 45:17A-18

to -40 (Items 1-4 collectively, "State Statutes").   Plaintiffs and Settling Defendant Berkenbush

stipulate to the entry of this Stipulated Order for Permanent Injunction and Monetary Judgement ("Order") to resolve all matters in dispute in this action between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1.     This Court has jurisdiction over this matter.

2.     The Complaint alleges that Defendants engaged in deceptive acts or practices by making false or misleading claims in charitable solicitations on behalf of at least six purported charities in violation of Section 5 of the FTC Act, 15 U.S.C. § 45; State Statutes; and Sections 310.3(a)(4), 310.3(d)(1) and (3), and 310.4(b)(1)(iii)(a) of the TSR, 16 C.F.R. Parts 310.3(a)(4), 310.3(d)(1) and (3), and 310.4(b)(1)(iii)(a).

3.     The State Plaintiffs adopt as findings of fact each of the allegations set forth in the Complaint.

4.     Settling Defendant neither admits nor denies any of the allegations in the Complaint or the State Plaintiffs' findings of fact, except as specifically stated in this Order. Only for purposes of this action, Settling Defendant admits the facts necessary to establish jurisdiction.

5.     Settling Defendant waives any claim that he may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear his own costs and attorney fees.

6.     Settling Defendant and Plaintiffs waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1

A.     "**Charitable Contribution**" means any donation or gift of money or any other thing of value given for an actual or purported benevolent or charitable purpose.

B.     "**Charitable Organization**" means any entity that has, or is represented to have, a benevolent or charitable purpose or operates for the promotion of social welfare without primary regard to profit, including but not limited to, any entity that purports to act as a charity to support the causes of law enforcement, fraternal order, police, firefighters' or veterans' organizations, cancer or other disease sufferers, or families of missing children.

C.     "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

1.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

2.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

3.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

2

4.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

5.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

6.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

7.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

8.      When the representation, sales practice, or fundraising solicitation targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

D.      "**Defendants**" means the Individual Defendants and all of the Corporate Defendants, individually, collectively, or in any combination.

1.      "**Corporate Defendants**" means Outreach Calling, Inc.; Outsource 3000, Inc.; Production Consulting Corp.; and any successors and assigns.

2.      "**Individual Defendants**" means Thomas Berkenbush, William M. English, Mark Gelvan, and Damian Muziani.

3.      "**Settling Defendant**" means Thomas Berkenbush.

E.      "**Donor**" means any person solicited to make a Charitable Contribution.

F.      "**Fundraising**" means a plan, program, or campaign that is conducted to induce Charitable Contributions by mail, telephone, electronic mail, social media, or any other means.

3

G.      **"Fundraising Services"** means providing assistance in Fundraising, directly or

indirectly, including by advising; assisting; acting as a broker, independent contractor or

fundraising consultant; investing; planning; supplying or arranging for the supply of contact or

Donor lists; arranging for any affiliation between any Person with any Charitable Organization

for the purpose of Fundraising on behalf of the Charitable Organization; or providing or

arranging for the provision of marketing services (e.g. creating or advising on solicitation

materials), customer service, caging, escrow, payment processing, mail processing, or fulfillment

services for Charitable Organizations.

H.      **"Key Person"** means any person, other than a director or officer, whether or not an

employee of the business entity, who: (i) has responsibilities, or exercises powers or influence

over the business entity as a whole, similar to the responsibilities, powers, or influence of

directors and officers; (ii) manages the business entity, or a segment of the business entity that

represents a substantial portion of the activities, assets, income or expenses of the corporation; or

(iii) alone or with others, controls or determines a substantial portion of the business entity's

capital expenditures or operating budget.

I.      **"Person"** means a natural person, an organization or other legal entity, including a

corporation, partnership, sole proprietorship, limited liability company, association, cooperative,

or any other group or combination acting as an entity.

J.      **"State Plaintiffs"** means New York, Virginia, Minnesota, and New Jersey.

4

**ORDER**

## I.  PROHIBITION AGAINST FUNDRAISING FOR CHARITABLE CONTRIBUTIONS

IT IS ORDERED that Settling Defendant is permanently restrained and enjoined from Fundraising for Charitable Contributions or providing Fundraising Services on behalf of Charitable Organizations, whether directly or indirectly.  *Provided that* this prohibition shall not apply to fundraising for political purposes on behalf of a Person that is not a Charitable Organization where donations shall be used to lobby or fund campaigns for or against candidates, ballot initiatives, or legislation, or fund political influence campaigns.

## II.  PROHIBITION AGAINST MISREPRESENTATIONS

IT IS FURTHER ORDERED that Settling Defendant, Settling Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with fundraising for donations other than Charitable Contributions, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      the nature, purpose, or mission of any Person on whose behalf Settling Defendant is fundraising;

B.      the purpose for which any donation will be used;

C.      the percentage or amount of any donation that will go to the Person or a particular program of the Person on whose behalf Settling Defendant is fundraising; and

D.      any other fact material to consumers' decisions concerning any good or service or the

5

solicitation of funds for donations other than Charitable Contributions.

## III. MANDATORY DISCLOSURE THAT DONATIONS SOLICITED ARE NOT CHARITABLE CONTRIBUTIONS

IT IS FURTHER ORDERED that in connection with fundraising for donations other than Charitable Contributions, Settling Defendant and Settling Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from failing to disclose, Clearly and Conspicuously, and prior to or immediately after requesting donations, that any donations provided are not Charitable Contributions and are not deductible for federal and/or state income tax purposes as Charitable Contributions.

## IV. PROHIBITION ON VIOLATING THE TELEMARKETING SALES RULE

IT IS FURTHER ORDERED that Settling Defendant and Settling Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from engaging in, causing others to engage in, or assisting others engaging in violating the Telemarketing Sales Rule, 16 C.F.R. Part 310, a copy of which is attached to this Order as Attachment A.

## V. PROHIBITION ON VIOLATING STATE LAWS

IT IS FURTHER ORDERED that Settling Defendant and Settling Defendant's officers, agents, and employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the sale of any good or service or fundraising on behalf of persons other than a Charitable

6

Organization, are permanently restrained and enjoined from engaging in, causing others to engage in, or assisting others in violating the State Statutes, copies of which are attached to this Order as Attachment B.

## VI. MONETARY JUDGMENT AND PARTIAL SUSPENSION

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of One Million, One Hundred and Thirty-Two Thousand, One Hundred and Fifty-Five Dollars ($1,132,155) is entered jointly in favor of Plaintiffs against Settling Defendant as equitable monetary relief. Partial satisfaction of this judgment shall be made payable to New York on behalf of New York, Virginia, and New Jersey ("Participating Attorneys General") as specified in Section VI.B, below, for distribution as set forth in Sections VII.E and VII.F below.

B.    Settling Defendant is ordered to make payment to New York on behalf of the Participating Attorneys General, in the amount of Five Thousand Dollars ($5,000) on the following schedule:

1.    Settling Defendant is ordered to pay Two Thousand Five Hundred Dollars ($2,500) within 30 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of New York. Settling Defendant stipulates that his undersigned counsel holds this sum in escrow for no purpose other than to make such payment.

2.    Settling Defendant is ordered to pay two additional payments of One Thousand Two Hundred and Fifty Dollars ($1,250) each, for a total of Two Thousand and Five Hundred Dollars ($2,500). Settling Defendant is ordered to pay the first such payment within 240 days of entry of this Order, and the second such payment within 365 days of entry of this Order.

7

C.     In the event that Settling Defendant fails to make the required payments when due under Section VI.B, above, or Plaintiffs are not allowed to retain any such payment:

1.     The entire judgment becomes due in the amount specified in Section VI.A, above, less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

D.     The payments and transfers ordered in Section VI.B, above, must be made by electronic fund transfer in accordance with instructions previously provided by a representative of New York. Ninety-one (91) days after the completion of such payments and all asset transfers set forth in Section VI.B, above, the remainder of the judgment is suspended, subject to the Subsections below.

E.     The Plaintiffs' agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Settling Defendant's sworn financial statement and related documents (collectively, "Financial Representations") submitted to the Plaintiffs, namely:

1.     the Affidavit of Settling Defendant signed on November 25, 2019, including the attachments;

2.     the Financial Statement of Settling Defendant signed on December 10, 2019, including the attachments; and

3.     the additional financial information submitted by email from Settling Defendant's counsel Shaji Eapen, Methfessel & Werbel, P.C., to Commission counsel Patricia Hsue, dated January 16, 2020, including the attachment.

F.     The suspension of the judgment will be lifted as to Settling Defendant if, upon motion by

8

any Plaintiff, the Court finds that Settling Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the Financial Representations identified above.

G.      If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Settling Defendant in the amount specified in Section VI.A. above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint attributable to Settling Defendant), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.   Payments on the judgment shall be made to the New York Attorney General on behalf of the Participating Attorneys General as set forth in Section VII.E below.

H.      Pursuant to applicable state law, the Attorney General of the State of Minnesota is not a participant in or with respect to, and has no control over, the relief reflected in this Section or Section VII.F. below.

## VII.  ADDITIONAL MONETARY PROVISIONS

IT IS FURTHER ORDERED that:

A.      Settling Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of any Plaintiff in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Complaint establish all elements necessary to sustain an action

9

by any Plaintiff pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C.

§ 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Settling Defendant acknowledges that his Taxpayer Identification Numbers (Social

Security Numbers or Employer Identification Numbers), which Settling Defendant previously

submitted to Plaintiffs, may be used for collecting and reporting on any delinquent amount

arising out of this Order, in accordance with 31 U.S.C. §7701.

E.      All payments shall reference FTC v. Outreach Calling, Inc., and be made payable to the

"State of New York", and addressed to the attention of Assistant Attorney General Yael Fuchs,

State of New York, Office of the Attorney General, Charities Bureau, 28 Liberty Street, New

York, New York 10005.

F.      Following approval by this Court, all funds paid to New York on behalf of the

Participating Attorneys General pursuant to this Order shall be distributed to charitable

organizations whose charitable purposes and missions are substantially similar to the purposes

for which the Defendants obtained Charitable Contributions.   The Participating Attorneys

General shall submit a motion and proposed order recommending one or more recipients and the

amount(s) to be paid to such recipients.   Settling Defendant shall have no right to challenge any

recommendations regarding monetary distributions.

## VIII.  DONOR INFORMATION

IT IS FURTHER ORDERED that Settling Defendant and Settling Defendant's officers,

agents, and employees, and all other persons in active concert or participation with any of them,

who receive actual notice of this Order, are permanently restrained and enjoined from directly or

indirectly:

10

A.      disclosing, using, or benefitting from any information about Donors to the Charitable
Organizations that Defendants Fundraised on behalf of or provided Fundraising Services to,
including the name, address, telephone number, email address, social security number, other
identifying information, or any data that enables access to a customer's account (including a
credit card, bank account, or other financial account), that any Defendant obtained prior to entry
of this Order;

B.      failing to destroy such Donor information in all forms in their possession, custody, or
control within 10 days after entry of this Order; and

C.      failing to provide a sworn statement certifying they have destroyed such Donor
information in all forms in their possession, custody, or control within 15 days after entry of this
Order.

## IX. ORDER ACKNOWLEDGMENTS

        IT IS FURTHER ORDERED that Settling Defendant obtain acknowledgments of receipt
of this Order:

A.      Settling Defendant, within 7 days of entry of this Order, must submit to Plaintiff Federal
Trade Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Settling Defendant for any business that
such Defendant, individually or collectively with any other Defendants, is the majority owner or
controls directly or indirectly, must deliver a copy of this Order to:   (1) all principals, officers,
directors, and LLC managers and members; (2) all employees having managerial responsibilities
for Fundraising or Fundraising Services and all agents and representatives who participate in
Fundraising or Fundraising Services; and (3) all principals, officers, directors, and LLC

11

managers and members of any third-party facilitators that Defendants have business relationships with and who are engaged in providing Fundraising or Fundraising Services to the same Charitable Organizations that Defendants provide Fundraising or Fundraising Services to; and (4) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C. From each individual or entity to which Settling Defendant delivered a copy of this Order, Settling Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## X. COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Settling Defendant make timely submissions to the Plaintiff Federal Trade Commission:

A. One year after entry of this Order, Settling Defendant must submit a compliance report, sworn under penalty of perjury:

1. Settling Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of any Plaintiff may use to communicate with Settling Defendant; (b) identify all of Settling Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered or fundraising conducted, the means of advertising, marketing, sales, and fundraising, and the involvement of any other Defendant (which Settling Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how Settling Defendant is in

12

compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.    Additionally, Settling Defendant must: (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.    For 5 years after entry of this Order, Settling Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Settling Defendant must report any change in: (a) any designated point of contact; or (b) the structure of any Corporate Defendant or any entity that such Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, Settling Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Settling Defendant must submit to the Commission notice of the filing of any bankruptcy

13

petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D. Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E. Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Outreach Calling, Inc.

F. Settling Defendant expressly consents to the sharing of any and all documents submitted as part of his compliance reporting to the Commission limited to State Plaintiffs.

## XI. COMPLIANCE REPORTING TO NEW YORK

IT IS FURTHER ORDERED that Settling Defendant make timely submissions of a compliance report to New York every year for 5 years after entry of this Order, the first such report to be submitted within 15 days after entry of this Order and thereafter on or before December 31st of each year, and sworn under penalty of perjury, that includes the following:

A. A list of all entities in which the reporting Defendant has any ownership interest, directly or indirectly, is an officer or director, or is a Key Person, where that entity is involved in the solicitation of funds from any person or entity ("Business Entity"). Such list shall contain the

14

following information: (1) all names through which the Business Entity conducts business; (2) the Business Entity's address; (3) the nature of the relationship between the reporting Individual Defendant and the Business Entity; and (4) names of all principal officers of the Business Entity.

B.     A list of all entities on whose behalf any Business Entity listed in response to Section XI.A solicits funds by mail, telephone, electronic mail, social media, or any other means, either directly or indirectly, including by advising, assisting, acting as a broker, independent contractor, or fundraising consultant, investing, planning, supplying or arranging for the supply of donor lists, or providing or arranging for the provision of marketing services (e.g. creating or advising on solicitation materials), customer service, caging, escrow, payment processing, mail processing, or fulfillment services ("Client Entity"). Such list shall include the following information as it relates to any services provided by the Business Entity: (1) all names through which the Client Entity solicits funds; (2) the Client Entity's address; (3) the names of all principal officers for the Client Entity; (4) the Client Entity's designation under the Internal Revenue Code; and (5) whether the Client Entity files with the Federal Election Commission.

C.     A list of all affiliated, related, or subcontracting entities of any business identified in response to Section XI.A.

D.     A statement averring that all businesses identified in response to Section XI.A in which the reporting Defendant has any ownership interest, directly or indirectly, is an officer or director, or is a Key Person, are in compliance with all applicable FEC regulations and all applicable IRC 527 and 6113 requirements, if any.

E.     Each reporting Defendant shall submit the report with the following certification: "I, [name], hereby certify under penalty of perjury that all the information contained herein is true,

15

correct, and complete to the best of my knowledge as of the time of this signing." In the event any of the Individual Defendants report the same Business Entity in response to XI.A, such Individual Defendants may refer to and/or incorporate by reference the required information from another report submitted pursuant to this section.

F.    Settling Defendant expressly consents to the sharing of any and all documents submitted as part of his compliance reporting to New York with all named Plaintiffs.

## XII. RECORDKEEPING

IT IS FURTHER ORDERED that Settling Defendant must create certain records for 5 years after entry of the Order, and retain each such record for 5 years. Specifically, Settling Defendant for any business that such Defendant, individually or collectively with any other Defendants, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.    accounting records showing the revenues from all goods or services sold or fundraising conducted on behalf of persons other than Charitable Organizations;

B.    personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.    records of all consumer or donor complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.    all records necessary to demonstrate full compliance with each provision of this Order, including all submissions to Plaintiff Federal Trade Commission;

E.    a copy of each unique advertisement, other marketing material, solicitation material

16

including recordings of calls soliciting donations, and any entity-specific do not call lists; and

F.      a copy of each recording of any calls soliciting donations other than Charitable

Contributions for a period of 3 months from the date of the recording.

Settling Defendant shall provide any records created and retained as a result of this Order to any Plaintiff upon request within ten (10) days of the receipt of such request.

## XIII. COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Settling Defendant's compliance with this Order, including the Financial Representations upon which part of the judgment was suspended:

A.      Within 14 days of receipt of a written request from a representative of any Plaintiff, Settling Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying. Plaintiff Federal Trade Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69. Plaintiff States are authorized to obtain discovery, without further leave of court, using any procedures prescribed by the Plaintiff States' respective rules of civil procedure, specifically Article 31 of New York Civil Practice Law and Rules; Rules of Supreme Court of Virginia 4:1 to 4:15; Minnesota Rules of Civil Procedure 26, 30, 31, 33, 34, 36, and 37; and N.J. Court Rules, R. 1:9, 4:13, 4:14, 4:15, 4:17, 4:18, 4:22, and 4:59. Nothing in this Order limits any Plaintiff's lawful demand for documents or other evidence pursuant to applicable law.

B.      For matters concerning this Order, each Plaintiff is authorized to communicate directly

17

with Settling Defendant. Settling Defendant must permit representatives of any Plaintiff to interview any employee or other person affiliated with any Defendant who has agreed to such an interview. The person interviewed may have counsel present.

C. Plaintiffs may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of Plaintiff Federal Trade Commission, any consumer reporting agency must furnish consumer reports concerning Settling Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. §1681b(a)(1).

## XIV. NON-AVOIDANCE

IT IS FURTHER ORDERED that Settling Defendant is hereby enjoined from effecting any change in his or any other entity's form of doing business, organizational identity, organizational structure, affiliations, or management composition as a method of avoiding the terms of this Order. Settling Defendant is further permanently enjoined from effecting any change in his ownership stake in, or management authority over, any entity in which he has such ownership stake or management authority as a method of, or if the effect is, assisting the entity in avoiding the terms of this Order. Settling Defendant is further permanently enjoined from engaging in any conduct prohibited by this Order through or in combination with a family member or any other person.

18

## XV. STATE COURT ENFORCEMENT

IT IS FURTHER ORDERED that without limiting any other provisions of this Order:

A.     The State Plaintiffs shall have the authority to enforce or seek sanctions for violations of this Order independently in their respective state courts and without approval from the other Plaintiffs. Settling Defendant consents to any court of competent jurisdiction in any of the respective states for purposes of enforcing the terms of this Order.

B.     With respect to Minnesota: Settling Defendant shall be individually liable for a civil penalty of up to $25,000 per violation if a court finds, after a motion by the State of Minnesota, through its Attorney General, and pursuant to a hearing as determined by the court, that such Defendant violated any provision of Sections I–V, VIII, and XII of this Order. Plaintiff Minnesota shall have the option to distribute monies it receives pursuant to this Section in an equitable manner under applicable law, including to Minnesota persons injured by such Defendant's acts. Monies paid pursuant to this Section may also be used for settlement administration expenses, including but not limited to payment to a settlement administrator. Any monies received pursuant to this Section that are not distributed to Minnesota persons or used for settlement administration expenses shall be deposited into the State General Fund.

1.     All payments made pursuant to Section XV.B shall be made payable to the "Minnesota Attorney General's Office," and addressed to the attention of Assistant Attorney General Collin Ballou, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1200, St. Paul, Minnesota 55101.

## XVI. RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for

19

purposes of construction, modification, and enforcement of this Order.   Nothing herein shall

prevent the State Plaintiffs from seeking to enforce this Order in accordance with Section XV

above.

**SO ORDERED this** ___26th__ **day of** _____October_____, 2020.

*Mary Kay Vyskocil*

UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFFS:**

**FEDERAL TRADE COMMISSION**

Date:  ___9/14/20___

Patricia B. Hsue, Attorney
Thomas Harris, Attorney
Federal Trade Commission
600 Pennsylvania Ave, NW CC-8528
Washington, DC 20580
202-326-3132/phsue@ftc.gov
202-326-3620/tharris1@ftc.gov
202-326-3395 (fax)

---

The Court finds that the "proposed consent decree is fair and reasonable" and that the "public interest would not be disserved" by the Court entering this order.  *S.E.C. v. Citigroup Glob. Markets, Inc.*, 752 F.3d 285, 294 (2d Cir. 2014).  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 14.

**STATE OF NEW YORK**

_Yael Fuchs_                              Date:   9/11/20

Yael Fuchs, Assistant Attorney General
Peggy Farber, Assistant Attorney General
Sharon Sash, Assistant Attorney General
William Wang, Assistant Attorney General
Office of the New York State Attorney General 28
Liberty Street, 19th Floor
New York, NY 10005
(212) 212-416-8401
yael.fuchs@ag.ny.gov

21

**COMMONWEALTH OF VIRGINIA**

Date: 9/11/20

Stephen J. Sovinsky
Assistant Attorney General
Office of the Attorney General of Virginia
202 North Ninth Street
Richmond, VA 23219
(804) 823-6341
(804) 786-0122
ssovinsky@oag.state.va.us

**KEITH ELLISON**
**ATTORNEY GENERAL**
**STATE OF MINNESOTA**

_Collin R. Ballou_                    Date: _9/10/20_
Collin R. Ballou
Assistant Attorney General
Office of the Minnesota Attorney General
445 Minnesota Street, Suite 1200
St. Paul, MN 55101-2134
(651) 757-1474
(651) 296-7438
collin.ballou@ag.state.mn.us

23

**GURBIR S. GREWAL**
**ATTORNEY GENERAL OF NEW JERSEY**

By: _____          Date: _9/14/20_

Monisha A. Kumar
Deputy Attorney General
Consumer Fraud Prosecution Section
124 Halsey Street – 5th Floor
P.O. Box 45029
(973) 648-3070
(973) 648-4887
Newark, New Jersey 07101

**FOR DEFENDANT:**

Date:   6/11/2020

Shaji M. Eapen
Methfessel & Werbel, P.C.
2025 Lincoln Highway, Suite 200
Edison, NJ 08818
(732) 650-6526
(732) 248-2355
eapen@methwerb.com
Counsel for Defendant Thomas Berkenbush


**DEFENDANT:   Thomas Berkenbush**

Date:  6/9/20

Thomas Berkenbush, Individually

# ATTACHMENT A

# TELEMARKETING SALES RULE

## PART 310—TELEMARKETING SALES RULE 16 CFR PART 310

Sec.
310.1   Scope of regulations in this part.
310.2   Definitions.
310.3   Deceptive telemarketing acts or practices.
310.4   Abusive telemarketing acts or practices.
310.5   Recordkeeping requirements.
310.6   Exemptions.
310.7   Actions by states and private persons.
310.8   Fee for access to the National Do Not Call Registry.
310.9   Severability.

AUTHORITY: 15 U.S.C. 6101–6108.

SOURCE: 75 FR 48516, Aug. 10, 2010, unless otherwise noted.

### § 310.1  Scope of regulations in this part.

This part implements the Telemarketing and Consumer Fraud and Abuse Prevention Act, 15 U.S.C. 6101-6108, as amended.

### § 310.2  Definitions.

(a) *Acquirer* means a business organization, financial institution, or an agent of a business organization or financial institution that has authority from an organization that operates or licenses a credit card system to authorize merchants to accept, transmit, or process payment by credit card through the credit card system for money, goods or services, or anything else of value.

**Federal Trade Commission** §310.2

(b) *Attorney General* means the chief legal officer of a state.

(c) *Billing information* means any data that enables any person to access a customer's or donor's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

(d) *Caller identification service* means a service that allows a telephone subscriber to have the telephone number, and, where available, name of the calling party transmitted contemporaneously with the telephone call, and displayed on a device in or connected to the subscriber's telephone.

(e) *Cardholder* means a person to whom a credit card is issued or who is authorized to use a credit card on behalf of or in addition to the person to whom the credit card is issued.

(f) *Cash-to-cash money transfer* means the electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) transfer of the value of cash received from one person to another person in a different location that is sent by a money transfer provider and received in the form of cash. For purposes of this definition, *money transfer provider* means any person or financial institution that provides cash-to-cash money transfers for a person in the normal course of its business, whether or not the person holds an account with such person or financial institution. The term *cash-to-cash money transfer* includes a remittance transfer, as defined in section 919(g)(2) of the Electronic Fund Transfer Act (''EFTA''), 15 U.S.C. 1693a, that is a cash-to-cash transaction; however it does not include any transaction that is:

(1) An electronic fund transfer as defined in section 903 of the EFTA;

(2) Covered by Regulation E, 12 CFR 1005.20, pertaining to gift cards; or

(3) Subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*

(g) *Cash reload mechanism* is a device, authorization code, personal identification number, or other security measure that makes it possible for a person to convert cash into an electronic (as defined in section 106(2) of the Electronic Signatures in Global and National Commerce Act (15 U.S.C. 7006(2)) form

that can be used to add funds to a general-use prepaid card, as defined in Regulation E, 12 CFR 1005.2, or an account with a payment intermediary. For purposes of this definition, a cash reload mechanism is not itself a general-use prepaid debit card or a swipe reload process or similar method in which funds are added directly onto a person's own general-use prepaid card or account with a payment intermediary.

(h) *Charitable contribution* means any donation or gift of money or any other thing of value.

(i) *Commission* means the Federal Trade Commission.

(j) *Credit* means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment.

(k) *Credit card* means any card, plate, coupon book, or other credit device existing for the purpose of obtaining money, property, labor, or services on credit.

(l) *Credit card sales draft* means any record or evidence of a credit card transaction.

(m) *Credit card system* means any method or procedure used to process credit card transactions involving credit cards issued or licensed by the operator of that system.

(n) *Customer* means any person who is or may be required to pay for goods or services offered through telemarketing.

(o) *Debt relief service* means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

(p) *Donor* means any person solicited to make a charitable contribution.

(q) *Established business relationship* means a relationship between a seller and a consumer based on:

(1) the consumer's purchase, rental, or lease of the seller's goods or services or a financial transaction between the

consumer and seller, within the eighteen (18) months immediately preceding the date of a telemarketing call; or

(2) the consumer's inquiry or application regarding a product or service offered by the seller, within the three (3) months immediately preceding the date of a telemarketing call.

(r) *Free-to-pay conversion* means, in an offer or agreement to sell or provide any goods or services, a provision under which a customer receives a product or service for free for an initial period and will incur an obligation to pay for the product or service if he or she does not take affirmative action to cancel before the end of that period.

(s) *Investment opportunity* means anything, tangible or intangible, that is offered, offered for sale, sold, or traded based wholly or in part on representations, either express or implied, about past, present, or future income, profit, or appreciation.

(t) *Material* means likely to affect a person's choice of, or conduct regarding, goods or services or a charitable contribution.

(u) *Merchant* means a person who is authorized under a written contract with an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(v) *Merchant agreement* means a written contract between a merchant and an acquirer to honor or accept credit cards, or to transmit or process for payment credit card payments, for the purchase of goods or services or a charitable contribution.

(w) *Negative option feature* means, in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer.

(x) *Outbound telephone call* means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution.

(y) *Person* means any individual, group, unincorporated association, limited or general partnership, corporation, or other business entity.

(z) *Preacquired account information* means any information that enables a seller or telemarketer to cause a charge to be placed against a customer's or donor's account without obtaining the account number directly from the customer or donor during the telemarketing transaction pursuant to which the account will be charged.

(aa) *Prize* means anything offered, or purportedly offered, and given, or purportedly given, to a person by chance. For purposes of this definition, chance exists if a person is guaranteed to receive an item and, at the time of the offer or purported offer, the telemarketer does not identify the specific item that the person will receive.

(bb) *Prize promotion* means:

(1) A sweepstakes or other game of chance; or

(2) An oral or written express or implied representation that a person has won, has been selected to receive, or may be eligible to receive a prize or purported prize.

(cc) *Remotely created payment order* means any payment instruction or order drawn on a person's account that is created by the payee or the payee's agent and deposited into or cleared through the check clearing system. The term includes, without limitation, a "remotely created check," as defined in Regulation CC, Availability of Funds and Collection of Checks, 12 CFR 229.2(fff), but does not include a payment order cleared through an Automated Clearinghouse (ACH) Network or subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 1026.

(dd) *Seller* means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration.

(ee) *State* means any state of the United States, the District of Columbia, Puerto Rico, the Northern Mariana Islands, and any territory or possession of the United States.

(ff) *Telemarketer* means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor.

(gg) *Telemarketing* means a plan, program, or campaign which is conducted

**Federal Trade Commission**                                    **§ 310.3**

to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call. The term does not include the solicitation of sales through the mailing of a catalog which: contains a written description or illustration of the goods or services offered for sale; includes the business address of the seller; includes multiple pages of written material or illustrations; and has been issued not less frequently than once a year, when the person making the solicitation does not solicit customers by telephone but only receives calls initiated by customers in response to the catalog and during those calls takes orders only without further solicitation. For purposes of the previous sentence, the term ''further solicitation'' does not include providing the customer with information about, or attempting to sell, any other item included in the same catalog which prompted the customer's call or in a substantially similar catalog.

(hh) *Upselling* means soliciting the purchase of goods or services following an initial transaction during a single telephone call. The upsell is a separate telemarketing transaction, not a continuation of the initial transaction. An ''external upsell'' is a solicitation made by or on behalf of a seller different from the seller in the initial transaction, regardless of whether the initial transaction and the subsequent solicitation are made by the same telemarketer. An ''internal upsell'' is a solicitation made by or on behalf of the same seller as in the initial transaction, regardless of whether the initial transaction and subsequent solicitation are made by the same telemarketer.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77557, Dec. 14, 2015]

**§ 310.3  Deceptive telemarketing acts or practices.**

(a) *Prohibited deceptive telemarketing acts or practices.* It is a deceptive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Before a customer consents to pay [659] for goods or services offered, failing to disclose truthfully, in a clear and conspicuous manner, the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of the sales offer; [660]

(ii) All material restrictions, limitations, or conditions to purchase, receive, or use the goods or services that are the subject of the sales offer;

(iii) If the seller has a policy of not making refunds, cancellations, exchanges, or repurchases, a statement informing the customer that this is the seller's policy; or, if the seller or telemarketer makes a representation about a refund, cancellation, exchange, or repurchase policy, a statement of all material terms and conditions of such policy;

(iv) In any prize promotion, the odds of being able to receive the prize, and, if the odds are not calculable in advance, the factors used in calculating the odds; that no purchase or payment is required to win a prize or to participate in a prize promotion and that any purchase or payment will not increase the person's chances of winning; and the no-purchase/no-payment method of participating in the prize promotion with either instructions on how to participate or an address or local or toll-free telephone number to which customers may write or call for information on how to participate;

---

[659] When a seller or telemarketer uses, or directs a customer to use, a courier to transport payment, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before sending a courier to pick up payment or authorization for payment, or directing a customer to have a courier pick up payment or authorization for payment. In the case of debt relief services, the seller or telemarketer must make the disclosures required by § 310.3(a)(1) before the consumer enrolls in an offered program.

[660] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.,* and Regulation Z, 12 CFR 226, compliance with the disclosure requirements under the Truth in Lending Act and Regulation Z shall constitute compliance with § 310.3(a)(1)(i) of this Rule.

(v) All material costs or conditions to receive or redeem a prize that is the subject of the prize promotion;

(vi) In the sale of any goods or services represented to protect, insure, or otherwise limit a customer's liability in the event of unauthorized use of the customer's credit card, the limits on a cardholder's liability for unauthorized use of a credit card pursuant to 15 U.S.C. 1643;

(vii) If the offer includes a negative option feature, all material terms and conditions of the negative option feature, including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); and

(viii) In the sale of any debt relief service:

(A) the amount of time necessary to achieve the represented results, and to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the time by which the debt relief service provider will make a bona fide settlement offer to each of them;

(B) to the extent that the service may include a settlement offer to any of the customer's creditors or debt collectors, the amount of money or the percentage of each outstanding debt that the customer must accumulate before the debt relief service provider will make a bona fide settlement offer to each of them;

(C) to the extent that any aspect of the debt relief service relies upon or results in the customer's failure to make timely payments to creditors or debt collectors, that the use of the debt relief service will likely adversely affect the customer's creditworthiness, may result in the customer being subject to collections or sued by creditors or debt collectors, and may increase the amount of money the customer owes due to the accrual of fees and interest; and

(D) to the extent that the debt relief service requests or requires the customer to place funds in an account at an insured financial institution, that the customer owns the funds held in the account, the customer may withdraw from the debt relief service at any time without penalty, and, if the customer withdraws, the customer must receive all funds in the account, other than funds earned by the debt relief service in compliance with § 310.4(a)(5)(i)(A) through (C).

(2) Misrepresenting, directly or by implication, in the sale of goods or services any of the following material information:

(i) The total costs to purchase, receive, or use, and the quantity of, any goods or services that are the subject of a sales offer;

(ii) Any material restriction, limitation, or condition to purchase, receive, or use goods or services that are the subject of a sales offer;

(iii) Any material aspect of the performance, efficacy, nature, or central characteristics of goods or services that are the subject of a sales offer;

(iv) Any material aspect of the nature or terms of the seller's refund, cancellation, exchange, or repurchase policies;

(v) Any material aspect of a prize promotion including, but not limited to, the odds of being able to receive a prize, the nature or value of a prize, or that a purchase or payment is required to win a prize or to participate in a prize promotion;

(vi) Any material aspect of an investment opportunity including, but not limited to, risk, liquidity, earnings potential, or profitability;

(vii) A seller's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity;

(viii) That any customer needs offered goods or services to provide protections a customer already has pursuant to 15 U.S.C. 1643;

(ix) Any material aspect of a negative option feature including, but not limited to, the fact that the customer's account will be charged unless the customer takes an affirmative action to avoid the charge(s), the date(s) the charge(s) will be submitted for payment, and the specific steps the customer must take to avoid the charge(s); or

**Federal Trade Commission** §310.3

(x) Any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using such service; the amount of time necessary to achieve the represented results; the amount of money or the percentage of each outstanding debt that the customer must accumulate before the provider of the debt relief service will initiate attempts with the customer's creditors or debt collectors or make a bona fide offer to negotiate, settle, or modify the terms of the customer's debt; the effect of the service on a customer's creditworthiness; the effect of the service on collection efforts of the customer's creditors or debt collectors; the percentage or number of customers who attain the represented results; and whether a debt relief service is offered or provided by a non-profit entity.

(3) Causing billing information to be submitted for payment, or collecting or attempting to collect payment for goods or services or a charitable contribution, directly or indirectly, without the customer's or donor's express verifiable authorization, except when the method of payment used is a credit card subject to protections of the Truth in Lending Act and Regulation Z,[661] or a debit card subject to the protections of the Electronic Fund Transfer Act and Regulation E.[662] Such authorization shall be deemed verifiable if any of the following means is employed:

(i) Express written authorization by the customer or donor, which includes the customer's or donor's signature;[663]

(ii) Express oral authorization which is audio-recorded and made available upon request to the customer or donor, and the customer's or donor's bank or other billing entity, and which evidences clearly both the customer's or donor's authorization of payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction and the customer's or donor's receipt of all of the following information:

(A) An accurate description, clearly and conspicuously stated, of the goods or services or charitable contribution for which payment authorization is sought;

(B) The number of debits, charges, or payments (if more than one);

(C) The date(s) the debit(s), charge(s), or payment(s) will be submitted for payment;

(D) The amount(s) of the debit(s), charge(s), or payment(s);

(E) The customer's or donor's name;

(F) The customer's or donor's billing information, identified with sufficient specificity such that the customer or donor understands what account will be used to collect payment for the goods or services or charitable contribution that are the subject of the telemarketing transaction;

(G) A telephone number for customer or donor inquiry that is answered during normal business hours; and

(H) The date of the customer's or donor's oral authorization; or

(iii) Written confirmation of the transaction, identified in a clear and conspicuous manner as such on the outside of the envelope, sent to the customer or donor via first class mail prior to the submission for payment of the customer's or donor's billing information, and that includes all of the information contained in §§310.3(a)(3)(ii)(A)-(G) and a clear and conspicuous statement of the procedures by which the customer or donor can obtain a refund from the seller or telemarketer or charitable organization in the event the confirmation is inaccurate; provided, however, that this means of authorization shall not be deemed verifiable in instances in which goods or services are offered in a transaction involving a free-to-pay conversion and preacquired account information.

(4) Making a false or misleading statement to induce any person to pay for goods or services or to induce a charitable contribution.

---

[661] Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR part 226.

[662] Electronic Fund Transfer Act, 15 U.S.C. 1693 *et seq.*, and Regulation E, 12 CFR part 205.

[663] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

391

(b) *Assisting and facilitating.* It is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule.

(c) *Credit card laundering.* Except as expressly permitted by the applicable credit card system, it is a deceptive telemarketing act or practice and a violation of this Rule for:

(1) A merchant to present to or deposit into, or cause another to present to or deposit into, the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant;

(2) Any person to employ, solicit, or otherwise cause a merchant, or an employee, representative, or agent of the merchant, to present to or deposit into the credit card system for payment, a credit card sales draft generated by a telemarketing transaction that is not the result of a telemarketing credit card transaction between the cardholder and the merchant; or

(3) Any person to obtain access to the credit card system through the use of a business relationship or an affiliation with a merchant, when such access is not authorized by the merchant agreement or the applicable credit card system.

(d) *Prohibited deceptive acts or practices in the solicitation of charitable contributions.* It is a fraudulent charitable solicitation, a deceptive telemarketing act or practice, and a violation of this Rule for any telemarketer soliciting charitable contributions to misrepresent, directly or by implication, any of the following material information:

(1) The nature, purpose, or mission of any entity on behalf of which a charitable contribution is being requested;

(2) That any charitable contribution is tax deductible in whole or in part;

(3) The purpose for which any charitable contribution will be used;

(4) The percentage or amount of any charitable contribution that will go to a charitable organization or to any particular charitable program;

(5) Any material aspect of a prize promotion including, but not limited to: the odds of being able to receive a prize; the nature or value of a prize; or that a charitable contribution is required to win a prize or to participate in a prize promotion; or

(6) A charitable organization's or telemarketer's affiliation with, or endorsement or sponsorship by, any person or government entity.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77558, Dec. 14, 2015]

### § 310.4 Abusive telemarketing acts or practices.

(a) *Abusive conduct generally.* It is an abusive telemarketing act or practice and a violation of this Rule for any seller or telemarketer to engage in the following conduct:

(1) Threats, intimidation, or the use of profane or obscene language;

(2) Requesting or receiving payment of any fee or consideration for goods or services represented to remove derogatory information from, or improve, a person's credit history, credit record, or credit rating until:

(i) The time frame in which the seller has represented all of the goods or services will be provided to that person has expired; and

(ii) The seller has provided the person with documentation in the form of a consumer report from a consumer reporting agency demonstrating that the promised results have been achieved, such report having been issued more than six months after the results were achieved. Nothing in this Rule should be construed to affect the requirement in the Fair Credit Reporting Act, 15 U.S.C. 1681, that a consumer report may only be obtained for a specified permissible purpose;

(3) Requesting or receiving payment of any fee or consideration from a person for goods or services represented to recover or otherwise assist in the return of money or any other item of value paid for by, or promised to, that person in a previous transaction, until seven (7) business days after such money or other item is delivered to that person. This provision shall not

**Federal Trade Commission** §310.4

apply to goods or services provided to a person by a licensed attorney;

(4) Requesting or receiving payment of any fee or consideration in advance of obtaining a loan or other extension of credit when the seller or telemarketer has guaranteed or represented a high likelihood of success in obtaining or arranging a loan or other extension of credit for a person;

(5)(i) Requesting or receiving payment of any fee or consideration for any debt relief service until and unless:

(A) The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer;

(B) The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor or debt collector; and

(C) To the extent that debts enrolled in a service are renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

(*1*) Bears the same proportional relationship to the total fee for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

(*2*) Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

(ii) Nothing in §310.4(a)(5)(i) prohibits requesting or requiring the customer to place funds in an account to be used for the debt relief provider's fees and for payments to creditors or debt collectors in connection with the renegotiation, settlement, reduction, or other alteration of the terms of payment or other terms of a debt, provided that:

(A) The funds are held in an account at an insured financial institution;

(B) The customer owns the funds held in the account and is paid accrued interest on the account, if any;

(C) The entity administering the account is not owned or controlled by, or in any way affiliated with, the debt relief service;

(D) The entity administering the account does not give or accept any money or other compensation in exchange for referrals of business involving the debt relief service; and

(E) The customer may withdraw from the debt relief service at any time without penalty, and must receive all funds in the account, other than funds earned by the debt relief service in compliance with §310.4(a)(5)(i)(A) through (C), within seven (7) business days of the customer's request.

(6) Disclosing or receiving, for consideration, unencrypted consumer account numbers for use in telemarketing; provided, however, that this paragraph shall not apply to the disclosure or receipt of a customer's or donor's billing information to process a payment for goods or services or a charitable contribution pursuant to a transaction;

(7) Causing billing information to be submitted for payment, directly or indirectly, without the express informed consent of the customer or donor. In any telemarketing transaction, the seller or telemarketer must obtain the express informed consent of the customer or donor to be charged for the goods or services or charitable contribution and to be charged using the identified account. In any telemarketing transaction involving preacquired account information, the requirements in paragraphs (a)(7)(i) through (ii) of this section must be met to evidence express informed consent.

(i) In any telemarketing transaction involving preacquired account information and a free-to-pay conversion feature, the seller or telemarketer must:

(A) Obtain from the customer, at a minimum, the last four (4) digits of the account number to be charged;

(B) Obtain from the customer his or her express agreement to be charged for the goods or services and to be

393

charged using the account number pursuant to paragraph (a)(7)(i)(A) of this section; and,

(C) Make and maintain an audio recording of the entire telemarketing transaction.

(ii) In any other telemarketing transaction involving preacquired account information not described in paragraph (a)(7)(i) of this section, the seller or telemarketer must:

(A) At a minimum, identify the account to be charged with sufficient specificity for the customer or donor to understand what account will be charged; and

(B) Obtain from the customer or donor his or her express agreement to be charged for the goods or services and to be charged using the account number identified pursuant to paragraph (a)(7)(ii)(A) of this section;

(8) Failing to transmit or cause to be transmitted the telephone number, and, when made available by the telemarketer's carrier, the name of the telemarketer, to any caller identification service in use by a recipient of a telemarketing call; provided that it shall not be a violation to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller or charitable organization on behalf of which a telemarketing call is placed, and the seller's or charitable organization's customer or donor service telephone number, which is answered during regular business hours;

(9) Creating or causing to be created, directly or indirectly, a remotely created payment order as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing; or

(10) Accepting from a customer or donor, directly or indirectly, a cash-to-cash money transfer or cash reload mechanism as payment for goods or services offered or sold through telemarketing or as a charitable contribution solicited or sought through telemarketing.

(b) *Pattern of calls.* (1) It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in, or for a seller

to cause a telemarketer to engage in, the following conduct:

(i) Causing any telephone to ring, or engaging any person in telephone conversation, repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number;

(ii) Denying or interfering in any way, directly or indirectly, with a person's right to be placed on any registry of names and/or telephone numbers of persons who do not wish to receive outbound telephone calls established to comply with paragraph (b)(1)(iii)(A) of this section, including, but not limited to, harassing any person who makes such a request; hanging up on that person; failing to honor the request; requiring the person to listen to a sales pitch before accepting the request; assessing a charge or fee for honoring the request; requiring a person to call a different number to submit the request; and requiring the person to identify the seller making the call or on whose behalf the call is made;

(iii) Initiating any outbound telephone call to a person when:

(A) That person previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered or made on behalf of the charitable organization for which a charitable contribution is being solicited; or

(B) That person's telephone number is on the "do-not-call" registry, maintained by the Commission, of persons who do not wish to receive outbound telephone calls to induce the purchase of goods or services unless the seller or telemarketer:

(*1*) Can demonstrate that the seller has obtained the express agreement, in writing, of such person to place calls to that person. Such written agreement shall clearly evidence such person's authorization that calls made by or on behalf of a specific party may be placed to that person, and shall include the telephone number to which the calls may be placed and the signature[664] of that person; or

---

[664] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a

**Federal Trade Commission**  §310.4

(*2*) Can demonstrate that the seller has an established business relationship with such person, and that person has not stated that he or she does not wish to receive outbound telephone calls under paragraph (b)(1)(iii)(A) of this section; or

(iv) Abandoning any outbound telephone call. An outbound telephone call is "abandoned" under this section if a person answers it and the telemarketer does not connect the call to a sales representative within two (2) seconds of the person's completed greeting.

(v) Initiating any outbound telephone call that delivers a prerecorded message, other than a prerecorded message permitted for compliance with the call abandonment safe harbor in §310.4(b)(4)(iii), unless:

(A) In any such call to induce the purchase of any good or service, the seller has obtained from the recipient of the call an express agreement, in writing, that:

(i) The seller obtained only after a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person;

(ii) The seller obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service;

(iii) Evidences the willingness of the recipient of the call to receive calls that deliver prerecorded messages by or on behalf of a specific seller; and

(iv) Includes such person's telephone number and signature;[665] and

(B) In any such call to induce the purchase of any good or service, or to induce a charitable contribution from a member of, or previous donor to, a nonprofit charitable organization on whose behalf the call is made, the seller or telemarketer:

(i) Allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call; and

(ii) Within two (2) seconds after the completed greeting of the person called, plays a prerecorded message that promptly provides the disclosures required by §310.4(d) or (e), followed immediately by a disclosure of one or both of the following:

(A) In the case of a call that could be answered in person by a consumer, that the person called can use an automated interactive voice and/or keypress-activated opt-out mechanism to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A) at any time during the message. The mechanism must:

(1) Automatically add the number called to the seller's entity-specific Do Not Call list;

(2) Once invoked, immediately disconnect the call; and

(3) Be available for use at any time during the message; and

(B) In the case of a call that could be answered by an answering machine or voicemail service, that the person called can use a toll-free telephone number to assert a Do Not Call request pursuant to §310.4(b)(1)(iii)(A). The number provided must connect directly to an automated interactive voice or keypress-activated opt-out mechanism that:

(1) Automatically adds the number called to the seller's entity-specific Do Not Call list;

(2) Immediately thereafter disconnects the call; and

(3) Is accessible at any time throughout the duration of the telemarketing campaign; and

(iii) Complies with all other requirements of this part and other applicable federal and state laws.

(C) Any call that complies with all applicable requirements of this paragraph (v) shall not be deemed to violate §310.4(b)(1)(iv) of this part.

(D) This paragraph (v) shall not apply to any outbound telephone call that delivers a prerecorded healthcare message made by, or on behalf of, a covered entity or its business associate, as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.

(2) It is an abusive telemarketing act or practice and a violation of this Rule for any person to sell, rent, lease, purchase, or use any list established to comply with §310.4(b)(1)(iii)(A), or

---

valid signature under applicable federal law or state contract law.

[665] For purposes of this Rule, the term "signature" shall include an electronic or digital form of signature, to the extent that such form of signature is recognized as a valid signature under applicable federal law or state contract law.

maintained by the Commission pursuant to § 310.4(b)(1)(iii)(B), for any purpose except compliance with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on such lists.

(3) A seller or telemarketer will not be liable for violating § 310.4(b)(1)(ii) and (iii) if it can demonstrate that, as part of the seller's or telemarketer's routine business practice:

(i) It has established and implemented written procedures to comply with § 310.4(b)(1)(ii) and (iii);

(ii) It has trained its personnel, and any entity assisting in its compliance, in the procedures established pursuant to § 310.4(b)(3)(i);

(iii) The seller, or a telemarketer or another person acting on behalf of the seller or charitable organization, has maintained and recorded a list of telephone numbers the seller or charitable organization may not contact, in compliance with § 310.4(b)(1)(iii)(A);

(iv) The seller or a telemarketer uses a process to prevent telemarketing to any telephone number on any list established pursuant to § 310.4(b)(3)(iii) or 310.4(b)(1)(iii)(B), employing a version of the "do-not-call" registry obtained from the Commission no more than thirty-one (31) days prior to the date any call is made, and maintains records documenting this process;

(v) The seller or a telemarketer or another person acting on behalf of the seller or charitable organization, monitors and enforces compliance with the procedures established pursuant to § 310.4(b)(3)(i); and

(vi) Any subsequent call otherwise violating paragraph (b)(1)(ii) or (iii) of this section is the result of error and not of failure to obtain any information necessary to comply with a request pursuant to paragraph (b)(1)(iii)(A) of this section not to receive further calls by or on behalf of a seller or charitable organization.

(4) A seller or telemarketer will not be liable for violating § 310.4(b)(1)(iv) if:

(i) The seller or telemarketer employs technology that ensures abandonment of no more than three (3) percent of all calls answered by a person, measured over the duration of a single calling campaign, if less than 30 days, or separately over each successive 30-day period or portion thereof that the campaign continues.

(ii) The seller or telemarketer, for each telemarketing call placed, allows the telephone to ring for at least fifteen (15) seconds or four (4) rings before disconnecting an unanswered call;

(iii) Whenever a sales representative is not available to speak with the person answering the call within two (2) seconds after the person's completed greeting, the seller or telemarketer promptly plays a recorded message that states the name and telephone number of the seller on whose behalf the call was placed[666]; and

(iv) The seller or telemarketer, in accordance with § 310.5(b)-(d), retains records establishing compliance with § 310.4(b)(4)(i)-(iii).

(c) *Calling time restrictions.* Without the prior consent of a person, it is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to engage in outbound telephone calls to a person's residence at any time other than between 8:00 a.m. and 9:00 p.m. local time at the called person's location.

(d) *Required oral disclosures in the sale of goods or services.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer in an outbound telephone call or internal or external upsell to induce the purchase of goods or services to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the seller;

(2) That the purpose of the call is to sell goods or services;

(3) The nature of the goods or services; and

(4) That no purchase or payment is necessary to be able to win a prize or participate in a prize promotion if a prize promotion is offered and that any purchase or payment will not increase the person's chances of winning. This disclosure must be made before or in conjunction with the description of the prize to the person called. If requested

---

[666] This provision does not affect any seller's or telemarketer's obligation to comply with relevant state and federal laws, including but not limited to the TCPA, 47 U.S.C. 227, and 47 CFR part 64.1200.

by that person, the telemarketer must disclose the no-purchase/no-payment entry method for the prize promotion; provided, however, that, in any internal upsell for the sale of goods or services, the seller or telemarketer must provide the disclosures listed in this section only to the extent that the information in the upsell differs from the disclosures provided in the initial telemarketing transaction.

(e) *Required oral disclosures in charitable solicitations.* It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer, in an outbound telephone call to induce a charitable contribution, to fail to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call, the following information:

(1) The identity of the charitable organization on behalf of which the request is being made; and

(2) That the purpose of the call is to solicit a charitable contribution.

[75 FR 48516, Aug. 10, 2010, as amended at 76 FR 58716, Sept. 22, 2011; 80 FR 77559, Dec. 14, 2015]

### §310.5  Recordkeeping requirements.

(a) Any seller or telemarketer shall keep, for a period of 24 months from the date the record is produced, the following records relating to its telemarketing activities:

(1) All substantially different advertising, brochures, telemarketing scripts, and promotional materials;

(2) The name and last known address of each prize recipient and the prize awarded for prizes that are represented, directly or by implication, to have a value of $25.00 or more;

(3) The name and last known address of each customer, the goods or services purchased, the date such goods or services were shipped or provided, and the amount paid by the customer for the goods or services;[667]

(4) The name, any fictitious name used, the last known home address and

telephone number, and the job title(s) for all current and former employees directly involved in telephone sales or solicitations; provided, however, that if the seller or telemarketer permits fictitious names to be used by employees, each fictitious name must be traceable to only one specific employee; and

(5) All verifiable authorizations or records of express informed consent or express agreement required to be provided or received under this Rule.

(b) A seller or telemarketer may keep the records required by §310.5(a) in any form, and in the same manner, format, or place as they keep such records in the ordinary course of business. Failure to keep all records required by §310.5(a) shall be a violation of this Rule.

(c) The seller and the telemarketer calling on behalf of the seller may, by written agreement, allocate responsibility between themselves for the recordkeeping required by this Section. When a seller and telemarketer have entered into such an agreement, the terms of that agreement shall govern, and the seller or telemarketer, as the case may be, need not keep records that duplicate those of the other. If the agreement is unclear as to who must maintain any required record(s), or if no such agreement exists, the seller shall be responsible for complying with §§310.5(a)(1)–(3) and (5); the telemarketer shall be responsible for complying with §310.5(a)(4).

(d) In the event of any dissolution or termination of the seller's or telemarketer's business, the principal of that seller or telemarketer shall maintain all records as required under this section. In the event of any sale, assignment, or other change in ownership of the seller's or telemarketer's business, the successor business shall maintain all records required under this section.

### §310.6  Exemptions.

(a) Solicitations to induce charitable contributions via outbound telephone calls are not covered by §310.4(b)(1)(iii)(B) of this Rule.

(b) The following acts or practices are exempt from this Rule:

---

[667] For offers of consumer credit products subject to the Truth in Lending Act, 15 U.S.C. 1601 *et seq.*, and Regulation Z, 12 CFR 226, compliance with the recordkeeping requirements under the Truth in Lending Act, and Regulation Z, shall constitute compliance with §310.5(a)(3) of this Rule.

(1) The sale of pay-per-call services subject to the Commission's Rule entitled "Trade Regulation Rule Pursuant to the Telephone Disclosure and Dispute Resolution Act of 1992," 16 CFR part 308, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(2) The sale of franchises subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Franchising," ("Franchise Rule") 16 CFR part 436, and the sale of business opportunities subject to the Commission's Rule entitled "Disclosure Requirements and Prohibitions Concerning Business Opportunities," ("Business Opportunity Rule") 16 CFR part 437, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(3) Telephone calls in which the sale of goods or services or charitable solicitation is not completed, and payment or authorization of payment is not required, until after a face-to-face sales or donation presentation by the seller or charitable organization, *provided*, however, that this exemption does not apply to the requirements of §§ 310.4(a)(1), (a)(7), (b), and (c);

(4) Telephone calls initiated by a customer or donor that are not the result of any solicitation by a seller, charitable organization, or telemarketer, *provided*, however, that this exemption does not apply to any instances of upselling included in such telephone calls;

(5) Telephone calls initiated by a customer or donor in response to an advertisement through any medium, other than direct mail solicitation, *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer or donor in response to an advertisement relating to investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or advertisements involving offers for goods or services described in § 310.3(a)(1)(vi) or § 310.4(a)(2) through (4);

(ii) The requirements of § 310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls;

(6) Telephone calls initiated by a customer or donor in response to a direct mail solicitation, including solicitations via the U.S. Postal Service, facsimile transmission, electronic mail, and other similar methods of delivery in which a solicitation is directed to specific address(es) or person(s), that clearly, conspicuously, and truthfully discloses all material information listed in § 310.3(a)(1), for any goods or services offered in the direct mail solicitation, and that contains no material misrepresentation regarding any item contained in § 310.3(d) for any requested charitable contribution; *provided*, however, that this exemption does not apply to:

(i) Calls initiated by a customer in response to a direct mail solicitation relating to prize promotions, investment opportunities, debt relief services, business opportunities other than business arrangements covered by the Franchise Rule or Business Opportunity Rule, or goods or services described in § 310.3(a)(1)(vi) or § 310.4(a)(2) through (4);

(ii) The requirements of § 310.4(a)(9) or (10); or

(iii) Any instances of upselling included in such telephone calls; and

(7) Telephone calls between a telemarketer and any business to induce the purchase of goods or services or a charitable contribution by the business, except calls to induce the retail sale of nondurable office or cleaning supplies; *provided*, however, that §§ 310.4(b)(1)(iii)(B) and 310.5 shall not apply to sellers or telemarketers of nondurable office or cleaning supplies.

[75 FR 48516, Aug. 10, 2010, as amended at 80 FR 77559, Dec. 14, 2015]

§ 310.7 **Actions by states and private persons.**

(a) Any attorney general or other officer of a state authorized to bring an action under the Telemarketing and Consumer Fraud and Abuse Prevention Act, and any private person who brings an action under that Act, shall serve written notice of its action on the Commission, if feasible, prior to its initiating an action under this Rule. The notice shall be sent to

**Federal Trade Commission** §310.8

the Office of the Director, Bureau of Consumer Protection, Federal Trade Commission, Washington, DC 20580, and shall include a copy of the state's or private person's complaint and any other pleadings to be filed with the court. If prior notice is not feasible, the state or private person shall serve the Commission with the required notice immediately upon instituting its action.

(b) Nothing contained in this Section shall prohibit any attorney general or other authorized state official from proceeding in state court on the basis of an alleged violation of any civil or criminal statute of such state.

**§310.8 Fee for access to the National Do Not Call Registry.**

(a) It is a violation of this Rule for any seller to initiate, or cause any telemarketer to initiate, an outbound telephone call to any person whose telephone number is within a given area code unless such seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to telephone numbers within that area code that are included in the National Do Not Call Registry maintained by the Commission under §310.4(b)(1)(iii)(B); provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do Not Call Registry for any other purpose.

(b) It is a violation of this Rule for any telemarketer, on behalf of any seller, to initiate an outbound telephone call to any person whose telephone number is within a given area code unless that seller, either directly or through another person, first has paid the annual fee, required by §310.8(c), for access to the telephone numbers within that area code that are included in the National Do Not Call Registry; provided, however, that such payment is not necessary if the seller initiates, or causes a telemarketer to initiate, calls solely to persons pursuant to §§310.4(b)(1)(iii)(B)(i) or (ii), and the seller does not access the National Do

Not Call Registry for any other purpose.

(c) The annual fee, which must be paid by any person prior to obtaining access to the National Do Not Call Registry, is $63 for each area code of data accessed, up to a maximum of $17,406; *provided*, however, that there shall be no charge to any person for accessing the first five area codes of data, and *provided further*, that there shall be no charge to any person engaging in or causing others to engage in outbound telephone calls to consumers and who is accessing area codes of data in the National Do Not Call Registry if the person is permitted to access, but is not required to access, the National Do Not Call Registry under this Rule, 47 CFR 64.1200, or any other Federal regulation or law. No person may participate in any arrangement to share the cost of accessing the National Do Not Call Registry, including any arrangement with any telemarketer or service provider to divide the costs to access the registry among various clients of that telemarketer or service provider.

(d) Each person who pays, either directly or through another person, the annual fee set forth in paragraph (c) of this section, each person excepted under paragraph (c) from paying the annual fee, and each person excepted from paying an annual fee under §310.4(b)(1)(iii)(B), will be provided a unique account number that will allow that person to access the registry data for the selected area codes at any time for the twelve month period beginning on the first day of the month in which the person paid the fee (''the annual period''). To obtain access to additional area codes of data during the first six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $63 for each additional area code of data not initially selected. To obtain access to additional area codes of data during the second six months of the annual period, each person required to pay the fee under paragraph (c) of this section must first pay $32 for each additional area code of data not initially selected. The payment of the additional fee will permit the person to access the additional area codes of data for the remainder of the annual period.

(e) Access to the National Do Not Call Registry is limited to telemarketers, sellers, others engaged in or causing others to engage in telephone calls to consumers, service providers acting on behalf of such persons, and any government agency that has law enforcement authority. Prior to accessing the National Do Not Call Registry, a person must provide the identifying information required by the operator of the registry to collect the fee, and must certify, under penalty of law, that the person is accessing the registry solely to comply with the provisions of this Rule or to otherwise prevent telephone calls to telephone numbers on the registry. If the person is accessing the registry on behalf of sellers, that person also must identify each of the sellers on whose behalf it is accessing the registry, must provide each seller's unique account number for access to the national registry, and must certify, under penalty of law, that the sellers will be using the information gathered from the registry solely to comply with the provisions of this Rule or otherwise to prevent telephone calls to telephone numbers on the registry.

[75 FR 48516, Aug. 10, 2010; 75 FR 51934, Aug. 24, 2010, as amended at 77 FR 51697, Aug. 27, 2012; 78 FR 53643, Aug. 30, 2013; 79 FR 51478, Aug. 29, 2014; 80 FR 77560, Dec. 14, 2016; 81 FR 59845, Aug. 31, 2016; 82 FR 39534, Aug. 21, 2017; 83 FR 46640, Sept. 14, 2018]

**§ 310.9  Severability.**

The provisions of this Rule are separate and severable from one another. If any provision is stayed or determined to be invalid, it is the Commission's intention that the remaining provisions shall continue in effect.

# ATTACHMENT B

# STATE LAWS



## *NY CLS Exec, Art. 7-A Note*

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

## Article 7-A Solicitation and Collection of Funds for Charitable Purposes

## History

Add, L 1977, ch 669, § 5, eff Oct 1, 1977.

Annotations

## Notes to Decisions

1. Under former Social Service Law § 481

2. Under former Social Service Law § 482

3. Under former Social Service Law § 482-a

4. Under former Social Service Law § 482-c

5. Under former Social Service Law § 482-f

6. Under former Social Service Law § 482-i

### 1. Under former Social Service Law § 481

An organization which rendered free legal aid to persons threatened with denaturalization and deportation was a charitable organization subject to the regulation of solicitation of funds. *Green v Javits, 7 Misc. 2d 312, 166 N.Y.S.2d 198, 1957 N.Y. Misc. LEXIS 2970 (N.Y. Sup. Ct.)*, aff'd, *4 A.D.2d 869, 167 N.Y.S.2d 431, 1957 N.Y. App. Div. LEXIS 4248 (N.Y. App. Div. 1st Dep't 1957)*.

This Article (§§ 481–483-a) sets up a detailed statutory scheme for regulating solicitation of funds from the public covering all organizations whether they are incorporated or not. *Waldemar Medical Research Foundation, Inc. v Margolies, 45 Misc. 2d 887, 257 N.Y.S.2d 991, 1965 N.Y. Misc. LEXIS 2155 (N.Y. Sup. Ct. 1965)*, aff'd, *25 A.D.2d 444, 267 N.Y.S.2d 483, 1966 N.Y. App. Div. LEXIS 5165 (N.Y. App. Div. 2d Dep't 1966)*.

### 2. Under former Social Service Law § 482

Failure of a County Committee for Freedom Riders to register under this section, as ground for excluding it from use of a school building for a meeting to raise funds, was beside the point where there was no indication that proceeds of the meeting would equal or even closely approach $10,000 and thereby take the organization out of the exemption provisions of § 482-a. *Dohrenwend v Board of Education, 227 N.Y.S.2d 505, 1962 N.Y. Misc. LEXIS 4119 (N.Y. Sup. Ct. 1962)*.

### 3. Under former Social Service Law § 482-a

A broad view of the legislative concept of religious organization and the lack of requirement for organization under Religious Corporation L by every organization engaged in religious activity are reflected in *EPTL § 8-1.1(B)*, and Social Welfare L § 482-a. *America Press, Inc. v Lewisohn, 74 Misc. 2d 562, 345 N.Y.S.2d 396, 1973 N.Y. Misc. LEXIS 1832 (N.Y. Sup. Ct. 1973)*, aff'd, *48 A.D.2d 798, 372 N.Y.S.2d 194, 1975 N.Y. App. Div. LEXIS 9984 (N.Y. App. Div. 1st Dep't 1975)*.

### 4. Under former Social Service Law § 482-c

After the Attorney General had obtained an order for an examination of the American Committee for the Protection of the Foreign Born, a motion of the committee to vacate the order on the ground that it was not a charitable organization should not have been denied without a hearing at which it could be determined whether there was reason to believe that the organization was or purported to be a charitable organization. *Green v Javits, 1 A.D.2d 342, 149 N.Y.S.2d 854, 1956 N.Y. App. Div. LEXIS 5848 (N.Y. App. Div. 1st Dep't 1956)*.

Where the representatives of a charity use fraudulent means in fund raising, divert funds collected to their own use, or even where their alleged charity is a sham, this section, rather than *Executive Law § 3*, subd 12, is the appropriate one for obtaining an injunction against them. *Lefkowitz v Burden, 22 A.D.2d 881, 254 N.Y.S.2d 943, 1964 N.Y. App. Div. LEXIS 2523 (N.Y. App. Div. 1st Dep't 1964)*.

### 5. Under former Social Service Law § 482-f

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Ops St Compt File #452.

### 6. Under former Social Service Law § 482-i

A charge of 45¢ for every dollar collected by the defendant, a professional fund raiser, was grossly excessive; and, in the absence of special circumstances, an injunction would ordinarily be granted against him. However, since the defendant's license had expired, an injunction would serve no useful purpose. *People v Stone, 24 Misc. 2d 884, 197 N.Y.S.2d 380, 1959 N.Y. Misc. LEXIS 2362 (N.Y. Sup. Ct. 1959)*.

## Opinion Notes

**Agency Opinions**

**1. Under former Social Service Law § 481**

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

NY CLS Exec, Art. 7-A Note

#### 2. Under former Social Service Law § 482

This section exempts from the registration requirements certain organizations which are fraternal, patriotic and social organizations when solicitation of contributions is confined to membership. That the funds are applied exclusively for the purposes of the corporation and none are allocated for salaries or expenses does not exempt a corporation from the provisions of this section. 1954 NY Ops Atty Gen 87 (informal).

The Young Men's Hebrew Association is a charitable organization required to register with the state department of social welfare. 1954 NY Ops Atty Gen 104 (informal).

The American National Red Cross, as a quasi-official federal agency created by act of Congress to carry out an international treaty concerning aid to the armed forces in time of war, is not subject to the New York statute regulating solicitations of funds for charitable purposes. 1954 N.Y. Op. Att'y Gen. No. 201.

A bona fide labor union does not come within the coverage of Article 10-A of the Social Welfare Law and accordingly is not required to register thereunder prior to soliciting moneys from the public by means of a newspaper ad for a strike fund. 1955 N.Y. Op. Att'y Gen. No. 219.

The New York State Sheriffs' Association, Inc. is not a charitable organization within the meaning of the term as used in Article 10-A and therefore is not required to register with the Social Welfare Department. 1956 N.Y. Op. Att'y Gen. No. 214.

The Philadelphia Bible Institute and Christian Association for the Blind, Inc., are exempted by Social Welfare Law § 482-a-1 from registering as a charitable organization. 1957 NY Ops Atty Gen March 6.

A charitable organization is conducting a solicitation of contributions within the meaning of this section when it engages a commercial firm to produce and conduct a contest in connection with a TV show. 1957 NY Ops Atty Gen Nov 6.

The Thomas Paine Foundation is exempted by Social Welfare Law § 484(a) from registering as a charitable organization with the State Department of Social Welfare. 1957 NY Ops Atty Gen Jan 7.

A society which provides in its constitution for designating a person as "a benefactor" or "patron" when he contributes a certain sum to the organization is soliciting funds within the meaning or this section and is required to register with the Department of Social Welfare. 1957 NY Ops Atty Gen Jan 28.

Whether solicitation of advertising for a publication issued by a charitable organization constitutes solicitation of contributions within the meaning of Article 10-A of the Social Welfare Law depends upon whether the overriding motivation of the transaction was to aid a charitable cause. Solicitations from or sales to persons without the State, made by charitable organizations located within the State, are not solicitations within this section; however, solicitations over television or radio might well be made to persons in this State, although purportedly made to persons outside this State. 1958 NY Ops Atty Gen Feb 6.

The Citizens Foundation, Inc., a patriotic organization is exempt from the application of this article because it confines its solicitations of contributions to its membership. 1958 NY Ops Atty Gen Feb 6.

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

#### 3. Under former Social Service Law § 482-a

This section exempts from the registration requirements certain organizations which are fraternal, patriotic and social organizations when solicitation of contributions is confined to membership. That the funds are applied exclusively for the purposes of the corporation and none are allocated for salaries or expenses does not exempt a corporation from the provisions of this section. 1954 NY Ops Atty Gen 87 (informal).

NY CLS Exec, Art. 7-A Note

A fraternal organization which confines its solicitation of contributions solely to its membership is not required to register with the state department of Social Welfare. 1954 NY Ops Atty Gen 97 (informal).

The Young Men's Hebrew Association is a charitable organization required to register with the state department of social welfare. 1954 NY Ops Atty Gen 104 (informal).

This section exempts not only organizations incorporated under the Religious Corporations Law but also other religious agencies or organizations. 1957 NY Ops Atty Gen July 3.

An "in plant" organization, i.e., an organization which is set up within a plant, shop or office for the purpose of creating a charity fund consisting of contributions received from members or employees of such plant, shop or office should register with the Department of Social Welfare. 1958 NY Ops Atty Gen May 22 (informal).

A charitable organization, whose officers are paid for services rendered to the organization in soliciting funds, is not exempt from registration with the State Department of Social Welfare. 1962 NY Ops Atty Gen June 11.

An organization which serves people of a particular religious faith as members of that faith, and whose services indicate a religious pattern, is a religious agency or organization within the meaning of this section and exempt from the requirements of registration and reporting. 1962 NY Ops Atty Gen July 20.

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

### 4. Under former Social Service Law § 482-b

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

### 5. Under former Social Service Law § 482-c

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

### 6. Under former Social Service Law § 482-e

A public relations firm which guides a charitable organization on publicity and writes news releases is not a professional fund raiser. 1955 N.Y. Op. Att'y Gen. No. 220.

A "distributor" whose operations consist merely in receiving lists of distributees for the purpose of collecting donations is not a professional fund raiser. 1957 NY Ops Atty Gen June 14.

### 7. Under former Social Service Law § 482-f

A professional fund raiser who conducts campaigns exclusively for churches and institutions controlled directly by a church is not required to register or post a bond. 1954 NY Ops Atty Gen 86 (informal).

A "distributor" whose operations consist merely in receiving lists of distributees for the purpose of collecting donations is not a professional fund raiser. 1957 NY Ops Atty Gen June 14.

### 8. Under former Social Service Law § 482-j

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

### 9. Under former Social Service Law § 483

Board of governors of public hospital has no power to contract indebtedness to obtain funds for hospital purposes. It does have authority to employ professional fund raisers. 1965 Op St Compt File #452.

## Research References & Practice Aids

**Cross References:**

This article referred to in §§ 171-a, 172, 172-a, 172-c, 172-d, 174, 174-a, 174-b, 175, 175-a, 176, 177; CLS *EPTL § 8-1.4* .

**Jurisprudences:**

 18 NY Jur 2d Charities §§ 63, 86, 94, 95 .

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.



## *NY CLS Exec § 171*

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

## § 171. [Renumbered]

## History

Add, L 1977, ch 669, § 5; renumbered § 171–a, L 1986, ch 440, § 1, eff July 1, 1987.

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

End of Document



## NY CLS Exec § 171-a

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 171-a. Definitions

The following words and phrases as used in this article shall have the following meanings unless a different meaning is required by the context.

**1.** "Charitable organizations." Any benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such or law enforcement support organization as defined in subdivision eleven of this section.

**2.** "Contribution." The promise or grant of any money or property of any kind or value, whether or not in combination with the sale of goods, services, entertainment or any other thing of value, including a grant or other financial assistance from any agency of government, except payments by members of any organization for membership, for services or other benefit, other than the right to vote for directors or trustees, elect officers, or hold offices.

**3.** "Person." Any individual, organization, group, association, partnership, corporation, or any combination of them.

**4.** "Professional fund raiser." Any person who directly or indirectly, by contract, including but not limited to sub-contract, letter or other agreement or other engagement on any basis, for compensation or other consideration (a) plans, manages, conducts, carries on, or assists in connection with a charitable solicitation or who employs or otherwise engages on any basis another person to solicit from persons in this state for or on behalf of any charitable organization or any other person, or who engages in the business of, or holds himself out to persons in this state as independently engaged in the business of soliciting for such purpose; (b) solicits on behalf of a charitable organization or any other person; or (c) who advertises that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization but is not a commercial co-venturer. A bona fide director, trustee, officer, volunteer or employee of a charitable organization or fund raising counsel shall not be deemed a professional fund raiser.

**5.** "Professional solicitor." Any person who is employed or retained for compensation by a professional fund raiser to solicit contributions for charitable purposes or for the purposes of any law enforcement support organization from persons in this state.

**6.** "Commercial co-venturer." Any person who for profit is regularly and primarily engaged in trade or commerce other than in connection with the raising of funds or any other thing of value for a charitable organization and who advertises that the purchase or use of goods, services, entertainment, or any other thing of value will benefit a charitable organization.

**7.** "Secretary." The secretary of state.

**8.** "Membership." The collective body of any charitable organization comprised of persons having voting rights and other powers of governance.

9. "Fund raising counsel." Any person who for compensation consults with a charitable organization or who plans, manages, advises, or assists with respect to the solicitation in this state of contributions for or on behalf of a charitable organization, but who does not have access to contributions or other receipts from a solicitation or authority to pay expenses associated with a solicitation and who does not solicit. A bona fide officer, volunteer, or employee of a charitable organization or an attorney at law retained by a charitable organization or an individual engaged solely to draft applications for funding from a governmental agency or an entity exempt from taxation pursuant to section 501(c)(3) of the internal revenue code, shall not be deemed a fund raising counsel.

10. "Solicit." To directly or indirectly make a request for a contribution, whether express or implied, through any medium. A "solicitation" shall be deemed to have taken place whether or not a contribution is made. For purposes of this article, a "solicitation" or a "solicitation of contributions" includes any advertising which represents that the purchase or use of goods, services, entertainment or any other thing of value will benefit a charitable organization. Provided, however, that the printing and the mailing of a written solicitation for funds or any other thing of value to benefit a charitable organization shall not alone constitute soliciting on the part of persons who printed and mailed such solicitation if such persons do not otherwise solicit, receive or have access to contributions.

11. "Law enforcement support organization." Any organization, association, union or conference of or purporting to be of current or former law enforcement officers, including, without limitation, peace officers and police officers as defined in subdivisions thirty-three and thirty-four of *section 1.20 of the criminal procedure law*, sheriffs, deputy sheriffs, detectives, investigators or constables or any auxiliary or affiliate of such an organization, association, union or conference composed of one or more such organizations.

12. "Attorney general". The attorney general of the state of New York.

## History

Formerly § 171, add, L 1977, ch 669, § 5; renumbered § 171–a and amd, L 1986, ch 440, §§ 1–3, eff July 1, 1987; L 1987, ch 353, §§ 1, 2, eff July 1, 1987; L 1989, ch 489, §§ 1, 2, eff July 16, 1989; *L 1995, ch 83, § 96*, eff June 20, 1995, deemed eff April 1, 1995; *L 2002, ch 43, § 1*, eff Aug 1, 2002; *L 2013, ch 549, § 2*, eff July 1, 2014.

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

*Laws 2013, ch 549, § 1,* eff July 1, 2014, provides as follows:

Section 1. This act shall be known and may be cited as the "non-profit revitalization act of 2013".

**Amendment Notes:**

**2013.** Chapter 549, § 2 amended:

Sub 9 by adding the matter in italics.

**2002.** Chapter 2002, § 43, § 1 amended:

Sub 2 by deleting at fig 1 "but", at fig 2 "fees, dues, fines or assessments, or", at fig 3 "rendered to individual members, if membership in such organization confers a bona fide right, privilege, professional standing, honor", at fig 4 "direct" and adding the matter in italics.

Sub 4 by deleting at fig 1 ": (a)", at fig 2 "individually solicits or", at fig 3 "by telephone or door-to-door and advertises a sale, performance, or event will benefit a charitable organization", at fig 4 "a sale, performance, or event" and adding the matter in italics.

Sub 8 by deleting at fig 1 "and who derive a direct benefit or privilege as a member thereof" and adding the matter in italics.

Sub 10 by deleting at fig 1 "the solicitor receives", at fig 2 "preparation", at fig 3 "prepared", at fig 4 "person does", at fig 5 "such" and adding the matter in italics.

**1995.** Chapter 83, § 96 amended:

By adding sub 12.

## Notes to Decisions

It was not unheard of for 501(c)(3)s and 501(c)(4)s to work in tandem and even to have nearly identical names; if the latter were able to avoid supervision, such organizations could serve as shells to keep donors anonymous to the former, and the Attorney General's regulations were thus well within his powers.  *Citizens United v Schneiderman, 882 F.3d 374, 2018 U.S. App. LEXIS 3516 (2d Cir. N.Y. 2018)*.

*Soc Serv Law § 461-b* (5(a)) does not deny equal protection because it requires reports only from private proprietary homes and not from not-for-profit homes; profit motive of owners of private homes provides rational basis for such discrimination, and § 461-b (5(a)) simply requires that private proprietary homes submit information similar to that already required from not-for-profit homes under  *EPTL § 8-1.4* and  *Exec Law §§ 171–176*.  *Katz v Blum, 460 F. Supp. 1222, 1978 U.S. Dist. LEXIS 14099 (S.D.N.Y. 1978)*, aff'd, *603 F.2d 213, 1979 U.S. App. LEXIS 16524 (2d Cir. N.Y. 1979)*.

## Opinion Notes

### Agency Opinions

Registration with the Department of State is required of police organizations that can be classified as "benevolent, philanthropic, patriotic or eleemosynary" based on the organization's stated purposes or activities and its use of professional fund raisers. *1980 N.Y. Op. Att'y Gen. No. 74, 1980 N.Y. AG LEXIS 12*.

Registration and reporting requirements of CLS Exec Law Art. VII-A apply to organizations that receive State grants in excess of $25,000 for training and education of both members and non-members of organization, however, registration with Department of State is not required of organization that receives State grants in excess of $25,000 for training and education of only its members.  N.Y. Op. Att'y Gen. No. 89-F3.

NY CLS Exec § 171-a

An organization that provides all the services necessary to conduct a fund-raising drive is a professional fund raiser. N.Y. Op. Att'y Gen. No. 83-F7.

# Research References & Practice Aids

**Codes, Rules and Regulations:**

Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 2, 63, 86, 91, 94, 95 .

75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Annotations:**

Validity and application of governmental limitation on permissible amount or proportion of fund-raising expenses or administrative costs of charitable organizations. _15 ALR4th 1163_.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 5-7(d), 6-2(b), 6-2(c), 6-2(d)(1), 6-3(b), 6-3(g), 7-2(b)(2).

**Hierarchy Notes:**

_NY CLS Exec, Art. 7-A_

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 172

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 172. Registration of charitable organizations

**1.**Every charitable organization, and any charitable organization registered or required to be registered pursuant to article eight of the estates, powers and trusts law, except as otherwise provided in section one hundred seventy-two-a of this article, which intends to solicit contributions from persons in this state or from any governmental agency shall, prior to any solicitation, file with the attorney general a prescribed registration form that includes, but is not limited to, the following information:

**(a)**The name of the organization and the name or names under which it intends to solicit contributions.

**(b)**The names and business, residence, or other addresses where each can regularly be found of the officers, directors, trustees, and executive personnel of the organization.

**(c)**The addresses of the organization and the addresses of any offices in this state. If the organization does not maintain an office, the name and address of the person having custody of its financial records.

**(d)**Where and when the organization was established, the form of its organization, its tax exempt status together with a copy of the most recent letter of exemption, if any, issued by the internal revenue service, the most recent communication from the internal revenue service regarding any audit thereby, if any, and a copy of any certificate of incorporation, by-laws, amendments and other operative organizational documents.

**(e)**A clear description of the specific programs stating whether in existence or planned for which the contributions to be solicited will be used.

**(f)**The date on which the fiscal year of the organization ends.

**(g)**Whether the organization is authorized by any other governmental authority to solicit contributions and whether it or any of its present officers, directors, executive personnel or trustees are or have ever been fined or otherwise penalized or enjoined from soliciting contributions or have been found to have engaged in unlawful practices regarding solicitation of contributions or administration of charitable assets and whether its registration or license has been suspended or cancelled by any court or other governmental agency together with the identity of such courts or governmental agencies and the reasons for such fine, penalty, injunction, suspension or cancellation.

**(h)**The names and addresses of any professional fund raisers, fund raising counsels and commercial co-venturers who are acting or have agreed to act on behalf of the organization.

**(i)**A copy of its annual report, if any, for the immediately preceding fiscal year in accordance with the requirements of section one hundred seventy-two-b of this article.

**(j)**The names and addresses of any chapters, branches, affiliates or organizations that share in the contributions or other revenue raised in this state.

**2.**The registration form shall be signed under penalties for perjury by the president or other authorized officer and the chief fiscal officer of the organization.

**3.**At the time of filing such registration, each charitable organization shall pay to the attorney general a fee of twenty-five dollars.

**4.**Any charitable organization required to register with the attorney general pursuant to this article and properly registered pursuant to article eight of the estates, powers and trusts law that has not previously registered pursuant to this article shall not be required to register separately, but shall file with the attorney general a statement that it is registered pursuant to article eight of the estates, powers and trusts law. Such statement shall be accompanied by all additional documents required to complete registration pursuant to this article, including any additional financial filings required by this article.

**5.**Registration pursuant to this article shall remain in effect unless it is either cancelled as provided in this article, withdrawn by the organization or the organization has failed to file the required financial report and such failure has not been remedied pursuant to subdivision seven of this section.

**6.**Every registered organization shall file with the attorney general within thirty days of any material change in the information required to be furnished by such organization under subdivision one of this section a prescribed form stating any such changes and signed under penalties for perjury by the president or other authorized officer of the organization.

**7.**In no event shall a registration of a charitable organization to solicit contributions in New York pursuant to this article continue, or be continued, in effect after the date such organization should have filed, but failed to file, a financial report in accordance with the requirements of section one hundred seventy-two-b of this article, and such organization shall not be eligible to file a new registration pursuant to this article until it shall have filed the required financial report or reports with the attorney general. If any such report is subsequently filed such organization shall file a new registration pursuant to this article, upon the payment of a re-registration fee of one hundred fifty dollars to the attorney general.

**8.**Forms, financial reports, professional fund raisers' contracts, and other documents required to be filed pursuant to this article become public records of the attorney general.

**9.**No charitable organization, professional fund raiser, fund raising counsel or commercial co-venturer shall use or exploit the fact of its registration or the registration of any other registrant under this article or article eight of the estates, powers and trusts law so as to lead the public to believe that registration in any manner constitutes an endorsement or approval by the state.

**10.**To the extent practicable, the attorney general shall develop a single registration and uniform set of reporting forms to be filed in accordance with the requirements of this subdivision and those of *section 8-1.4 of the estates, powers and trusts law*. These forms shall avoid duplication with and make maximum use of information required in federal reporting forms filed with the attorney general.

## History

Add, L 1977, ch 669, § 5; amd, L 1986, ch 440, § 4, eff July 1, 1987 (see 1986 note below); *L 1995, ch 83, § 97*, eff June 20, 1995, deemed eff April 1, 1995, L 2002; *L 2002, ch 43, § 2*, eff Aug 1, 2002.

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

*Laws 1995, ch 83, §§ 112*–**119,** eff June 20, 1995, deemed eff on and after April 1, 1995, provide as follows:

§ 112. Transfer of records. The office of charities registration shall deliver to the attorney general all books, papers, records and property of such entities.

§ 113. Continuity of authority. For the purpose of succession to all functions, powers, duties and obligations of the office of charities registration transferred and assigned to, devolved upon and assumed by the department of law, such department and attorney general shall be deemed and held to constitute the continuation of the office of charities registration.

§ 114. Completion of unfinished business. Any business or other matter undertaken or commenced by the office of charities registration pertaining to or connected with the functions, powers, obligations and duties hereby transferred and assigned to the department of law and attorney general, and pending on the effective date of sections ninety-six through one hundred nineteen of this act, may be conducted and completed by such department and the attorney general in the same manner and under the same terms and conditions and with the same effect as if conducted and completed by the office of charities registration.

§ 115. Continuation of rules and regulations. All rules, regulations, acts, orders, determinations, and decisions of the office of charities registration pertaining to the functions and powers herein transferred and assigned, in force at the time of such transfer, assignment, assumption or devolution, shall continue in force and effect as rules, regulations, acts, orders, determinations and decisions of the office of charities registration as continued in the department of law until duly modified or abrogated by the department or by the office of charities registration.

§ 116. Terms occurring in laws, contracts and other documents. Whenever the office of charities registration is referred to or designated in any law, contract or document pertaining to the functions, powers, obligations and duties hereby transferred and assigned, such reference or designation shall be deemed to refer to the office of charities registration as continued in the department of law.

§ 117. Existing rights and remedies preserved. No existing right or remedy or any character shall be lost, impaired or affected by reason of sections ninety-six through one hundred nineteen of this act.

§ 118. Pending actions and proceedings. No action or proceeding pending at the time when this act shall take effect, brought by or against the office of charities registration shall be affected by sections ninety-six through one hundred nineteen of this act, but the same may be prosecuted or defended in the name of the attorney general or department of law. In all such actions and proceedings, the department or attorney general upon application to the court, shall be substituted as a party.

§ 119. Transfer of appropriations heretofore made. All appropriations or reappropriations heretofore made to the office of charities registration for the functions and purposes herein transferred to the department of law, or segregated pursuant to law, to the extent of remaining unexpended or unencumbered balances thereof, whether allocated or unallocated and whether obligated or unobligated, are transferred to and made available for use and expenditure by the department of law for the same purposes for which originally appropriated or reappropriated and shall be payable on vouchers certified or approved by the attorney general or his duly authorized representative on audit and warrant of the comptroller.

**Amendment Notes:**

**2002.** Chapter 43, § 2 amended:

Sub 1, by deleting "by any means whatsoever" and "upon forms prescribed by it".

**2002.** Chapter 43, § 2 amended:

Sub 1, par (g), by deleting "by any court".

**2002.** Chapter 43, § 2 amended:

Sub 2, by deleting "and shall be verified under oath".

**2002.** Chapter 43, § 2 amended:

Sub 3, by deleting "For" and "the attorney general" and "receive" and ", to be paid at the time of registration".

**2002.** Chapter 43, § 2 amended:

Sub 5, by deleting "Such registration" and "or".

**2002.** Chapter 43, § 2 amended:

Sub 6, by deleting "notify".

**2002.** Chapter 43, § 2 amended:

Sub 7, by deleting "an annual" and "annual" and "may".

**2002.** Chapter 43, § 2 amended:

Sub 8, by deleting "Registration statements" and "in the office".

**2002.** Chapter 43, § 2 amended:

Sub 10, by deleting ", which are".

## Notes to Decisions

Not-for-profit charitable foundation serving homeless would be preliminarily enjoined from soliciting charitable contributions until it complied with registration and reporting requirements of CLS *Exec § 172* since foundation never sought exempt status from Office of Charities Registration pursuant to 19 NYCRR part 800. *Abrams v New York Foundation for Homeless, Inc., 148 Misc. 2d 791, 562 N.Y.S.2d 325, 1990 N.Y. Misc. LEXIS 558 (N.Y. Sup. Ct. 1990)*.

Not-for-profit charitable foundation serving homeless would be preliminarily enjoined from soliciting charitable contributions until it complied with registration and reporting requirements of CLS *Exec § 172*, despite its affiliation with religious organization, since by engaging in secular activities such as fund raising and sheltering homeless it was not itself operating as religious organization entitled to exemption from initial filing requirements under CLS *Exec § 172-a. Abrams v New York Foundation for Homeless, Inc., 148 Misc. 2d 791, 562 N.Y.S.2d 325, 1990 N.Y. Misc. LEXIS 558 (N.Y. Sup. Ct. 1990)*.

## Opinion Notes

**Agency Opinions**

The provisions of § 263 of the Education Law do not relieve libraries and museums of the obligation of financial reporting to the Office of Charities Registration of the Department of State under Article 7-A of the Executive Law. 1980 NY Ops Atty Gen June 9 (formal).

## Research References & Practice Aids

**Cross References:**

This section referred to in §§ 172-a, 172-b, 172-c.

Supervision of trustees for charitable purposes, CLS *EPTL § 8-1.4*.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 88–90, 92, 94, 95 .

  75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 5-7(d), 6-2(c), 6-2(e), 6-5(b), 7-2(b)(2), 10-4(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## *NY CLS Exec § 172-a*

Current through 2019 released Chapters 1-334

***New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)***

# § 172-a. Certain persons exempted

**1.**This article shall not apply to corporations organized under the religious corporations law, and other religious agencies and organizations, and charities, agencies, and organizations operated, supervised, or controlled by or in connection with a religious organization.

**2.**The following persons shall not be required to register with the attorney general:

**(a)**An educational institution confining its solicitation of contributions to its student body, alumni, faculty and trustees, and their families.

**(b)**Fraternal, patriotic, social, alumni, law enforcement support organizations and historical societies chartered by the New York state board of regents when solicitation of contributions is confined to their membership.

**(c)**Persons requesting any contributions for the relief of any individual, specified by name at the time of the solicitation, if all of the contributions collected, without any deductions whatsoever, are paid to or for the benefit of the named beneficiary. Prior to the commencement of any such solicitation, the principal person requesting contributions may file with the attorney general a form, provided by the attorney general, which shall read as follows:

CHARITABLE SOLICITATION FOR THE RELIEF OF AN INDIVIDUAL
_____
NAME AND ADDRESS OF THE PRINCIPAL PERSON REQUESTING CONTRIBUTIONS
_____
PURPOSE OF THE SOLICITATION
_____
NAME AND ADDRESS OF THE PRIMARY INDIVIDUAL BENEFICIARY
_____
NAME AND ADDRESS OF SECONDARY BENEFICIARY (IF ANY)
LIST NO MORE THAN THREE SECONDARY BENEFICIARIES

The principal person requesting contributions may, on such form designate up to three secondary individuals or charitable organizations as charitable beneficiaries who shall be entitled to such contributions in the event circumstances change rendering it impossible or impracticable to use any or all of the money collected for the primary beneficiary. The designation of one or more secondary beneficiaries shall be ineffective unless such form has been filed with the attorney general and all persons requesting contributions shall have informed any person solicited at the time of any solicitation of such filing. In the event that it is or may be impossible or impracticable to use any or all of the money collected for the benefit of the primary beneficiary, and (i) no secondary beneficiary has been properly designated pursuant to this paragraph, or (ii) no secondary beneficiary exists, then the attorney general, the primary beneficiary, or any person who requested contributions may petition the supreme court, on notice to the attorney general, the primary beneficiary if living, any secondary beneficiaries,

and the principal person who requested the contributions for an order directing that any moneys remaining shall be transferred to a charitable organization with purposes similar to those for which such contributions were collected. In the event that money collected for the relief of any individual, without any deductions whatsoever, is paid to or for the benefit of the primary beneficiary within sixty days of its receipt, then all requirements of this paragraph shall be deemed to have been complied with. For the purposes of this section, the term "principal person requesting the contributions" shall mean any person who is primarily responsible for soliciting funds for the relief of an individual, but shall not include any person who solicits funds when all such funds are subsequently transferred over to a principal person requesting contributions.

**(d)** Any charitable organization which solicits or receives gross contributions of less than twenty-five thousand dollars during a fiscal year of such organization, provided none of its fund raising is carried on by professional fund raisers or fund raising counsel. However, if the gross contributions received by such charitable organization during any fiscal year of such organization shall be in excess of twenty-five thousand dollars, it shall within thirty days after the date it shall have received gross contributions in excess of twenty-five thousand dollars register with the attorney general as required by section one hundred seventy-two of this article.

**(e)** Any charitable organization receiving an allocation from a federated fund, incorporated community appeal or a united way, provided such fund, appeal or united way is complying with the provisions of this article relating to registration and filing of financial reports with the attorney general, and provided such organization does not receive, in addition to such allocation, gross contributions in excess of twenty-five thousand dollars during the fiscal year, and provided further that all the fund-raising functions of such organizations are carried on by persons who are unpaid for such services. However, if the gross contributions other than such allocation received by such charitable organization during any fiscal year of such organization shall be in excess of twenty-five thousand dollars, it shall within thirty days after the date it shall have received such contributions in excess of twenty-five thousand dollars register with the attorney general as required by section one hundred seventy-two of this article.

**(f)** A local post, camp, chapter or similarly designated element, or a county unit of such elements, of a bona fide veterans' organization which issues charters to such local elements throughout this state, a bona fide organization of volunteer firefighters, an organization providing volunteer ambulance service (as defined in section three thousand one of the public health law) or a bona fide auxiliary or affiliate of such organizations, provided all its fund-raising activities are carried on by members of such an organization or an affiliate thereof and such members receive no compensation, directly or indirectly, therefor.

**(g)** An educational institution which files annual financial reports with the regents of the university of the state of New York as required by the education law or with an agency having similar jurisdiction in another state or a library which files annual financial reports as required by the state education department.

**(h)** A charitable organization which receives all or substantially all of its funds from a single governmental agency and reports annually to that agency provided such reports contain financial information substantially similar in content to that required by subdivision one of section one hundred seventy-two-b of this article; provided, however, that such organization may receive no more than twenty-five thousand dollars from sources other than the government agency to which it reports.

**(i)** Any police department, sheriff's department or other governmental law enforcement agency.

**(j)** The state parent teachers association and any parent teachers association affiliated with an educational institution that is subject to the jurisdiction of the state education department.

# History

Add, L 1977, ch 669, § 5; amd, L 1986, ch 440, § 5, eff July 1, 1987; L 1989, ch 489, §§ 3, 4, eff July 16, 1989; *L 1990, ch 474, § 1*, eff Nov 8, 1990; *L 1995, ch 83, § 98*, eff June 20, 1995, deemed eff April 1, 1995; *L 1997, ch 329, § 1*, eff Aug 5, 1997; *L 2002, ch 43, § 3*, eff Aug 1, 2002; *L 2018, ch 476, § 4*, eff Dec 28, 2018.

Annotations

# Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

*Laws 1990, ch 474, § 2,* eff Nov 8, 1990, provides as follows:

§ 2. This act shall take effect on the one hundred twentieth day after it shall have become a law; provided, however, that effective immediately, the forms necessary for the implementation of the foregoing section of this act on its effective date are authorized and directed to be made and completed on or before such effective date.

**Amendment Notes:**

**2002.** Chapter 43, § 3 amended:

Sub 2, par (d), by deleting "does not intend to solicit and receive and does not actually receive" and "in excess" and "functions are" and "commercial co-venturers" and "total".

**2002.** Chapter 43, § 3 amended:

Sub 2, par (e), by deleting "annual" and "actually".

**The 2018 amendment by ch 476, § 4,** substituted "firefighter" for "firemen" in 2(f).

# Notes to Decisions

Not-for-profit charitable foundation serving homeless would be preliminarily enjoined from soliciting charitable contributions until it complied with registration and reporting requirements of CLS *Exec § 172*, despite its affiliation with religious organization, since by engaging in secular activities such as fund raising and sheltering homeless it was not itself operating as religious organization entitled to exemption from initial filing requirements under CLS *Exec § 172-a*. *Abrams v New York Foundation for Homeless, Inc., 148 Misc. 2d 791, 562 N.Y.S.2d 325, 1990 N.Y. Misc. LEXIS 558 (N.Y. Sup. Ct. 1990)*.

# Opinion Notes

**Agency Opinions**

Registration with the Department of State is required of police organizations that can be classified as "benevolent, philanthropic, patriotic or eleemosynary" based on the organization's stated purposes or activities and its use of professional fund raisers. *1980 N.Y. Op. Att'y Gen. No. 74, 1980 N.Y. AG LEXIS 12*.

Registration and reporting requirements of CLS Exec Law Art. VII-A apply to organizations that receive State grants in excess of $25,000 for training and education of both members and non-members of organization, however, registration with Department of State is not required of organization that receives State grants in excess of $25,000 for training and education of only its members.  N.Y. Op. Att'y Gen. No. 89-F3.

## Research References & Practice Aids

**Cross References:**

This section referred to in §§ 172, 172-d, 175; CLS *N-PCL § 115*; CLS *Pub Health § 2801-a*.

"Voluntary ambulance service", defined, CLS *Pub Health § 3001*.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 88, 92, 94, 95 .

 65 NY Jur 2d Hospitals and Releated Health Care Facilities §§ 81, 84 .

  75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(d)(1), 7-2(b)(2), 13-4(p).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## *NY CLS Exec § 172-b*

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 172-b. Reports by registered charitable organizations; registration to be cancelled for failure to file

**1.**[Eff until June 30, 2021] Every charitable organization registered or required to be registered pursuant to section one hundred seventy-two of this article which shall receive in any fiscal year gross revenue and support in excess of seven hundred fifty thousand dollars shall file with the attorney general  an annual written financial report, on forms prescribed by the attorney general, on or before the fifteenth day of the fifth calendar month after the close of such fiscal year. The annual financial report shall  be accompanied by an annual financial statement which includes an independent certified public accountant's audit report containing an opinion that the financial statements are presented fairly in all material respects and in conformity with generally accepted accounting principles, including compliance with all pronouncements of the financial accounting standards board and the American Institute of Certified Public Accountants that establish accounting principles relevant to not-for-profit organizations. Such financial report shall include a statement of any changes in the information required to be contained  in the registration form filed on behalf of such organization. The financial report shall be signed by the president or other authorized officer and the chief fiscal officer of the organization who shall certify under penalties for perjury that the statements therein are true and correct to the best of their knowledge, and shall be accompanied  by an opinion signed by an independent public accountant that the  financial statement and balance sheet therein present fairly the financial  operations and position of the organization. A fee of twenty-five dollars payable to the attorney general shall accompany such financial  report at the time of filing, provided however, that any such organization that is registered with the attorney general pursuant to article eight  of the estates, powers and trusts law is required to file only one  annual financial report which meets the filing requirements of this article and *section 8-1.4 of the estates,  powers and trusts law*.

**1.**[Eff July 1, 2021] Every charitable organization registered or required to be registered  pursuant to section one hundred seventy-two of this article which  shall receive in any fiscal year gross revenue and support in excess of one million dollars shall file with the attorney general an annual written financial report, on forms prescribed by the attorney general, on or before the fifteenth day of the fifth calendar month after the close of such fiscal year. The annual financial report shall be accompanied by an annual financial statement which includes an independent certified public accountant's audit report containing  an opinion that the financial statements are presented fairly in all  material respects and in conformity with generally accepted accounting principles, including compliance with all pronouncements of the financial  accounting standards board and the American Institute of Certified  Public Accountants that establish accounting principles relevant to not-for-profit organizations. Such financial report shall include  a statement of any changes in the information required to be contained in the registration form filed on behalf of such organization. The financial report shall be signed by the president or other authorized officer and the chief fiscal officer of the organization who shall  certify under penalties for perjury that the statements therein are true and correct to the best of their knowledge, and shall be accompanied by an opinion signed by an independent public accountant that the financial statement and balance sheet therein present fairly the financial operations and position of the organization. A fee of twenty-five dollars payable to the attorney general shall accompany such financial  report at the time of filing, provided

however, that any such organization that is registered with the attorney general pursuant to article eight of the estates, powers and trusts law is required to file only one annual financial report which meets the filing requirements of this article and *section 8-1.4 of the estates,  powers and trusts law*.

**2.**[Eff until June 30, 2021] Every charitable organization registered or required to be registered pursuant to section one hundred seventy-two of this article  which shall receive in gross revenue and support in any fiscal year at least two hundred fifty thousand dollars but not more than seven hundred fifty thousand dollars shall file an annual financial report. The annual financial report shall be accompanied by an annual financial statement which includes an independent certified public accountant's review report  in accordance with "statements on standards for accounting and review services" issued by the American Institute of Certified  Public Accountants. The annual financial statement shall be prepared in conformity with generally accepted accounting principles, including compliance with all pronouncements of the financial accounting standards board and the American Institute of Certified Public Accountants that establish accounting principles relevant to not-for-profit organizations. Such financial report shall be filed with the attorney general, upon  forms prescribed by the attorney general on an annual basis on or before the fifteenth day of the fifth calendar month after the close of such fiscal year, which shall include a financial report covering such fiscal year in accordance with such requirements as the attorney general may prescribe. Such financial report shall include a statement  of any changes in the information required to be contained in the registration form filed on behalf of such organization. The financial report shall be signed by the president or other authorized officer and the chief financial officer of the organization who shall certify under penalties for perjury that the statements therein are true and  correct to the best of their knowledge. A fee of twenty-five dollars payable to the attorney general shall accompany such financial report at the time of filing, provided, however, that any such organization  that is registered with the attorney general pursuant to article eight  of the estates, powers and trusts law is required to file only one annual financial report which meets the filing requirements of this article and *section 8-1.4 of the estates, powers and trusts law*. Notwithstanding the requirements of this section, if  upon review of an independent certified public accountant's  review report filed pursuant to this subdivision, the attorney general determines that a charitable organization should obtain an independent  certified public accountant's audit report, such organization  shall obtain and file with the attorney general an audit report that  meets the requirements of subdivision one of this section within one  hundred twenty days of the attorney general's request for such report.

**2.**[Eff July 1, 2021] Every charitable organization registered or required to be registered  pursuant to section one hundred seventy-two of this article which  shall receive in gross revenue and support in any fiscal year at least two hundred fifty thousand dollars but not more than one million dollars shall file an annual financial report. The annual  financial report shall be accompanied by an annual financial statement which includes an independent certified public accountant's review report in accordance with "statements on standards for accounting and review services" issued by the American Institute of Certified Public Accountants. The annual financial statement shall be prepared in conformity with generally accepted accounting principles, including compliance with all pronouncements of the financial accounting standards board and the American Institute of Certified Public Accountants that establish accounting principles relevant to not-for-profit organizations. Such financial report shall be filed with the attorney general, upon  forms prescribed by the attorney general on an annual basis on or  before the fifteenth day of the fifth calendar month after the close of such fiscal year, which shall include a financial report covering such fiscal year in accordance with such requirements as the attorney general may prescribe. Such financial report shall include a statement  of any changes in the information required to be contained in the registration form filed on behalf of such organization. The financial  report shall be signed by the president or other authorized officer and the chief financial officer of the organization who shall certify  under penalties for perjury that the statements therein are true and  correct to the best of their knowledge. A fee of twenty-five dollars payable to the attorney general shall accompany such financial report at the time of filing, provided, however, that any such organization  that is registered with the attorney general pursuant to article eight of the estates, powers and trusts law is required to file only one  annual financial report which meets the filing requirements of this article and *section 8-1.4 of the estates,  powers and trusts law*. Notwithstanding the requirements of this section, if upon review of an independent certified public accountant's review report filed pursuant to this subdivision, the attorney general  determines that a charitable organization should obtain an independent  certified public accountant's audit report, such organization shall obtain and file

NY CLS Exec § 172-b

with the attorney general an audit report that meets the requirements of subdivision one of this section within one hundred twenty days of the attorney general's request for such  report.

**2-a.**Every charitable organization registered or required to be registered pursuant to section one hundred seventy-two of this article which shall receive in any fiscal year of such organization gross revenue and support not in excess of two hundred fifty thousand dollars shall file with the attorney general an unaudited financial report on forms prescribed by the attorney general, on or before the fifteenth day of the fifth calendar month after the close of such fiscal year. Such financial report shall include a statement of any changes in the information required to be contained in the registration form filed on behalf of such organization. The financial report shall be signed by the president or other authorized officer and the chief fiscal officer of the organization who shall certify under penalties for perjury that the statements therein are true and correct to the best of their knowledge. A fee of twenty-five dollars payable to the attorney general shall accompany such financial report at the time of filing. Provided, however, that any such organization that is registered with the attorney general pursuant to article eight of the estates, powers and trusts law is required to file only one annual financial report which meets the filing requirements of this article and *section 8-1.4 of the estates, powers and trusts law*.

**3.**For any fiscal year of any organization registered pursuant to section one hundred seventy-two of this article in which such organization would have been exempt from registration pursuant to section one hundred seventy-two of this article if it had not been so registered, or in which it did not solicit or receive contributions, such organization shall file, instead of the financial reports required by subdivision one, two or two-a of this section, a report, signed under penalties for perjury by the president or other authorized officer and the chief fiscal officer, in the form prescribed by the attorney general stating the nature of the exemption and the facts upon which it is based or that such organization did not solicit or receive contributions in such fiscal year. The report shall include a statement of any changes in the information required to be contained in the registration form filed on behalf of such organization and may include a notice, signed under penalties for perjury by the president or other authorized officer, on a form prescribed by the attorney general, that such organization's registration is being withdrawn.

**4.**

   **(a)**Upon prior written authorization by the attorney general any charitable organization registered pursuant to section one hundred seventy-two of this article, which is the parent organization of one or more affiliates thereof, and such affiliates, may comply with the reporting requirements of subdivision one, two, two-a or three of this section, by filing a combined written annual financial report upon forms prescribed by the attorney general.

   **(b)**As used in this subdivision the term "affiliate" shall include any chapter, branch, auxiliary, or other subordinate unit of any registered charitable organization, howsoever designated, whose policies, fund raising activities, and expenditures are supervised or controlled by such parent organization.

   **(c)**There shall be appended to each combined annual financial report a schedule, containing such information as may be prescribed by the attorney general, reflecting the activities of each affiliate, which shall contain a statement signed under penalties for perjury, by the president or other authorized officer certifying that the information contained therein is true.

   **(d)**The failure of a parent organization to file a combined annual financial written report shall not excuse either the parent organization or its affiliates from complying with the provisions of subdivision one, two, two-a or three of this section.

   **(e)**A combined annual financial report filed pursuant to this subdivision shall be accompanied by a fee, paid to the attorney general, of twenty-five dollars plus ten dollars for each organization included in such annual financial report, but the aggregate fee shall not exceed five hundred dollars.

**5.**The attorney general shall cancel the registration of any organization which fails to comply with subdivision one, two, two-a or three of this section within the time therein prescribed, or fails to furnish such additional information as is requested by the attorney general within the required time; except that the time may be extended by the attorney general for a period not to exceed one hundred eighty days. Notice of such cancellation shall be mailed to the registrant at least twenty days before the effective date thereof.

**6.**Every charitable organization registered or required to register pursuant to section one hundred seventy-two of this article shall keep and maintain records, books and reports for at least three years after the end of the period of registration to which they relate which shall at all times be available for inspection, by the attorney general, or any duly authorized representatives at the principal office of such organization.

**7.**The attorney general may accept a copy of a current financial report previously filed by a charitable organization with any other governmental agency in compliance with the provisions of this article provided that the report filed with such other governmental agency shall be substantially similar in content to the financial report required by this section.

**8.**Any financial report filed by any charitable organization required to be registered but which has not previously registered pursuant to this article or article eight of the estates, powers and trusts law must be accompanied by all registration material required to be filed by this article.

## History

Add, L 1977, ch 669, § 5; amd, L 1982, ch 359, § 1; L 1986, ch 440, § 6, eff July 1, 1987; L 1987, ch 353, § 3, eff July 1, 1987; _L 1995, ch 83, § 99_, eff June 20, 1995, deemed eff April 1, 1995; _L 2002, ch 43, § 4_, eff Aug 1, 2002; _L 2013, ch 549, § 3_, eff July 1, 2014; _L 2013, ch 549, § 3_–a, eff July 1, 2017; _L 2013, ch 549, § 3_–b, eff July 1, 2021.

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

_**Laws 2013, ch 549, §§ 1, 132,**_ eff July 1, 2014, provide as follows:

Section 1. This act shall be known and may be cited as the "non-profit revitalization act of 2013".

§ 132. This act shall take effect July 1, 2014, provided, however, that the amendments to subdivisions 1 and 2 of _section 172-b of the executive law_ made by section three of this act shall expire and be deemed repealed June 30, 2017; provided further that the amendments to _section 172-b of the executive law_ made by section three-a of this act shall take effect July 1, 2017 and shall expire and be deemed repealed June 30, 2021; provided further that the amendments to _section 172-b of the executive law_ made by section three-b of this act shall take effect July 1, 2021; provided further that the amendments to paragraph (a) of _section 713 of the not-for-profit corporation law_ made by section seventy-three of this act shall take effect January 1, 2015; provided further that paragraph (f) of _section 713 of the not-for-profit corporation law_ added by section seventy-three of this act shall take effect January 1, 2017; provided further that section seventy-two of this act and paragraph (b) of _section 8-1.9 of the estates, powers and trusts law_ as added by section one hundred thirty of this act shall not be applicable until January 1, 2015 for any corporation or trust that had annual revenues of less than 10,000,000 dollars in the last fiscal year ending prior to January 1, 2014 (Amd, _L 2014, ch 81, § 1_, eff June 30, 2014; _L 2015, ch 388, § 1_, eff Oct 26, 2015; _L 2017, ch 78, § 1_, eff June 29, 2017).

**Amendment Notes:**

**2013.** Chapter 549, § 3 amended:

Sub 1 [second setout] by deleting at fig 1 "two hundred fifty", at fig 2 "and every charitable organization whose fund-raising functions are not carried on solely by persons who are unpaid for such services" and adding the matter in italics.

Sub 2 [second setout] by deleting at fig 1 "one hundred", at fig 2 "two hundred fifty", at fig 3 "ten" and adding the matter in italics.

Sub 2-a [second setout] by deleting at fig 1 "one hundred thousand", at fig 2 "ten" and adding the matter in italics.

**2013.** Chapter 549, § 3-a amended:

Sub 1 [third setout] by deleting at fig 1 "two hundred fifty", at fig 2 "and every charitable organization whose fund-raising functions are not carried on solely by persons who are unpaid for such services" and adding the matter in italics.

Sub 2 [third setout] by deleting at fig 1 "one hundred", at fig 2 "two hundred fifty", at fig 3 "ten" and adding the matter in italics.

**2013.** Chapter 549, § 3-b amended:

Sub 1 [fourth setout] by deleting at fig 1 "two hundred fifty thousand", at fig 2 "and every charitable organization whose fund-raising functions are not carried on solely by persons who are unpaid for such services" and adding the matter in italics.

Sub 2 [fourth setout] by deleting at fig 1 "one hundred", at fig 2 "two hundred fifty thousand", at fig 3 "ten" and adding the matter in italics.

**2002.** Chapter 43, § 4 amended:

Sub 3 by deleting at fig 1 "subdivisions", at fig 2 "or", at fig 3 "also" and adding the matter in italics.

Sub 4, par (a) by deleting at fig 1 "Any", at fig 2 "within the state" and adding the matter in italics.

Sub 4, par (b) by deleting at fig 1 "fundraising" and adding the matter in italics.

Sub 4, par (c) by deleting at fig 1 "penalty of", at fig 2 "certification,", at fig 3 "an official of the organization," and adding the matter in italics.

Sub 4, par (d) by deleting at fig 1 "an appropriate" and adding the matter in italics.

Sub 4, par (e) by adding the matter in italics.

Sub 6 by deleting at fig 1 "at the principal office of such organization", at fig 2 "his or her" and adding the matter in italics.

Sub 7 by deleting at fig 1 "annual" and adding the matter in italics.

By adding sub 8.

**1995.** Chapter 83, § 99 amended:

Sub 5 by adding the matter in italics.

NY CLS Exec § 172-b

# Research References & Practice Aids

**Cross References:**

This section referred to in §§ 172, 172-a, 174-b, 177.

**Codes, Rules and Regulations:**

Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 88, 89, 92, 94, 95 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(f), 6-3(f)(1), 6-5(a), 6-5(b), 6-6(c), 11-3(b)(7).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.



## *NY CLS Exec § 172-c*

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

## § 172-c. Non-resident charitable organizations; designation of secretary of state as agent for service of process; service of process

**1.**Any charitable organization having its principal place of business without the state or organized under and by virtue of the laws of another or foreign state and which solicits contributions from people in this state, shall be deemed to have irrevocably appointed the secretary of state as its agent upon whom may be served any summons, subpoena, subpoena duces tecum, other process or notice directed to such charitable organization, or any partner, principal, officer, trustee or director thereof, in any action or proceeding brought by the attorney general or any other party under the provisions of this article. Any such charitable organization may file with the secretary of state of the state of New York a designation, duly acknowledged in accordance with procedures for such filing with the secretary of state, irrevocably appointing the secretary of state as its agent upon whom may be served any such process; provided, however, that a designation filed with the secretary of state pursuant to *section three hundred fifty-two-a of the general business law* or *section thirteen hundred four of the not-for-profit corporation law* shall serve also as such designation.

**2.**Service of such process upon the secretary of state shall be made by personally delivering to and leaving with the secretary of state or any person authorized by the secretary of state to accept such service a copy thereof at the office of the department of state in the city of Albany, and such service shall be sufficient service provided that notice of such service and a copy of such process are forthwith sent by the attorney general or any other party to such charitable organization by certified mail with return receipt requested, at its office as set forth in the registration form required to be filed with the attorney general pursuant to section one hundred seventy-two of this article, or in default of the filing of such form, at the last address known to the attorney general or any other party. Service of such process shall be complete upon the receipt by the attorney general or any other party of a return receipt purporting to be signed by the addressee or a person qualified to receive its certified mail, in accordance with the rules and customs of the post office department, or, if acceptance was refused by the addressee or its agent, ten days after the return to the attorney general or any other party of a notation by the postal authorities that receipt thereof was refused.

## History

Add, L 1977, ch 669, § 5, eff October 1, 1977; amd, *L 2002, ch 43, § 5*, eff Aug 1, 2002.

Annotations

## Notes

NY CLS Exec § 172-c

**Amendment Notes:**

**2002.** Chapter 43, § 5 amended:

Par by deleting "a" and ", or" and "shall solicit" and "or" and "organizations" and ", in terms complying herewith".

**2002.** Chapter 43, § 5 amended:

Par by deleting "him" and "a deputy secretary of state" and "registered" and "registered" and "secretary" and "his or" and "his or" and "the original envelop bearing".

# Research References & Practice Aids

**Cross References:**

Foreign corporation to make designation, CLS *Gen Bus § 352-a*.

Application for authority; contents, CLS *N-PCL 1304*.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 87, 90, 94, 95 .

  75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 172-d

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 172-d. Prohibited activity

Except as exempted pursuant to subdivision one of section one hundred seventy-two-a of this article, in addition to other violations of this article no person shall:

**1.**Make any material statement which is untrue in an application for registration, registration statement, a claim of exemption, financial report or any other forms or documents required to be filed or filed pursuant to this article; or fail to disclose a material fact in an application for registration, registration statement, claim of exemption, financial report or any other forms or documents required to be filed or filed pursuant to this article; or

**2.**Engage in any fraudulent or illegal act, device, scheme, artifice to defraud or for obtaining money or property by means of a false pretense, representation or promise, transaction or enterprise in connection with any solicitation or with the registration, reporting and disclosure provisions of this article. The term "fraud" or "fraudulent" as used herein shall include those acts which may be characterized as misleading or deceptive including but not limited to those acts covered by the term "fraud" or "fraudulent" under subdivision twelve of section sixty-three of this chapter. To establish fraud neither intent to defraud nor injury need to be shown; or

**3.**Use or intend to use false or materially misleading advertising or promotional material in connection with any solicitation; or

**4.**Fail to apply contributions in a manner substantially consistent with the solicitation or the registration statement of the charitable organization or the purposes expressed therein; or

**5.**Enter into any contract or agreement with or otherwise employ or engage any professional fund raiser, fund raising counsel or professional solicitor required to be registered pursuant to this article unless such professional fund raiser, fund raising counsel or professional solicitor has provided to such person a statement, signed under penalties for perjury, that it is registered and in compliance with all filing requirements of this article; or

**6.**Enter into any contract or agreement, employment or engagement to raise funds or conduct any fund raising activities for any charitable organization required to be registered pursuant to this article unless such charitable organization is registered and in compliance with all filing requirements of this article; or

**7.**Repeatedly and wilfully fail to file as required by this article any fund-raising contract, closing statement or report or other form or document; or

**8.**Fail to respond or comply within sixty days with any cease and desist order of the attorney general; or

**9.**Represent in any manner that registration constitutes an endorsement or approval by the state or the attorney general; or

**10.** Solicit for a charitable purpose or engage in any other fund raising activities without being a registered charitable organization in compliance with all filing requirements of this article, if required to be registered, or having a written contract or agreement with a charitable organization or registered charitable organization if required to be registered, authorizing solicitation on its behalf; or

**11.** Continue soliciting on behalf of a charitable organization more than fifteen days after the cancellation in accordance with subdivision six of section one hundred seventy-four-a of this article; or

**12.** Act as or enter any contract or other agreement with a charitable organization as a professional fund raiser, fund raising counsel, or professional solicitor without having registered and being in compliance with all filing and disclosure requirements of this article; or

**13.** Fail to maintain books and records as required by this article or fail to produce to the attorney general any such books and records within fifteen days of receiving, by certified mail, a request for such books and records; or

**14.** Fail to discontinue solicitation immediately or to register pursuant to this article within fifteen days after the attorney general has given notice pursuant to subdivision two of section one hundred seventy-five of this article of violation of subdivision one, two, or three of section one hundred seventy-four of this article; or

**15.** Fail to provide a charitable organization with an accurate accounting of a sale advertised for its benefit as prescribed by subdivision three of section one hundred seventy-three-a of this article; or

**16.** Knowingly use in the course of soliciting contributions for or on behalf of a charitable organization a name, symbol, or other mark so closely related or similar to that used by another established charitable organization that the use thereof would tend to confuse or mislead the public; or

**17.** Solicit contributions in a manner or with words which are coercive as such term is defined pursuant to *section 135.65 of the penal law*; or

**18.** Vote or use personal influence as an officer or member of the board of directors of a charitable organization, a majority of whose members are professional fund raisers or their designees on matters on which such officer or member has a financial or material conflicting interest; or

**19.** Include in any solicitation a statement that the financial report of a charitable organization or professional fund raiser is on file with the attorney general unless the charitable organization or professional fund raiser has complied with all filing requirements pursuant to this article and article eight of the estates, powers and trusts law, to the extent also applicable; or

**20.** Use in any solicitation a New York state address, including a New York state return address unless:

    **(a)** the charitable organization maintains and staffs an office at that address; or

    **(b)** immediately proximate to the New York address, both the address of the charitable organization's actual headquarters and the fact that the New York address is a "mail drop", using this or a substantially similar term that clearly conveys the message that the New York address is that of a mail handling facility; or

**21.** State or imply that a charitable organization conducts any activities in New York and/or benefits New York state residents unless it conducts such activities and/or provides such benefits.

# History

Add, L 1986, ch 440, § 7, eff July 1, 1987 (see 1986 note below); amd, L 1986, ch 441, § 1, eff July 1, 1987; L 1987, ch 353, § 4, eff July 1, 1987; L 1989, ch 489, § 5, eff July 16, 1989; *L 1995, ch 83, § 100*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 6*, eff Aug 1, 2002.

Annotations

# Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to *section one hundred seventy-two-b of the executive law* for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

**Amendment Notes:**

**2002.** Chapter 43, § 6 amended:

Sub 1, by deleting  "or written annual".

**2002.** Chapter 43, § 6 amended:

Sub 2, by deleting "for charitable purposes or on behalf of any law enforcement support organization, any solicitation or collection of funds or other property for a charitable organization, any commercial co-venture,".

**2002.** Chapter 43, § 6 amended:

Sub 3, by deleting "for charitable purposes or for the purposes of any law enforcement support organization or with any commercial co-venture".

**2002.** Chapter 43, § 6 amended:

Sub 4, by deleting "for charitable purposes or for the purposes of any law enforcement support organization".

**2002.** Chapter 43, § 6 amended:

Sub 5, by deleting  "unregistered and at  and "fund-raiser".

**2002.** Chapter 43, § 6 amended:

Sub 6, by deleting "with" and "any" and a comma and at.

**2002.** Chapter 43, § 6 amended:

Sub 7, by deleting "written" and "any documents".

**2002.** Chapter 43, § 6 amended:

Sub 8, by deleting a comma.

**2002.** Chapter 43, § 6 amended:

Sub 10, by deleting "contributions" and "or for the purposes of any law enforcement support organization" and "either.

**2002.** Chapter 43, § 6 amended:

Sub 11, by deleting "of a contract between the person soliciting and the charitable organization".

**2002.** Chapter 43, § 6 amended:

Sub 13, by deleting "refuse or" and "within fifteen days after receiving written notice by certified mail," and ", as required by this article".

**2002.** Chapter 43, § 6 amended:

Sub 14, by deleting "in accordance with the provisions of".

**2002.** Chapter 43, § 6 amended:

Sub 16, by deleting "service.

**2002.** Chapter 43, § 6 amended:

Sub 18, by deleting a period.

# NOTES TO DECISIONS

### 1. Generally

Where the Attorney General sued a professional fundraiser and its president to permanently enjoin them from soliciting and collecting charitable contributions from the public, he was properly granted summary judgment on the issue of liability, as he established that the fundraiser's solicitation of charitable funds on behalf of a cancer prevention organization was fraudulent and deceptive because the fundraiser misrepresented the extent of the organization's actions in helping women survive breast cancer. *People v Coalition Against Breast Cancer, Inc., 134 A.D.3d 1081, 22 N.Y.S.3d 562, 2015 N.Y. App. Div. LEXIS 9661 (N.Y. App. Div. 2d Dep't 2015)*, app. denied, *28 N.Y.3d 901, 63 N.E.3d 69, 40 N.Y.S.3d 349, 2016 N.Y. LEXIS 2717 (N.Y. 2016)*.

Where the Attorney General established that a professional fundraiser's solicitation of charitable funds on behalf of a cancer prevention organization was fraudulent and deceptive, the trial court properly pierced the corporate veil to hold the fundraiser's president personally liable, as an officer of a corporation could be held liable for fraud if he participated in it or had actual knowledge of it. *People v Coalition Against Breast Cancer, Inc., 134 A.D.3d 1081, 22 N.Y.S.3d 562, 2015 N.Y. App. Div. LEXIS 9661 (N.Y. App. Div. 2d Dep't 2015)*, app. denied, *28 N.Y.3d 901, 63 N.E.3d 69, 40 N.Y.S.3d 349, 2016 N.Y. LEXIS 2717 (N.Y. 2016)*.

It was not unheard of for 501(c)(3)s and 501(c)(4)s to work in tandem and even to have nearly identical names; if the latter were able to avoid supervision, such organizations could serve as shells to keep donors anonymous to the former, and the Attorney General's regulations were thus well within his powers. *Citizens United v Schneiderman, 882 F.3d 374, 2018 U.S. App. LEXIS 3516 (2d Cir. N.Y. 2018)*.

# Research References & Practice Aids

**Cross References:**

This section referred to in § 177.

Coercion in the first degree, CLS *Penal § 135.65*.

**Codes, Rules and Regulations:**

NY CLS Exec § 172-d

Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 94, 95 .

75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Annotations:**

Criminal offenses under statutes and ordinances regulating charitable solicitations. *76 ALR3d 924*.

**Texts:**

Bjorklund, Fishman & Kurtz,  New York Nonprofit Law and Practice with Tax Analysis §§ 6-1, 6-2(e), 6-2(f), 6-3(b), 6-3(e)(1), 6-3(g), 6-4, 6-5(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



# NY CLS Exec § 172-e

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

## § 172-e. Disclosure of certain donations by charitable non-profit entities

**1.**Definitions. For the purposes of this section:

**(a)**"Covered entity" shall mean any corporation or entity that is qualified as an exempt organization or entity by the United States Department of the Treasury under *I.R.C. 501(c)(3)* that is required to report to the department of law pursuant to this section.

**(b)**"In-kind donation" shall mean donations of staff, staff time, personnel, offices, office supplies, financial support of any kind or any other resources.

**(c)**"Donation" shall mean any contribution, including a gift, loan, in-kind donation, advance or deposit of money or anything of value.

**(d)**"Recipient entity" shall mean any corporation or entity that is qualified as an exempt organization or entity by the United States Department of the Treasury under *I.R.C. 501(c)(4)* that is required to file a source of funding report with the joint commission on public ethics pursuant to sections one-h and one-j of the legislative law.

**(e)**"Reporting period" shall mean the six month period within a calendar year starting January first and ending June thirtieth or the six month period within a calendar year starting July first and ending December thirty-first.

**2.**Funding disclosure reports to be filed by covered entities. (a) Any covered entity that makes an in-kind donation in excess of two thousand five hundred dollars to a recipient entity during a relevant reporting period shall file a funding disclosure report with the department of law. The funding disclosure report shall include:

**(i)**the name and address of the covered entity that made the in-kind donation;

**(ii)**the name and address of the recipient entity that received or benefitted from the in-kind donation;

**(iii)**the names of any persons who exert operational or managerial control over the covered entity. The disclosures required by this paragraph shall include the name of at least one natural person;

**(iv)**the date the in-kind donation was made by the covered entity;

**(v)**any donation in excess of two thousand five hundred dollars to the covered entity during the relevant reporting period including the identity of the donor of any such donation; and

**(vi)**the date of any such donation to a covered entity.

**(b)**The covered entity shall file a funding disclosure report with the department of law within thirty days of the close of a reporting period.

**3.**Public disclosure of funding disclosure reports. The department of law shall promulgate any regulations necessary to implement these requirements and shall forward the disclosure reports to the joint commission on

public ethics for the purpose of publishing such reports on the commission's website, within thirty days of the close of each reporting period; provided however that the attorney general, or his or her designee, may determine that disclosure of donations to the covered entity shall not be made public if, based upon a review of the relevant facts presented by the covered entity, such disclosure may cause harm, threats, harassment, or reprisals to the source of the donation or to individuals or property affiliated with the source of the donation. The covered entity may appeal the attorney general's determination and such appeal shall be heard by a judicial hearing officer who is independent and not affiliated with or employed by the department of law, pursuant to regulations promulgated by the department of law. The covered entity's sources of donations that are the subject of such appeal shall not be made public pending final judgment on appeal.

## History

*L 2016, ch 286, § 1* (Part F), eff Nov 22, 2016.

Annotations

## Research References & Practice Aids

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.



# NY CLS Exec § 172-f

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

## § 172-f. Disclosure of certain activities by non-charitable non-profit entities

**1.**Definitions.

(a)"Covered Entity" means any corporation or entity that is qualified as an exempt organization or entity by the United States Department of the Treasury under *I.R.C. 501(c)(4)*.

(b)"Covered communication" means a communication, that does not require a report pursuant to article one-A of the legislative law or article fourteen of the election law, by a covered entity conveyed to five hundred or more members of a general public audience in the form of: (i) an audio or video communication via broadcast, cable or satellite; (ii) a written communication via advertisements, pamphlets, circulars, flyers, brochures, letterheads; or (iii) other published statement which: refers to and advocates for or against a clearly identified elected official or the position of any elected official or administrative or legislative body relating to the outcome of any vote or substance of any legislation, potential legislation, pending legislation, rule, regulation, hearing, or decision by any legislative, executive or administrative body.

Covered communication shall not include:

(i)communications with a professional journalist or newscaster, including an editorial board or editorial writer of a newspaper, magazine, news agency, press association or wire service, relating to news, as these terms are defined in *section seventy-nine-h of the civil rights law*, and communications relating to confidential and non-confidential news as described in subdivisions (b) and (c) of *section seventy-nine-h of the civil rights law* respectively and communications made pursuant to community outreach efforts for broadcast stations required by federal law; or

(ii)a communication that is: (A) directed, sent or distributed by the covered entity only to individuals who affirmatively consent to be members of the covered entity, contribute funds to the covered entity, or, pursuant to the covered entity's articles or bylaws, have the right to vote directly or indirectly for the election of directors or officers, or on changes to bylaws, disposition of all or substantially all of the covered entity's assets or the merger or dissolution of the covered entity; or (B) for the purpose of promoting or staging any candidate debate, town hall or similar forum to which at least two candidates seeking the same office, or two proponents of differing positions on a referendum or question submitted to voters, are invited as participants, and which does not promote or advance one candidate or position over another.

(c)"Expenditures for covered communications" shall mean: (i) any expenditure made, liability incurred, or contribution provided for covered communications; or (ii) any other transfer of funds, assets, services or any other thing of value to any individual, group, association, corporation whether organized for profit or not-for-profit, labor union, political committee, political action committee, or any other entity for the purpose of supporting or engaging in covered communications by the recipient or a third party.

**(d)**"Donation" shall mean any contribution, including in-kind, gift, loan, advance or deposit of money or anything of value made to a covered entity unless such donation is deposited into an account the funds of which are not used for making expenditures for covered communications.

**(e)**"Reporting period" shall mean the six month period within a calendar year starting January first and ending June thirtieth or the six month period within a calendar year starting July first and ending December thirty-first.

**2.**Disclosure of expenditures for covered communications.

**(a)**Any covered entity that makes expenditures for covered communications in an aggregate amount or fair market value exceeding ten thousand dollars in a calendar year shall file a financial disclosure report with the department of law. The financial disclosure report shall include:

**(i)**the name and address of the covered entity that made the expenditure for covered communications;

**(ii)**the name or names of any individuals who exert operational or managerial control over the covered entity. The disclosures required by this paragraph shall include the name of at least one natural person;

**(iii)**a description of the covered communication;

**(iv)**the dollar amount paid for each covered communication, the name and address of the person or entity receiving the payment, and the date the payment was made; and

**(iv)**the name and address of any individual, corporation, association, or group that made a donation of one thousand dollars or more to the covered entity and the date of such donation.

**(b)**The covered entity shall file a financial disclosure report with the department of law within thirty days of the close of a reporting period.

**(c)**If a covered entity keeps one or more segregated bank accounts containing funds used solely for covered communications and makes all of its expenditures for covered communications from such accounts, then with respect to donations included in subparagraph (iv) of paragraph (a) of this subdivision, the financial report need only include donations deposited into such accounts.

**3.**The department of law shall make the financial disclosure reports available to the public on the department of law website within thirty days of the close of each reporting period, provided however that the attorney general, or his or her designee, may determine that disclosure of donations shall not be made public if, based upon a review of the relevant facts presented by the covered entity, such disclosure may cause harm, threats, harassment, or reprisals to the source of the donation or to individuals or property affiliated with the source of the donation. The covered entity may appeal the attorney general's determination and such appeal shall be heard by a judicial hearing officer who is independent and not affiliated with or employed by the department of law, pursuant to regulations promulgated by the department of law. The covered entity shall not be required to disclose the sources of donations that are the subject of such appeal pending final judgment on appeal.

# History

*L 2016, ch 286, § 1* (Part G), eff Sept 23, 2016.

Annotations

# Research References & Practice Aids

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 173

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 173. Professional fund-raisers, commercial co-venturers and fund raising counsel

**1.**Registration and bond required. No person shall act as a professional fund raiser or fund raising counsel on behalf of a charitable organization required to be registered pursuant to this article before registering with the attorney general or after the expiration or cancellation of such registration or any renewal thereof. Applications for registration and re-registration shall be in writing, under oath, in the form prescribed by the attorney general and shall be accompanied by an annual fee in the sum of eight hundred dollars. A professional fund raiser shall at the time of filing each application for registration or re-registration, file with, and have approved by, the attorney general a bond. In said bond, the filer shall be the principal obligor, in the sum of ten thousand dollars, with one or more sureties whose liability in the aggregate as such sureties will at least equal the said sum.The bond which may be in the form of a rider to a larger blanket liability bond shall run to the attorney general for the use of the state and to any person who may have a cause of action against the obligor of said bond for any malfeasance or misfeasance in the conduct of such solicitation. Registration or re-registration when effected shall be for a period of one year, expiring one year from the date of registration or re-registration and may be renewed upon written application, under penalties for perjury, in the form prescribed by the attorney general and the filing of the bond and the fee prescribed herein for each additional one year period. Applications for registration and re-registration and bonds, when filed with the attorney general, shall become public records of the attorney general. If there is any material change in the information provided in any such application for registration or re-registration, the applicant or registrant shall notify the attorney general, under penalties for perjury, in writing within twenty days of such change.

**2.**Books and records. A professional fund raiser, commercial co-venturer and fund raising counsel shall maintain accurate and current books and records of all activities conducted pursuant to contracts required under section one hundred seventy-three-a of this article; which, until at least three years shall have elapsed after the end of the effective period of the contract to which they relate, shall be kept in such person's office available for inspection and examination and/or audit by the charitable organization and/or attorney general or any duly authorized representative. Provided, however, that any such books and records obtained by the attorney general shall not be available to the public for inspection. A professional fund raiser, commercial co-venturer and fund raising counsel shall, within seven days of a request of any charitable organization with which it has contracted, provide copies of such records to the charitable organization.

**3.**Violations. Any person who wilfully violates the provisions of this section is guilty of a misdemeanor.

# History

Add, L 1977, ch 669, § 5; amd, L 1986, ch 440, § 8, eff July 1, 1987; L 1987, ch 353, § 5; L 1989, ch 61, § 29, eff April 19, 1989, and deemed eff on and after April 1, 1989; *L 1995, ch 83, § 101*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 7*, eff Aug 1, 2002.

Annotations

# Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

**Amendment Notes:**

**2002.** Chapter 43, § 7 amended:

Sub 1, by deleting "fund-raiser" and "he has registered" and "making application" and "said" and "or a part thereof, expiring on the thirty-first day of August," and "oath" and "periods" and "in the office" and "and".

**2002.** Chapter 43, § 7 amended:

Sub 2, by deleting "fund-raiser" and "and" and "he or she" and "keep such books and records" and "his" and "his or her".

# Notes to Decisions

The statutory requirement that a professional fund raiser fully complete a registration statement by disclosing the names and addresses of clients that were charitable, religious, or other nonprofit organizations (other than political parties, political organizations, candidates, or committees and their support) was neither unreasonable, arbitrary nor capricious, and was founded upon a rational basis. *Viguerie Co. v Paterson, 94 A.D.2d 672, 462 N.Y.S.2d 669, 1983 N.Y. App. Div. LEXIS 18085 (N.Y. App. Div. 1st Dep't 1983)*, aff'd, *62 N.Y.2d 871, 478 N.Y.S.2d 864, 467 N.E.2d 528, 1984 N.Y. LEXIS 4416 (N.Y. 1984)*.

# Research References & Practice Aids

**Cross References:**

This section referred to in §§ 173-b, 173-c.

**Codes, Rules and Regulations:**

Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 94, 95 .

 75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(e), 6-3(c), 6-3(d), 6-5(a), 6-5(b), 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 173-a

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 173-a. Contracts of professional fund raisers, fund raising counsel and commercial co-venturers; closing statements; final accountings

**1.**No person shall act as a professional fund raiser, fund raising counsel or commercial co-venturer before he has a written contract with the charitable organization or other person benefitting from his services. A professional fund raiser or fund raising counsel shall within ten days after its execution by the parties thereto file with the attorney general a copy of each contract entered into between such professional fund raiser or fund raising counsel and a charitable organization required to be registered pursuant to this article, certified under penalties for perjury by said professional fund raiser or fund raising counsel to be a true and correct copy of such contract. When the services to be performed under such contracts include the oral solicitation of funds from the public, such oral presentations shall be deemed to be part of the contract and shall be reduced to a writing which in the case of a professional fund raiser shall be filed with the attorney general by the registrant at the time such contracts are filed. If there is any change in the presentation filed with the attorney general, the registrant shall notify the attorney general in writing within five days of such change. No services shall be performed under such a contract until the professional fundraiser shall have received an acknowledgement from the attorney general of the receipt of a copy of such contract or such contract shall have been on file with the attorney general for at least fifteen days, whichever is shorter. Provided, however, that no services shall be performed pursuant to such contract if, within fifteen days of filing, the attorney general has notified the professional fund raiser or fund raising counsel and the charitable organization of any deficiencies in the contract and/or the registration and filing under this article. True and correct copies of such contracts shall be kept on file in the offices of the charitable organization and the professional fund raiser, fund raising counsel or commercial co-venturer during the term thereof and until the expiration of a period of three years subsequent to the date the solicitation of contributions provided for therein actually terminates. Within ninety days after the termination of any such contract, the professional fund raiser shall file with the attorney general a closing statement, signed under penalties for perjury by all parties to the contract on forms prescribed by the attorney general. Such statement shall disclose gross revenue, all expenditures incurred in the performance of the contract, and all funds paid to the professional fund raiser and charitable organization. In the event that a contract term is longer than a one year period, the professional fund raiser shall file an interim statement, at least annually. No person shall act as a sub-contractor on behalf of another professional fund raiser prior to obtaining a written contract with such professional fund raiser and written consent from the charity on whose behalf fundraising activities are to be conducted pursuant to such contract, and such written consent shall have been attached to such contract and filed with the attorney general pursuant to subdivision one of this section. Willful violation of this section shall be a misdemeanor.

**2.**Every contract between a professional fund raiser and a charitable organization shall contain or shall be deemed to contain a provision that within five days of receipt by the professional fund raiser or any other person the gross revenue received from any solicitation shall be deposited in a bank account under the exclusive control of the charity.

NY CLS Exec § 173-a

**3.**Within ninety days after the termination of a sales promotion advertised to benefit a charitable organization, a commercial co-venturer shall provide such organization with an accounting stating the number of items sold, the dollar amount of each sale and the amount paid or to be paid to the charitable organization.In the event that any such sales promotion is longer than a one year period, the commercial co-venturer shall provide the charitable organization with an interim report, at least annually.

**4.**A charitable organization which enters into a contract with a commercial co-venturer shall file with the attorney general on the date that the next financial report is due to be filed the following information on forms prescribed by the attorney general and signed under penalties for perjury by an officer:(a) a list of the names and addresses of all commercial co-venturers authorized by the charitable organization to use its name during the year covered by that financial report and, if known, during the year following the year covered by the financial report, (b) a statement of the financial terms and any conditions of each co-venture contract, and (c) a statement whether each commercial co-venturer has provided the charitable organization with an accounting as prescribed by subdivision three of this section.

## History

Add, L 1977, ch 669, § 5, eff October 1, 1977; amd, L 1986, ch 440, § 9, eff July 1, 1987; L 1987, ch 353, § 6, eff July 1, 1987; L 1989, ch 61, § 30, eff April 19, 1989, and deemed eff on and after April 1, 1989; *L 1995, ch 83, § 102*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 8*, eff Aug 1, 2002.

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

**Amendment Notes:**

**2002.** Chapter 43, § 8 amended:

Sub 1, by deleting "true and correct" and "a" and "shall be filed by the professional fund-raiser or fund raising counsel who is a party thereto with the attorney general within ten days after it is made" and "and" and "and" and "fund-raiser" and "fund-raiser" and "a closing statement" and "disclosing" and "receipts" and "fundraiser".

**2002.** Chapter 43, § 8 amended:

Sub 2, by deleting "fund-raiser" and "all funds".

**2002.** Chapter 43, § 8 amended:

Sub 3, by deleting "A commercial co-venturer, within" and "which it has" and "will" and "interim report showing" and "and" and "a final accounting at least once a year for all sales promotions during the year. In the event that such sales promotion is longer than a one year period, the commercial co-venturer shall provide an interim statement, at least annually".

**2002.** Chapter 43, § 8 amended:

Sub 4, by deleting "annual" and "co-ventures" and "preceeding".

## Notes to Decisions

1.Generally

2.Under former Social Service Law § 482-g

### 1. Generally

The state made a prima facie showing sufficient to justify entry of an order enjoining defendant, a nonresident co-venturer with various charitable organizations for fund raising purposes, from conducting any solicitations in the state, where it showed that defendant had violated prior consent decrees by using unauthorized sales pitches, and by failing to file contracts with the charitable organizations with the Secretary of State. *People v United Funding, Inc., 106 A.D.2d 846, 484 N.Y.S.2d 245, 1984 N.Y. App. Div. LEXIS 21748 (N.Y. App. Div. 3d Dep't 1984)*, app. denied, *64 N.Y.2d 609, 489 N.Y.S.2d 1026, 1985 N.Y. LEXIS 18846 (N.Y. 1985)*.

### 2. Under former Social Service Law § 482-g

While the purpose of statute requiring the filing of contracts entered into between professional fund raisers and charitable or religious organizations, and barring the performance of services under such a contract until the fund raiser has received an acknowledgment from the State Board of Social Welfare of the receipt of a copy of such contract, is to meet the problem posed by unprincipled and unscrupulous charity promoters, the statute confers no power upon the Board to approve or disapprove a fund raising contract. *Sport Celebrities, Inc. v Maull, 56 A.D.2d 849, 392 N.Y.S.2d 315, 1977 N.Y. App. Div. LEXIS 11190 (N.Y. App. Div. 2d Dep't)*, app. denied, *42 N.Y.2d 803, 1977 N.Y. LEXIS 3695 (N.Y. 1977)*.

## Research References & Practice Aids

**Cross References:**

This section referred to in § 172-d.

**Codes, Rules and Regulations:**

Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 63, 86, 89, 90, 94, 95 .

75 NY Jur 2d Libraries § 12.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(b), 6-2(f), 6-3(b), 6-3(e)(1), 6-3(e)(2), 6-3(e)(4), 6-5(a), 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## *NY CLS Exec § 173-b*

Current through 2019 released Chapters 1-334

***New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)***

# § 173-b. Professional solicitor

**1.**Registration required. No person shall act as a professional solicitor in the employ of a professional fund raiser required to register pursuant to section one hundred seventy-three of this article before he or she has registered with the attorney general or after the expiration or cancellation of such registration or any renewal thereof. Application for registration or re-registration shall be in writing and signed under penalties for perjury in the form prescribed by the attorney general and shall be accompanied by a fee in the sum of eighty dollars. Such registration or re-registration when effected shall be for a period of one year, expiring one year from the date of such registration or re-registration, and may be renewed upon written application, signed under penalties for perjury, in the form prescribed by the attorney general and the payment of the fee prescribed herein, for additional one year periods. Applications for registration and re-registration, when filed with the attorney general, shall become public records in the office of the attorney general.

**2.**Limitations upon professional solicitors for law enforcement support organizations. No person or professional solicitor, in the course of soliciting or collecting funds on behalf of any law enforcement support organization, shall engage in any acts prohibited by subdivision seventeen of section one hundred seventy-two-d of this article, or by paragraph (h) of subdivision two of section one hundred seventy-five of this article, provided, however, that no criminal liability shall attach to any law enforcement support organization or its officers because of the activities of any professional solicitor employed on behalf of such organization.

**3.**Violations. Any person who wilfully violates the provisions of this section is guilty of a misdemeanor.

## History

Add, L 1977, ch 669, § 5; amd, L 1986, ch 440, § 10, eff July 1, 1987 (see 1986 note below); L 1989, ch 61, § 31, eff April 19, 1989, and deemed eff on and after April 1, 1989; L 1989, ch 489, § 6, eff July 16, 1989; *L 1995, ch 83, § 103*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 9*, eff Aug 1, 2002.

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,**  eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

**Amendment Notes:**

**2002.** Chapter 43, § 9 amended:

Sub 1, by deleting "fund-raiser" and ", under oath," and "or a part thereof, expiring on the thirty-first day of August," and "oath".

# Notes to Decisions

CLS *Exec § 173-b* did not impermissibly discriminate against professional solicitors employed by professional fundraisers, who were required to register and pay $80 fee, on basis that volunteers and employees of charitable organizations were excluded from definition of "professional fundraiser" and thus were not subject to fee, since all charitable organizations soliciting in New York were required to register and pay registration fees, all professional solicitors not working in-house for any charitable organization were charged fee without regard to their viewpoints, and § 173-b was merely designed to regulate independent professional solicitors who were not otherwise regulated. *National Awareness Found. v Abrams, 50 F.3d 1159, 1995 U.S. App. LEXIS 6272 (2d Cir. N.Y. 1995)*.

Statute requiring professional fundraisers to register and pay $80 fee (CLS *Exec § 173-b*) did not violate First Amendment, since it served legitimate governmental purpose of defraying expenses incident to regulating charitable solicitations by professional solicitors, fee was not imposed on basis of speech content, and all professional solicitors were charged fee without regard to nature of cause espoused. *National Awareness Found. v Abrams, 50 F.3d 1159, 1995 U.S. App. LEXIS 6272 (2d Cir. N.Y. 1995)*.

# Research References & Practice Aids

**Cross References:**

This section referred to in § 173-c.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 90 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(e), 6-3(c), 6-3(g), 6-5(b), 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 173-c

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 173-c. Non-resident professional fund raisers, fund raising counsel, professional solicitors and commercial co-venturers; designation of secretary of state as agent for service of process; service of process

**1.**Any professional fund raiser, fund raising counsel, professional solicitor or commercial co-venturer resident or whose principal place of business is without the state or organized under and by virtue of the laws of another or foreign state, who or which has been engaged by or on behalf of any charitable organization to conduct any fund raising activities in this state and/or solicit contributions from people in this state shall be deemed to have irrevocably appointed the secretary of state as the agent upon whom may be served any summons, subpoena, subpoena duces tecum, other process or notice directed to such professional fund raiser, fund raising counsel, professional solicitor, commercial co-venturer or any partner, principal, officer, or director thereof, in any action or proceeding brought by the attorney general or any other party under the provisions of this section. Any such professional fund raiser, fund raising counsel, professional solicitor or commercial co-venturer may file with the secretary of state a designation, in terms complying herewith, duly acknowledged, irrevocably appointing the secretary of state as the agent upon whom may be served any such process; provided, however, that a designation filed with the secretary of state pursuant to *section three hundred fifty-two-a of the general business law*, *section thirteen hundred four of the not-for-profit corporation law*, or *section thirteen hundred four of the business corporation law* shall serve also as such designation.

**2.**Service of such process or notice upon the secretary of state shall be made by personally delivering to and leaving with the secretary of state or any person authorized by the secretary of state to accept such service a copy thereof at the office of the department of state in the city of Albany, and such service shall be sufficient service provided that notice of such service and a copy of such process are forthwith sent by the attorney general or other party as the case may be to such professional fund raiser, fund raising counsel, professional solicitor or commercial co-venturer by certified mail with return receipt requested, at the office address as set forth in the registration form required to be filed with the attorney general pursuant to sections one hundred seventy-three and one hundred seventy-three-b of this article, or in default of the filing of such form, at the last address known to the attorney general or other party. Service of such process shall be complete ten days after the receipt by the attorney general or other party of a return receipt purporting to be signed by the addressee or a person qualified to receive the addressee's certified mail, in accordance with the rules and customs of the post office department, or, if acceptance was refused by the addressee or the agent, ten days after the return to the attorney general or other party of the original envelope bearing a notation by the postal authorities that receipt thereof was refused.

# History

NY CLS Exec § 173-c

Add, L 1977, ch 669, § 5; amd, L 1986, ch 440, § 11, eff July 1, 1987 (see 1986 note below); *L 1995, ch 83, § 104*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 10*, eff Aug 1, 2002.

Annotations

# Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,**  eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

## Notes to Decisions

Service upon the "principal, officer, or director" of a non-resident professional fund raiser through service upon the Secretary of State was expressly permitted. *Spitzer v All-Pro Telemarketing Assocs. Corp., 195 Misc. 2d 245, 758 N.Y.S.2d 775, 2003 N.Y. Misc. LEXIS 242 (N.Y. Sup. Ct. 2003)*.

## Research References & Practice Aids

**Cross References:**

Application for authority; contents, CLS *Bus Corp § 1304*.

Foreign corporation to make designation, CLS *Gen Bus § 352-a*.

Application for authority; contents, CLS *N-PCL 1304*.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 90 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis § 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

NY CLS Exec § 173-c

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 174

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 174. Solicitation by unregistered charitable organizations, professional fund-raisers or commercial co-venturers a fraud upon the people of the state

**1.**No charitable organization shall employ any professional fund raiser or commercial co-venturer unless and until such fund raiser or commercial co-venturer is registered pursuant to this article. Any such contract of employment shall be voidable at the option of the charitable organization.

**2.**No professional fund raiser or commercial co-venturer shall enter into any contract or raise any funds for any organization required to be registered pursuant to this article unless such charitable organization actually so registered.

**3.**No professional fund raiser required to be registered under this article shall employ any professional solicitor who is not registered in accordance with this article.

**4.**In addition to all other remedies provided by law the attorney general may bring an action to enjoin the violation of the provisions of this section. The attorney general may give notice of at least fifteen days in writing by registered or certified mail to the organization, person or persons violating the provisions hereof, requiring that registration be accomplished or that the solicitation funds be immediately terminated. The failure to immediately discontinue solicitation or to register in accordance with the provisions of this article within fifteen days of service of such notice shall be deemed to be a continuing fraud upon the people of the state of New York.

## History

Add, L 1977, ch 669, § 5; amd, L 1985, ch 347, § 1, eff Nov 13, 1985 (see 1985 note below); *L 2002, ch 43, § 11*, eff Aug 1, 2002.

Annotations

## Notes

**Editor's Notes:**

**Laws 1985, ch 347, § 3,** eff Nov 13, 1985, provides as follows:

§ 3. This act shall take effect on the one hundred twentieth day after it shall have become a law, provided however, that effective immediately the addition, amendment and/or repeal of any rule or regulation necessary for the

implementation of the foregoing sections of this act on their effective date are authorized and directed to be made and completed on or before such effective date.

**Amendment Notes:**

**2002.** Chapter 43, § 11 amended:

Sub 1, by deleting "fund-raiser".

**2002.** Chapter 43, § 11 amended:

Sub 2, by deleting "fund-raiser".

**2002.** Chapter 43, § 11 amended:

Sub 3, by deleting "fund-raiser".

# Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 90, 94 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Annotations:**

Criminal offenses under statutes and ordinances regulating charitable solicitations. *76 ALR3d 924*.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(e), 6-3(c), 6-3(e)(1), 6-3(e)(3), 6-4, 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.



## NY CLS Exec § 174-a

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 174-a. Contracts with charitable organizations

**1.**Whenever a charitable organization contracts with a professional fund raiser or fund raising counsel or commercial co-venturer, the charitable organization shall have the right to cancel the contract without cost, penalty, or liability for a period of fifteen days following the date on which said contract is filed with the attorney general pursuant to the provisions of this article, regardless of the date of execution of said contract. Any provision in the contract that is intended to waive this right of cancellation shall be void and unenforceable.

**2.**A charitable organization may cancel a contract signed pursuant to subdivision one of this section by a written notice of cancellation. If given by mail, cancellation shall be deemed effective when deposited in a mailbox, properly addressed and postage prepaid. The notice shall be sufficient if it states that the charitable organization does not intend to be bound by the contract.

**3.**Whenever a charitable organization cancels a contract pursuant to the provisions of this section, it shall mail a duplicate copy of the notice of cancellation to the attorney general, at the address designated for that purpose.

**4.**Every contract entered into pursuant to subdivision one of this section shall contain, in a conspicuous typeface:

> **(a)**a concise, accurate statement of the charitable organization's right to cancel;

> **(b)**a concise, accurate statement of the period during which the contract may be cancelled;

> **(c)**the address to which the notice of cancellation is to be sent;

> **(d)**the address of the attorney general to which a duplicate of the notice of cancellation is to be sent; and

> **(e)**a clear statement of the financial arrangement including, if applicable, a statement of the percentage of the total funds collected on behalf of the charitable organization which shall be paid to the professional fund raiser or any other person for purposes other than the exclusive benefit of the charitable organization.

**5.**Any funds collected by any professional fund raiser, fund raising counsel, professional solicitor, commercial co-venturer, charitable organization or any other person in violation of this section shall be deemed to be held in trust for the benefit of the charitable organization without deduction for costs or expenses of any nature. A charitable organization shall be entitled to recover all funds collected in violation of this section together with costs, disbursements and allowances.

**6.**The failure of a professional fund raiser, fund raising counsel or commercial co-venturer to immediately discontinue solicitation or any other fund raising activity upon receipt of a notice of cancellation in accordance with the provisions of this article within fifteen days of the cancellation of the contract shall be deemed to be a continuing fraud upon the people of the state of New York.

NY CLS Exec § 174-a

**7.**In addition to all other remedies provided by law the attorney general may bring an action to enjoin the violation of the provisions of this section and to recover restitution, damages, costs and attorneys fees.

# History

Add, L 1985, ch 347, § 2, eff Nov 13, 1985; amd, L 1986, ch 440, § 12, eff July 1, 1987; L 1989, ch 61, §§ 32, 33, eff April 19, 1989, and deemed eff on and after April 1, 1989; *L 1995, ch 83, § 105*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 12*, eff Aug 1, 2002.

Annotations

# Notes

**Prior Law:**

Former § 174–a, add, L 1977, ch 669, § 5; renumbered § 174–d, L 1985, ch 347, § 2, eff Nov 13, 1985.

**Editor's Notes:**

**Laws 1985, ch 347, § 3,** eff Nov 13, 1985, provides as follows:

§ 3. This act shall take effect on the one hundred twentieth day after it shall have become a law, provided however, that effective immediately the addition, amendment and/or repeal of any rule or regulation necessary for the implementation of the foregoing sections of this act on their effective date are authorized and directed to be made and completed on or before such effective date.

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

**Amendment Notes:**

**2002.** Chapter 43, § 12 amended:

Sub 1, by deleting a comma.

**2002.** Chapter 43, § 12 amended:

Sub 2, by deleting "indicates".

**2002.** Chapter 43, § 12 amended:

Sub 4, par (e), by deleting "retained by" and "rund-raiser".

# Research References & Practice Aids

**Cross References:**

This section referred to in § 172-d.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 94.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-3(e)(1)–6-3(e)(3), 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



# *NY CLS Exec § 174-b*

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 174-b. Solicitation

**1.**Any solicitation, by any means, including but not limited to oral solicitation, by or on behalf of a registered charitable organization which is required to file financial reports pursuant to this article and has filed all such reports, shall include therein a statement that upon request, a person may obtain from the organization or from the charities registry on the attorney general's website, a copy of the last financial report filed by the organization with the attorney general. Such statement shall specify the address of the organization and the address of the attorney general, to which such request should be addressed and in the case of a written solicitation, must be placed conspicuously in the material with print no smaller than ten point bold face type or, alternatively, no smaller than the size print used for the most number of words in the statements. Provided, however, such statement need not be made where the space for a printed advertisement or promotional time in any media has been donated or made available to the charitable organization at no cost and such space or time does not reasonably permit inclusion of such statement.

**2.**Any solicitation used by or on behalf of any charitable organization shall include:

    **(a)**a clear description of the programs and activities for which it has requested and has expended or will expend contributions or shall include therein a statement that, upon request, a person may obtain from the organization such a description; and

    **(b)**a statement identifying the website and telephone number of the New York state office of the attorney general where an individual can receive information on charitable organizations.

    **(c)**If the solicitation is by an institution subject to article five-A of the not-for-profit corporation law, and is for an endowment fund, the solicitation must include a statement that, unless otherwise restricted by the gift instrument pursuant to paragraph (b) of *section five hundred fifty-three of the not-for-profit corporation law*, the institution may expend so much of an endowment fund as it deems prudent after considering the factors set forth in paragraph (a) of *section five hundred fifty-three of the not-for-profit corporation law*.

**3.**In addition to any other disclosure required by law, any solicitation by any means by a professional fund raiser or professional solicitor on behalf of a charitable organization required to be registered pursuant to this article shall clearly and unambiguously disclose:

    **(a)**the name of the professional fund raiser as on file with the attorney general and that the solicitation is being conducted by a professional fund raiser;

    **(b)**the name of the individual professional solicitor as on file with the attorney general and that the individual is receiving compensation for conducting the solicitation; and

    **(c)**a statement identifying the website and telephone number of the office of the attorney general where an individual can receive information on charitable organizations.

NY CLS Exec § 174-b

**4.**If any charitable organization makes contributions to another organization which is not its affiliate as defined by paragraph (b) of subdivision four of section one hundred seventy-two-b of this article, such solicitation shall include a statement that such contributions have been made and that a list of all organizations which have received contributions during the past twelve months from the soliciting organization may be obtained from that organization provided, however, a united way, federated fund or incorporated community appeal, by or through which a donation is merely transferred to a charity selected by the donor, need not include such donor selected organizations in the list.

**5.**A charitable organization shall comply with all requests made pursuant to subdivisions two and four of this section within fifteen days of their receipt. In the event that a charitable organization required to register pursuant to this article has not previously been required to file an annual report with the attorney general, the solicitation shall state the date when such report will be filed. Provided, however, that no additional solicitation shall be permitted by charitable organizations until an annual report is filed, if the report is delayed beyond one year.

# History

Add, L 1977, ch 669, § 5, eff Oct 1, 1977; amd, L 1986, ch 440, § 13, eff July 1, 1986 (see 1986 note below); L 1987, ch 353, § 7, eff July 1, 1987; *L 1994, ch 150, § 1*, eff Sept 5, 1994; *L 1995, ch 83, § 106*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 13*, eff Aug 1, 2002; *L 2010, ch 490, § 14*, eff Sept 17, 2010; *L 2018, ch 373, § 1*, eff March 21, 2019.

Annotations

# Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

*Laws 2018, ch 373, § 2,* eff March 21, 2019, provides:

§ 2. This act shall take effect on the ninetieth day after it shall have become a law and shall apply to all solicitation used by or on behalf of any charitable organization on and after such effective date.

**Amendment Notes:**

**2010.** Chapter 490, § 14 amended:

Sub 2 by adding the matter in italics.

**2002.** Chapter 43, § 13 amended:

Sub 1 by deleting at fig 1 "used", at fig 2 "have previously filed an annual report", at fig 3 "annual", at fig 4 "the broadcast" and adding the matter in italics.

Sub 2 by adding the matter in italics.

Sub 2-a designated as sub 3.

Sub 3, par (a) by deleting at fig 1 "and".

By designating former subs 3 and 4 as subs 4 and 5, respectively.

Sub 4 by deleitng at fig 1 "one," at fig 2 a comma, at fig 3 "three" and adding the matter in italics.

Sub 5 by adding the matter in italics.

**The 2018 amendment by ch 373, § 1,** substituted "the charities registry on the attorney general's website" for "the attorney general" in the first sentence of 1; redesignated and renumbered former 2 as the introductory language of 2, 2(a) and 2(c) and added 2(b); and added 3(c).

## Research References & Practice Aids

**Cross References:**

This section referred to in § 175.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 92.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-2(f), 6-3(f)(1), 6-5(b), 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

End of Document



## NY CLS Exec § 174-c

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

## § 174-c. Sales advertised to benefit a charitable organization

All advertising, of every kind and nature, that a sale of goods, services, entertainment or any other thing of value will benefit a charitable organization shall set forth the anticipated portion of the sales price, anticipated percentage of the gross proceeds, anticipated dollar amount per purchase, or other consideration or benefit the charitable organization is to receive. Provided, however, that advertising for sales by a charitable organization that has not used the services of a professional fund raiser or commercial co-venturer in any way for the sale shall not be subject to the requirement of this section.

## History

Add, L 1977, ch 669, § 5; amd, L 1986, ch 440, § 14, eff July 1, 1987 (see 1986 note below).

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

## Notes to Decisions

The state made a prima facie showing sufficient to justify entry of an order enjoining defendant, a nonresident co-venturer with various charitable organizations for fund raising purposes, from conducting any solicitations in the state, where it showed that defendant had violated prior consent decrees by using unauthorized sales pitches, and by failing to file contracts with the charitable organizations with the Secretary of State. *People v United Funding, Inc., 106 A.D.2d 846, 484 N.Y.S.2d 245, 1984 N.Y. App. Div. LEXIS 21748 (N.Y. App. Div. 3d Dep't 1984)*, app. denied, *64 N.Y.2d 609, 489 N.Y.S.2d 1026, 1985 N.Y. LEXIS 18846 (N.Y. 1985)*.

## Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 92.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-1, 6-3(f)(1).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 174-d

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 174-d. Unauthorized use of names when soliciting or collecting contributions

**1.**No person shall, for the purpose of soliciting contributions from persons in this state, use the name of any other person, except that of an officer, director or trustee of the charitable organization by or for which contributions are solicited, without the written consent of such other person.

**2.**A person shall be deemed to have used the name of another person for the purpose of soliciting contributions if such latter person's name is listed on any stationery, advertisement, brochure or correspondence in or by which a contribution is solicited by or on behalf of a charitable organization or his name is listed or referred to in connection with a request for a contribution as one who has contributed to, sponsored or endorsed the charitable organization or its activities.

**3.**Nothing contained in this section shall prevent the publication of names of contributors without their written consents, in an annual or other periodic report issued by a charitable organization for the purpose of reporting on its operations and affairs to its membership or for the purpose of reporting contributions to contributors.

**4.**A violation of this section shall be a misdemeanor.

## History

Formerly § 174–a, add, L 1977, ch 669, § 5; renumbered § 174–d, L 1985, ch 347, § 2, eff Nov 13, 1985 (see 1985 note below).

Annotations

## Notes

**Editor's Notes:**

**Laws 1985, ch 347, § 3,** eff Nov 13, 1985, provides as follows:

§ 3. This act shall take effect on the one hundred twentieth day after it shall have become a law, provided however, that effective immediately the addition, amendment and/or repeal of any rule or regulation necessary for the implementation of the foregoing sections of this act on their effective date are authorized and directed to be made and completed on or before such effective date.

NY CLS Exec § 174-d

# Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 93 .

35B NY Jur 2d Criminal Law Substantive Principles and Offenses § 1256.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-4, 6-6(a).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 175

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 175. Enforcement by attorney general

**1.**An action for violation of this article may be prosecuted by the attorney general, or his deputy, in the name of the people of the state, and in any such action, the attorney general or his deputy, shall exercise all the powers and perform all duties which the district attorney would otherwise be authorized to exercise or to perform therein.

**2.**In addition to any other action or proceeding authorized by law and any action or proceeding by the attorney general, the attorney general may bring an action or special proceeding in the supreme court, in the name and in behalf of the people of the state of New York, against a charitable organization and any other persons acting for it or in its behalf to enjoin such organization and/or persons from continuing the solicitation or collection of funds or property or engaging therein or doing any acts in furtherance thereof, and to cancel any registration statement previously filed with the attorney general pursuant to this article and for an order awarding restitution and damages, penalties and costs; and removing any director or other person responsible for the violation of this article; dissolving a corporation and other relief which the court may deem proper, whenever the attorney general shall have reason to believe that the charitable organization or other person:

    **(a)**is violating or has violated any of the provisions of this article;

    **(b)**has refused or failed, or any of its principal officers has refused or failed, after notice, to produce any records of such organizations;

    **(c)**is employing or about to employ, or there is employed or about to be employed, in any solicitation or collection of funds or other property for such organization, any device, scheme or artifice to defraud or for obtaining money or property by means of a false pretense, representation or promise;

    **(d)**has made a material false statement in an application, registration or statement required to be filed pursuant to this article;

    **(e)**(i) has failed or is failing to apply the funds solicited from the public in a manner substantially consistent with its charitable purposes or solicitation or has engaged in repeated fraudulent or illegal activities, acts or conduct in connection with the solicitation for charitable purposes; (ii) or, in the case of a law enforcement support organization, has failed or is failing to apply the funds solicited from the public in a manner substantially consistent with the purposes of the solicitation or has engaged in repeated fraudulent or illegal activities, acts or conduct in connection with the solicitation for purposes of the law enforcement support organization;

    **(f)**violates any order or determination made by the attorney general pursuant to the provisions of this article;

    **(g)**has used or intends to use false or materially misleading advertising or promotional material in connection with any solicitation or with any commercial co-venture or fails to disclose the information required to be disclosed pursuant to section one hundred seventy-four-b of this article; or

**(h)** is a law enforcement support organization and is employing or about to employ, or there is employed or about to be employed, in any solicitation or collection of funds or other property for such organization, any device, scheme or artifice to defraud or for obtaining money or property by means of a false pretense, representation or promise which shall include, without limitation, making any of the following representations: (i) that professional fund raisers or solicitors are police officers or employees of any law enforcement agency, (ii) that funds collected will be used to aid widows and children of police officers slain in the line of duty or for any other charitable program unless the organization is actually engaged in such a program, (iii) that contributors will receive special benefits from police officers, and (iv) that contributions are tax deductible as a charitable contribution or as a business expense unless they so qualify under the applicable provisions of the internal revenue code.

In connection with such proposed action or proceeding the attorney general is authorized to take proof, issue subpoenas and administer oaths in the manner provided in the civil practice law and rules.

**3.** Upon a showing by the attorney general in an application for an injunction that any person engaged in solicitation has been convicted in this state or elsewhere of a felony or of a misdemeanor involving the misappropriation, misapplication or misuse of the money or property of another, and who has not, subsequent to such conviction, received executive pardon therefor or a certificate of relief from disabilities or a certificate of good conduct pursuant to article twenty-three of the correction law, the supreme court, after a hearing, may enjoin such person from engaging in any solicitation.

**4.** The attorney general may exercise the authority granted in this section against any charitable organization which operates under the guise or pretense of being an organization exempted by the provisions of section one hundred seventy-two-a of this article and is not in fact an organization entitled to such an exemption.

**5.** Whenever the attorney general shall have reason to believe that any professional fund-raiser, fund raising counsel, professional solicitor or commercial co-venturer is operating in violation of the provisions of this article, or has made any false statement in any application, registration or statement required to be filed pursuant to this article, or if any professional fund-raiser, fund raising counsel, or commercial co-venturer has refused or failed, after notice, to produce any records demanded of him, or there is employed or is about to be employed in any solicitation or collection of contributions for a charitable or religious organization any device, scheme or artifice to defraud or for obtaining money or property by means of any false pretense, representation or promise, in addition to any other action or proceeding authorized by law, he may bring in the supreme court an action or proceeding in the name, and on behalf, of the people of the state of New York against such professional fund-raiser, fund raising counsel, commercial co-venturer, professional solicitor, and any other person who has participated or is about to participate in such solicitation or collection by employing such device, scheme, artifice, false representation or promise, to enjoin such professional fund-raiser, fund raising counsel, commercial co-venturer, professional solicitor, or other person from continuing such solicitation or collection or engaging therein or doing any acts in furtherance thereof, or to cancel any registration statement previously filed with the attorney general.

**6.** Whenever the attorney general has determined to commence an action under this article, he may present to any justice of the supreme court, before beginning such action, an application in writing for an order directing the person or persons mentioned in the application to appear before the justice of the supreme court or referee designated in such order and answer such questions as may be put to them or to any of them, or to produce such papers, documents and books concerning the practices to which the action which he has determined to bring relates, and it shall be the duty of the justice of the supreme court to whom such application for the order is made to grant such application. The application for such order made by the attorney general may simply show upon his information and belief that the testimony of such person or persons is material and necessary. The provisions of the civil practice law and rules relating to an application for an order for the examination of witnesses before the commencement of an action and the method of proceeding on such examination, shall not apply except as herein prescribed. The order shall be granted by the justice of the supreme court to whom the application has been made with such preliminary injunction or stay as may appear to such justice to be proper and expedient and shall specify the time when and place where the witnesses are required to appear. The justice or referee may adjourn such examination from time to time and witnesses must attend accordingly. The

testimony of each witness must be subscribed by him and all must be filed in the office of the clerk of the county in which such order for examination is filed. The order for such examination must be signed by the justice making it and service of a copy thereof with an endorsement by the attorney general signed by him or his deputy, to the effect that the person named therein is required to appear and be examined at the time and place and before the justice or referee specified in such endorsement, shall be sufficient notice for the attendance of witnesses. Such endorsement may contain a clause requiring such person to produce at such examination all books, papers and documents in his possession or under his control relating to the subject of such examination. The order shall be served upon the person named in the endorsement aforesaid by showing him the original order and delivering to and leaving with him at the same time a copy thereof, endorsed as above provided, and by paying or tendering to him the fee allowed by law to witnesses subpoenaed to attend trials of civil actions in any court of record in this state.

**7.** In addition to any other action authorized by law, the attorney general may bring an action or special proceeding in the supreme court to recover any civil penalties assessed by the attorney general.

**8.** Nothing contained in section one hundred seventy-seven of this article shall prevent, limit, restrict, impede or delay the attorney general from instituting, at any time, any action or proceeding authorized by the provisions of this article or any other appropriate law, as he may deem necessary.

# History

Add, L 1977, ch 669, § 5, eff Oct 1, 1977; amd, L 1986, ch 440, §§ 15, 16, eff July 1, 1987 (see 1986 note below); L 1989, ch 489, §§ 7, 8, eff July 16, 1989, 1995, ch 83, § 107, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 14*, eff Aug 1, 2002; *L 2010, ch 56, § 2* (Part LL), eff June 22, 2010.

Annotations

# Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,** eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

**Amendment Notes:**

**2010.** Chapter 56, § 2 (Part LL) amended:

Sub 3 by deleting at fig 1 "from the parole board" and adding the matter in italics.

**2002.** Chapter 43, § 14 amended:

Sub 2, opening par by deleting at fig 1 "he or she", at fig 2 "and" and adding the matter in italics.

Sub 2, par (a) by deleting at fig 1 "operating in violation" and adding the matter in italics.

Sub 2, par (e) by deleting at fig 1 "the" and at fig 2 "for charitable purposes".

Sub 2, par (g) by deleting at fig 1 "for charitable purposes or for the purposes of any law enforcement support organization".

Sub 2, closing par by adding the matter in italics.

Sub 3 by deleting at fig 1 "the", at fig 2 "or collection of funds for charitable purposes or for the purposes of any law enforcement support organization, either as an individual or as a member of a copartnership, or as an officer of a corporation or as an agent for some other person, or copartnership or corporation,", at fig 3 "or collection of funds for charitable purposes or for the purposes of any law enforcement support organization" and adding the matter in italics.

**1995.** Chapter 83, § 107 amended:

Sub 5 by deleting at fig 1 "secretary" and adding the matter in italics.

Sub 7 by deleting at fig 1 "on behalf of the secretary", at fig 2 "secretary" and adding the matter in italics.

## Notes to Decisions

1.Under former Social Service Law §§ 482-c, 482-i

2.Illustrative cases

### 1. Under former Social Service Law §§ 482-c, 482-i

Responsibility to enjoin frauds upon the public in the solicitation of funds, and in other ways to prevent unscrupulous fund raising schemes, lies with the Attorney General. *Sport Celebrities, Inc. v Maull, 56 A.D.2d 849, 392 N.Y.S.2d 315, 1977 N.Y. App. Div. LEXIS 11190 (N.Y. App. Div. 2d Dep't)*, app. denied, *42 N.Y.2d 803, 1977 N.Y. LEXIS 3695 (N.Y. 1977)*.

### 2. Illustrative cases

Where the Attorney General sued a professional fundraiser and its president to permanently enjoin them from soliciting and collecting charitable contributions from the public, he was properly granted summary judgment on the issue of liability, as he established that the fundraiser's solicitation of charitable funds on behalf of a cancer prevention organization was fraudulent and deceptive because the fundraiser misrepresented the extent of the organization's actions in helping women survive breast cancer. *People v Coalition Against Breast Cancer, Inc., 134 A.D.3d 1081, 22 N.Y.S.3d 562, 2015 N.Y. App. Div. LEXIS 9661 (N.Y. App. Div. 2d Dep't 2015)*, app. denied, *28 N.Y.3d 901, 63 N.E.3d 69, 40 N.Y.S.3d 349, 2016 N.Y. LEXIS 2717 (N.Y. 2016)*.

Where the Attorney General established that a professional fundraiser's solicitation of charitable funds on behalf of a cancer prevention organization was fraudulent and deceptive, the trial court properly pierced the corporate veil to hold the fundraiser's president personally liable, as an officer of a corporation could be held liable for fraud if he participated in it or had actual knowledge of it. *People v Coalition Against Breast Cancer, Inc., 134 A.D.3d 1081, 22 N.Y.S.3d 562, 2015 N.Y. App. Div. LEXIS 9661 (N.Y. App. Div. 2d Dep't 2015)*, app. denied, *28 N.Y.3d 901, 63 N.E.3d 69, 40 N.Y.S.3d 349, 2016 N.Y. LEXIS 2717 (N.Y. 2016)*.

## Opinion Notes

**Agency Opinions**

**1. In General**

Attorney General's office, through written service agreement, could partner with 2 non-profit corporations to modernize its registry of not-for-profit corporations, charitable trusts, and fund-raising professionals where such arrangement was part of agreement for consideration and did not constitute gifts to individual employees or to office. State Ethics Comm Adv Op No. 03-5.

# Research References & Practice Aids

**Cross References:**

This section referred to in § 172-d.

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities §§ 94, 95 .

96 NY Jur 2d State of New York § 34 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Annotations:**

Criminal offenses under statutes and ordinances regulating charitable solicitations. *76 ALR3d 924*.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-1, 6-6(a), 6-6(c), 6-2(e), 6-2(f), 6-3(f)(1), 6-3(g).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 175-a

Current through 2019 released Chapters 1-334

**New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)**

## § 175-a. Application of article

This article shall not be construed to limit or restrict the exercise of the powers or the performance of the duties of the attorney general or district attorney which they otherwise are authorized to exercise or perform under any other provision of law.

## History

Add, L 1977, ch 669, § 5, eff Oct 1, 1977.

Annotations

## Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 94.

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis § 6-6(a).

**Hierarchy Notes:**

NY CLS Exec, Art. 7-A

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

NY CLS Exec § 175-a

**End of Document**



## *NY CLS Exec § 175-b*

Current through 2019 released Chapters 1-334

***New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)***

## § 175-b. Municipal option

Nothing contained in this article shall be construed to prevent any municipality from adopting or enacting any local law, ordinance or regulation imposing more restrictive requirements for the solicitation of contributions for law enforcement support organizations, provided, however, that nothing permitted by this section shall be construed to modify or be inconsistent with the legal standards in this article that are applicable to individuals and organizations other than law enforcement support organizations and professional fund raisers and solicitors which are employed by such law enforcement support organizations even when such other individuals and organizations act jointly and together with such law enforcement support organizations.

## History

Add, L 1989, ch 489, § 9, eff July 16, 1989.

Annotations

## Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis § 6-3(g).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

NY CLS Exec § 175-b

Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



# NY CLS Exec § 176

Current through 2019 released Chapters 1-334

**New York Consolidated Laws Service > Executive Law (Arts. 1 — 50) > Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)**

## § 176. Advisory council

The advisory council on charities registration is continued. It shall advise the attorney general and make recommendations with respect to the operation and administration of this article with the objective of assuring maximum simplicity in the conformance of charitable organizations with the provisions of this article. The council shall consist of not fewer than five nor more than ten members. The members of the advisory council now in office shall continue to hold office for the remainder of the terms to which they were appointed and thereafter until their successors are appointed. The attorney general shall designate the chairman of the council and may appoint additional and successor members and fix their terms of office. The members shall serve without compensation but shall be allowed their actual and necessary expenses incurred in the performance of their duties hereunder.

## History

Add, L 1977, ch 669, § 5, eff Oct 1, 1977; amd, *L 1995, ch 83, § 108*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 15*, eff Aug 1, 2002.

Annotations

## Notes

**Amendment Notes:**

**2002.** Chapter 43, § 15 amended:

Par by deleting "or".

## Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 86 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

**End of Document**



## NY CLS Exec § 177

Current through 2019 released Chapters 1-334

*New York Consolidated Laws Service  >  Executive Law (Arts. 1 — 50)  >  Article 7-A Solicitation and Collection of Funds for Charitable Purposes (§§ 171 — 177)*

# § 177. Administration and enforcement by attorney general

**1.**The attorney general shall make rules and regulations necessary for the administration of this article including, but not limited to regulations and waiver procedures that will ensure that charitable organizations do not have to register twice in relation to the solicitation and administration of assets, and rules or regulations allowing or requiring any submission to the attorney general to be effected by electronic means.

**2.**Upon a finding by the attorney general that any person has committed or is committing a violation of any provision of this article, the attorney general may:

**(a)**revoke, suspend or deny a registration of a charitable organization, professional fund raiser, professional solicitor or fund raising counsel or deny or revoke a claim of exemption or issue an order directing a charitable organization, professional fund raiser, professional solicitor, fund raising counsel or commercial co-venturer to cease and desist specified fund raising activities; and

**(b)**assess a civil penalty against the violator of not more than one thousand dollars for each act or omission constituting a violation and an additional penalty of not more than one hundred dollars for each day during which such violation continues. Prior to assessing a civil penalty, the attorney general shall notify the violator in writing by certified mail to its last known business address that a civil penalty will be assessed pursuant to this section unless the violation is cured within thirty days of the date of the mailing of the notice.

**3.**The attorney general shall, before denying, revoking or suspending any registration or exemption, or issuing a cease and desist order or assessing a civil penalty, notify the applicant or registrant in writing and provide an opportunity for a hearing on a record in reference thereto in accordance with such rules as the attorney general may promulgate to effectuate the purposes of this article. Such written notice may be served by personal delivery to the applicant or registrant or by registered or certified mail to its last known business address. Hearings must be requested within twenty days of receipt of the notice from the attorney general. Any hearing shall be held within thirty days of the receipt of the request by the attorney general, at such time and place as the attorney general shall prescribe. The attorney general, or his or her designee may issue subpoenas in accordance with the civil practice law and rules, compel the attendance of witnesses at the hearing, administer oaths, take proof and make determinations of relevant facts. The respondent may appear at the hearing and may cross-examine all witnesses and produce evidence on his or her behalf. The attorney general or his or her designee shall not be bound by the rules of evidence during the conduct of the hearing. A final determination shall be made by the attorney general or his or her designee within ten days of the conclusion of the hearing. The attorney general shall serve a copy of such determination or order upon the registrant or applicant personally or by registered or certified mail at his or her last known business address.

**4.**The administrative remedies provided by this article shall not be applicable to any violation of this article which is or was the subject of any action or proceeding brought by the attorney general.

## History

Add, L 1986, ch 440, § 17, eff July 1, 1987; amd, L 1987, ch 353, § 8, eff July 1, 1987; *L 1995, ch 83, § 109*, eff June 20, 1995, deemed eff on and after April 1, 1995; *L 2002, ch 43, § 16*, eff Aug 1, 2002; *L 2013, ch 549, § 4*. eff July 1, 2014.

Annotations

## Notes

**Editor's Notes:**

**Laws 1986, ch 440, § 19,**  eff July 1, 1987, provides as follows:

§ 19. This act shall take effect on July first, nineteen hundred eighty-seven, except that any rules and regulations necessary for the timely implementation of this act on its effective date shall be promulgated on or before such date and shall apply to written reports filed pursuant to section one hundred seventy-two-b of the executive law for fiscal years ending on or after December thirty-first, nineteen hundred eighty-seven.

*Laws 2013, ch 549, § 1,*  eff July 1, 2014, provides as follows:

Section 1. This act shall be known and may be cited as the "non-profit revitalization act of 2013".

**Amendment Notes:**

**2013.** Chapter 549, § 4 amended:

Sub 1 by adding the matter in italics.

**2002.** Chapter 43, § 16 amended:

Sub 2, opening par by deleting at fig 1 "subdivision one, two, five, six, seven, or eight of section one hundred seventy-two-d", at fig 2 "or has failed or is failing to comply with section one hundred seventy-two-b of this article," and adding the matter in italics.

Sub 2, par (a) by deleting at figs 1, 3 and 5 "or", at figs 2 and 4 "fund-raiser or", at fig 6 "fund-raiser" and adding the matter in italics.

Sub 4 by adding the matter in italics.

**1995.** Chapter 83, § 109 amended:

Section heading by deleting at fig 1 "secretary of state" and adding the matter in italics.

Sub 2, par (b) by adding the matter in italics.

 Sub 3 by deleting at figs 1–6,  8, 10 and 12 "secretary", at figs 7, 9 and 11 "the secretary's" and adding the matter in italics.

## Research References & Practice Aids

**Codes, Rules and Regulations:**

 Department of law: charitable entities and fundraising professionals.  13 NYCRR Parts 90–99.

**Jurisprudences:**

18 NY Jur 2d Charities § 95 .

60 Am Jur 2d, Peddlers, Solicitors, and Transient Dealers § 23.

**Texts:**

Bjorklund, Fishman & Kurtz, New York Nonprofit Law and Practice with Tax Analysis §§ 6-1, 6-2(e), 6-2(f), 6-3(f)(1), 6-6(a), 6-6(c).

**Hierarchy Notes:**

*NY CLS Exec, Art. 7-A*

New York Consolidated Laws Service
Copyright © 2019  Matthew Bender, Inc.,
a member of the LexisNexis (TM) Group All rights reserved.

## *Va. Code Ann. § 57-48*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

# § 57-48. Definitions

As used in this chapter, unless the context requires a different meaning:

*"Board"* means the Board of Agriculture and Consumer Services.

*"Charitable organization"* means any person that is or holds itself out to be organized or operated for any charitable purpose, or any person that solicits or obtains contributions solicited from the public. "Charitable organization" does not include (i) any church or convention or association of churches, primarily operated for nonsecular purposes and no part of the net income of which inures to the direct benefit of any individual; (ii) any political party as defined in *§ 24.2-101* or any political campaign committee or political action committee or other political committee required by state or federal law to file a report or statement of contributions and expenditures; or (iii) any authorized individual who solicits, by authority of such organization, solely on behalf of a registered or exempt charitable organization or on behalf of an organization excluded from the definition of charitable organization.

*"Charitable purpose"* means any charitable, benevolent, humane, philanthropic, patriotic, or eleemosynary purpose and the purposes of influencing legislation or influencing the actions of any public official or instigating, prosecuting, or intervening in litigation.

*"Charitable sales promotion"* means advertised sales that feature the names of both the commercial co-venturer and the charitable or civic organization and that state that the purchase or use of the goods, services, entertainment, or any other thing of value that the commercial co-venturer normally sells will benefit the charitable or civic organization or its purposes. To qualify as a charitable sales promotion, the consumer must pay the same price for the thing of value as the commercial co-venturer usually charges without the charitable sales promotion and the consumer retains the thing of value.

*"Civic organization"* means any local service club, veterans post, fraternal society or association, volunteer fire or rescue group, or local civic league or association of 10 or more persons not organized for profit but operated exclusively for educational or charitable purposes as defined in this section, including the promotion of community welfare, and the net earnings of which are devoted exclusively to charitable, educational, recreational, or social welfare purposes.

*"Commercial co-venturer"* means any person who (i) is organized for profit, (ii) is regularly and primarily engaged in trade or commerce, other than in connection with soliciting for charitable or civic organizations or charitable purposes, and (iii) conducts an advertised charitable sales promotion for a specified limited period of time.

*"Commissioner"* means the Commissioner of Agriculture and Consumer Services or a member of his staff to whom he may delegate his duties under this chapter.

*"Contribution"* means any gift, bequest, devise, or other grant of any money, credit, financial assistance, or property of any kind or value, including the promise to contribute, except payments by the membership of an organization for membership fees, dues, fines, or assessments, or for services rendered to individual members, and

Va. Code Ann. § 57-48

except money, credit, financial assistance, or property received from any governmental authority. "Contribution" does not include any donation of blood or any gift made pursuant to Article 2 (*§ 32.1-289.2* et seq.) of Chapter 8 of Title 32.1.

*"Department"* means the Department of Agriculture and Consumer Services.

*"Federated fund-raising organization"* means any federation of independent charitable organizations that have voluntarily joined together, including but not limited to a United Fund or Community Chest, for purposes of raising and distributing money for and among themselves and where membership does not confer operating authority and control of the individual agencies upon the federated group organization.

*"File with the Commissioner"* means depositing the originals of the documents required to be filed, along with the payment of the appropriate fee and all supporting documents with the Department or submitting the required documents and any appropriate attachments and fees by utilizing an online filing system approved by the Commissioner.

*"Fund-raising expenses"* means the expenses of all activities that constitute or are an integral and inseparable part of a solicitation.

*"Membership"* means those persons to whom, for payment of fees, dues, assessments, etc., an organization provides services and confers a bona fide right, privilege, professional standing, honor, or other direct benefit, in addition to the right to vote, elect officers, or hold offices. "Membership" does not include those persons who are granted a membership upon making a contribution as the result of solicitation.

*"Parent organization"* means that part of a charitable organization that coordinates, supervises, or exercises control over policy, fund raising, and expenditures or assists or advises one or more chapters, branches, or affiliates.

*"Person"* means any individual, organization, trust, foundation, association, partnership, corporation, society, or other group or combination acting as a unit.

*"Professional fund-raising counsel"* means any person who for a flat fixed fee under a written agreement plans, conducts, manages, carries on, advises, or acts as a consultant, whether directly or indirectly, in connection with soliciting contributions for, or on behalf of, any charitable or civic organization, but who actually solicits no contributions as a part of such services. A bona fide salaried officer or employee of a registered or exempt charitable organization or the bona fide salaried officer or employee of a registered parent organization shall not be deemed to be a professional fund-raising counsel.

*"Professional solicitor"* means any person who, for a financial or other consideration, solicits contributions for, or on behalf of, a charitable or civic organization, whether such solicitation is performed personally or through his agents, servants, or employees or through agents, servants, or employees who are specially employed by or for a charitable or civic organization and are engaged in the solicitation of contributions under the direction of such person or any person who, for a financial or other consideration, plans, conducts, manages, carries on, advises, or acts as a consultant to a charitable or civic organization in connection with the solicitation of contributions but does not qualify as a professional fund-raising counsel. A bona fide salaried officer or employee of a registered or exempt charitable organization or a bona fide salaried officer or employee of a registered parent organization shall not be deemed to be a professional solicitor.

*"Sale," "sell,"* and *"sold"* mean the transfer of any property or the rendition of any service to any person in exchange for consideration, including any purported contribution without which such property would not have been transferred or such services would not have been rendered.

*"Solicit"* and *"solicitation"* mean the request or appeal, directly or indirectly, for any contribution on the plea or representation that such contribution will be used for a charitable purpose, including, without limitation, the following methods of requesting such contribution:

Va. Code Ann. § 57-48

1. Any oral or written request;

2. Any announcement to the press, over the radio or television, or by telephone or telegraph concerning an appeal or campaign to which the public is requested to make a contribution for any charitable purpose connected therewith;

3. The distribution, circulation, posting, or publishing of any handbill, written advertisement, or other publication that directly or by implication seeks to obtain public support; or

4. The sale of, offer, or attempt to sell, any advertisement, advertising space, subscription, ticket, or any service or tangible item in connection with which any appeal is made for any charitable purpose or where the name of any charitable or civic organization is used or referred to in any such appeal as an inducement or reason for making any such sale, or when or where in connection with any such sale, any statement is made that the whole or any part of the proceeds from any such sale will be donated to any charitable purpose.

*"Solicitation,"* as defined in this section, shall be deemed to occur when the request is made, at the place the request is received, whether or not the person making the same actually receives any contribution.

*"Terrorists and terrorist organizations"* means any person, organization, group, or conspiracy who assists or has assisted terrorist organizations, as provided in *18 U.S.C. § 2339B*, or who commits or attempts to commit acts of terrorism, as defined in *§ 18.2-46.4.*

## History

1974, c. 574; 1979, cc. 124, 595, 598; 1983, c. 374; 1984, c. 268; 1988, c. 322; *1990, c. 711*; *1996, c. 461*; *2003, cc. 576*, *977*, *1009*; *2005, c. 329*; *2007, cc. 92*, *907*; *2013, c. 24*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-49*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-49. Registration of charitable organizations; prohibition against support of terrorists

**A.**Every charitable organization, except as otherwise provided in this chapter, which intends to solicit contributions within the Commonwealth, or have funds solicited on its behalf, shall, prior to any solicitation, file an initial registration statement with the Commissioner upon forms acceptable to him. Each registration statement shall thereafter be refiled on or before the fifteenth day of the fifth calendar month of the next and each following fiscal year in which such charitable organization is engaged in solicitation activities within the Commonwealth. It shall be the duty of the president, chairman or principal officer of such charitable organization to file the statements required under this chapter. A charitable organization's registration statement may alternatively be filed online on a website approved by the Commissioner. Such statement shall contain the following information:

1. The name of the organization and the purpose for which it was organized.

2. The principal address of the organization, the address of any offices in the Commonwealth and its designated agent for process within the Commonwealth. If no such agent is designated, the organization shall be deemed to have designated the Secretary of the Commonwealth. If the organization does not maintain an office, the name and address of the person having custody of its financial records.

3. The names and addresses of any chapters, branches or affiliates in the Commonwealth.

4. The place where and the date when the organization was legally established, the form of its organization, and a reference to any determination of its tax-exempt status under the Internal Revenue Code.

5. The names and addresses of the officers, directors, trustees and the principal salaried executive staff officer.

6. A copy of a balance sheet and income and expense statement, with the opinion of any independent public accountant, for the organization's immediately preceding fiscal year; a copy of a financial statement certified by an independent public accountant covering, in a consolidated report, complete information as to all the preceding year's fund-raising activities of the charitable organization, showing kind and amount of funds raised, fund-raising expenses and allocation of disbursement of funds raised; or a copy of Internal Revenue Service Form 990. The report required by this subdivision shall comply with the accounting standards prescribed pursuant to *§ 57-53*. Any organization whose annual gross revenue qualifies such organization to file Form 990-N (also referred to as the e-Postcard) with the Internal Revenue Service may submit a balance sheet and income and expense statement verified under oath or affirmation by the treasurer of the organization.

7. A statement indicating the amount of funds expended during the preceding fiscal year to pay for the administrative expenses of the charitable organization and a computation of such expenses as a percentage of the total expenses of the charitable organization.

8. A statement indicating the amount of funds expended during the preceding fiscal year that was dedicated to providing charitable services and a computation of such expenses as a percentage of the total expenses of the charitable organization.

9. A statement showing the computation of the percentages provided for in *§ 57-58*.

10. A statement indicating whether the organization intends to solicit contributions from the public directly or have such done on its behalf by others.

11. A statement indicating whether the organization is authorized by any other governmental authority to solicit contributions and whether it, or any officer, professional fund-raiser or professional solicitor thereof, is or has ever been enjoined by any court or otherwise prohibited from soliciting contributions in any jurisdiction.

12. The general purpose or purposes for which the contributions to be solicited shall be used.

13. The name or names under which it intends to solicit contributions.

14. The names of the individuals or officers of the organization who will have final responsibility for the custody of the contributions.

15. The names of the individuals or officers of the organization responsible for the final distribution of the contributions.

16. A statement indicating whether the organization, or any officer, professional fund-raiser or professional solicitor thereof, has ever been convicted of a felony and, if so, a description of the pertinent facts.

17. A copy of the current articles of incorporation, bylaws, or other governing documents. If current copies are already on file with the Commissioner, only amendments, if any, shall be filed in years after the initial registration.

18. A description of the types of solicitation to be undertaken.

**A1.** Every registration statement shall include the following language:

> "No funds have been or will knowingly be used, directly or indirectly, to benefit or provide support, in cash or in kind, to terrorists, terrorist organizations, terrorist activities, or the family members of any terrorist."

**A2.** No person shall be registered by the Commonwealth or by any locality to solicit funds that are intended to benefit or support terrorists, terrorist organizations or terrorist activities. No person shall be registered by the Commonwealth or by any locality to solicit funds that are intended to benefit or support a family member of any terrorist, unless a court of competent jurisdiction within the Commonwealth, upon petition of an interested person, finds by clear and convincing evidence that, for a period of at least three years next preceding any act of terrorism committed by such terrorist or terrorist organization, the family members to whom the benefit of the contributions shall inure have been living separate and apart from the terrorist or terrorist organization, and the family members have not provided any financial support, in cash or in kind, to the terrorist or terrorist organization for the same period of time.

**B.** Each chapter, branch or affiliate, except an independent member agency of a federated fund-raising organization, shall separately report the information required by this section or report the information to its parent organization which shall then furnish such information as to itself and all of its state affiliates, chapters and branches in a consolidated form. All affiliated organizations included in a consolidated registration statement shall be considered as one charitable organization for all purposes of this chapter. If a consolidated registration statement is filed, all statements thereafter filed shall be upon the same basis unless permission to change is granted by the Commissioner.

**C.** Each federated fund-raising organization shall report the information required by this section in a consolidated form. Any federated fund-raising organization may elect to exclude from its consolidated report information relating to the separate fund-raising activities of all of its independent member agencies. No member agency of a federated fund-raising organization shall be required to report separately any information contained in such a consolidated report. Any separate solicitations campaign conducted by, or on behalf of, any such member agency shall nevertheless be subject to all other provisions of this chapter.

Va. Code Ann. § 57-49

**D.**The registration forms shall be signed by the chief fiscal officer and by another authorized officer of the charitable organization. If the registration forms are filed online using a website approved by the Commissioner, the charitable organization shall follow the procedures on that website for signing the forms.

**E.**Every charitable organization which submits an independent registration to the Commissioner shall pay an annual registration fee of (i) $ 30 if its gross contributions for the preceding year do not exceed $ 25,000; (ii) $ 50 if its gross contributions exceed $ 25,000 but do not exceed $ 50,000; (iii) $ 100 if its gross contributions exceed $ 50,000 but do not exceed $ 100,000; (iv) $ 200 if its gross contributions exceed $ 100,000 but do not exceed $ 500,000; (v) $ 250 if its gross contributions exceed $ 500,000 but do not exceed $ 1 million; and (vi) $ 325 if its gross contributions exceed $ 1 million. A parent organization filing on behalf of one or more chapters, branches or affiliates or a federated fund-raising organization filing on behalf of its member agencies shall pay a single annual registration fee for itself and such chapters, branches, affiliates or member agencies included in the registration statement. Organizations with no prior financial history filing an initial registration shall be required to pay an initial fee of $ 100. Organizations with prior financial history filing an initial registration shall be required to pay an initial fee of $ 100 in addition to the annual registration fee. Any organization which allows its registration to lapse, without requesting an extension of time to file, shall be required to resubmit an initial registration. An extension may be granted upon receipt of a written request.

## History

1974, c. 574; 1975, c. 221; 1979, c. 595; 1984, c. 268; 1986, c. 31; 1987, c. 561; 1988, c. 322; *1990, c. 711*; *1993, cc. 577*, *583*; *1995, cc. 170*, *205*; *2003, cc. 576*, *977*, *1009*; *2005, c. 329*; *2012, c. 313*; *2017, c. 763*; *2018, c. 268*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

*Va. Code Ann. § 57-50*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-50. Reciprocal agreements with other states; online filing

**A.**The Commissioner may enter into a reciprocal agreement with the appropriate authority of any other state for the purpose of exchanging information with respect to charitable organizations, professional fund-raising counsel and professional solicitors. Pursuant to such agreements, the Commissioner may accept information filed by a charitable organization, professional fund-raising counsel and professional solicitor with the appropriate authority of another state in lieu of the information required to be filed in accordance with the provisions of this chapter, if such information is substantially similar to the information required under this chapter. The Commissioner may also grant exemption from the requirement for the filing of [an] annual registration statement with him to charitable organizations organized under the laws of another state, having their principal place of business in such other state, having funds derived principally from sources outside the Commonwealth, and having been granted exemption from the filing of registration statements by such other state, if such state has a statute similar in substance to the provisions of this chapter and participates in a reciprocal agreement pursuant to this section.

**B.**The Commissioner may also enter into a memorandum of understanding or other similar agreement with the appropriate authority of any other state or federal agency for the purpose of providing charitable organizations, professional fund-raising counsel or professional solicitors with the option of filing their annual registration statements online on a website approved by all states that are parties to the memorandum of understanding. The Commissioner may accept such online filing in lieu of the information required to be filed in accordance with the provisions of this chapter if the procedures for online filing provide for submitting substantially similar information to that required by this chapter. The information provided by charitable organizations, professional fund-raising counsel or professional solicitors at the approved website as a result of their completion of the online registration statement shall be shared with the appropriate authority of any state or federal agency that is a party to the memorandum of understanding.

## History

1974, c. 574; 1979, c. 595; *2005, c. 329*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

End of Document

## *Va. Code Ann. § 57-51*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-51. Nonresident registration

**(a)**Any unregistered charitable organization, professional fund-raising counsel or professional solicitor, having his or its principal place of business without this Commonwealth or organized under and by virtue of the laws of a foreign state who or which shall solicit contributions from people in this Commonwealth, shall be deemed to have irrevocably appointed the Secretary of the Commonwealth as his or its agent upon whom may be served any summons, subpoena, subpoena duces tecum or other process directed to such charitable organization, or any partner, principal, officer, or director thereof or to such professional fund-raising counsel or professional solicitor. Service shall be made by leaving two copies of the process, notice, order or demand, together with any fee required by law, in the office of the Secretary of the Commonwealth, together with an affidavit giving the last known post-office address of the defendant and such service shall be sufficient if notice of such service and a copy of the process, notice, order or demand are forthwith sent by registered mail, with return receipt requested, by the Secretary of the Commonwealth or one of his staff to the defendant at the specified address. An affidavit by the Secretary of the Commonwealth showing compliance herewith shall be filed with the papers in the suit, action or proceeding.

**(b)**Any charitable organization, having no office or place of business within this Commonwealth and soliciting in this Commonwealth from without the Commonwealth solely by telephone or telegraph, direct mail or advertising in national media, and any professional fund-raising counsel or professional solicitor engaged by such an organization, shall file with the Commissioner any report which would otherwise be required of it or request the Commissioner to determine that such organization is exempt under *§ 57-50* or *§ 57-60*.

## History

1974, c. 574; 1979, c. 595; 1984, c. 268.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-52*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-52. Publication of warnings concerning certain charitable and civic organizations

If the Commissioner determines that any charitable or civic organization not registered with his office and not exempt from registration, irrespective of whether such organization is subject to the jurisdiction of this Commonwealth, has solicited or may be soliciting in this Commonwealth, directly or indirectly, by any means including without limitation, by telephone or telegraph, by direct mail or by advertising in national media, he may, after ten days' written notice mailed to the charitable or civic organization, cause to be printed in one or more newspapers published in this Commonwealth a notice in substantially the following form:

 WARNING--UNREGISTERED CHARITABLE SOLICITATION

  The organization named below has solicited contributions from Virginia citizens for allegedly charitable purposes. It has not registered with or been granted the appropriate exempt status by the Commissioner as required by law. Contributors are cautioned that their contributions to such organization may be used for noncharitable purposes.

## History

1974, c. 574; 1979, c. 595; 1983, c. 374; 1988, c. 322.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

End of Document

## *Va. Code Ann. § 57-52.1*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

# § 57-52.1. Publication of warnings concerning solicitation by professional solicitors

If the Commissioner determines that any charitable or civic organization has contracted with a professional solicitor to solicit on its behalf and that the professional solicitor may be soliciting or has solicited in this Commonwealth, directly or indirectly, by any means including, without limitation, by telephone or telegraph, by direct mail or by advertising in national media, and the professional solicitor has not registered with the Commissioner as required by *§ 57-61*, the Commissioner may, after five days' written notice mailed to the charitable or civic organization, cause to be printed in one or more newspapers published in this Commonwealth a notice on substantially the following form:

  WARNING--UNREGISTERED CHARITABLE SOLICITATION BY PROFESSIONAL SOLICITOR

  The charitable or civic organization named below has contracted with a professional solicitor to solicit on its behalf. The professional solicitor has not registered with the Commonwealth of Virginia as required by law. Contributors are cautioned that their contributions may be used for noncharitable purposes.

## History

1987, c. 561.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-53*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-53. Records to be kept by charitable organizations

Every charitable organization shall keep true fiscal records for all fiscal years beginning on and after January 1, 1975, in accordance with the standards and practices set out in Standards of Accounting and Financial Reporting for Voluntary Health and Welfare Organizations adopted and approved in December, 1964, by the National Health Council and National Social Welfare Assembly, and as may be modified from time to time by the National Health Council and the National Assembly for Policy and Development, or in accordance with the standards and practices set out in Uniform Chart of Accounts and Definitions for Hospitals as approved by, and as may be modified by, the American Hospital Association, or in accordance with such other uniform standards of accounting as the Commissioner may find to be as appropriate. A copy of such standards shall be maintained on file in the office of the Commissioner. Such records shall be retained for a period of at least three years after the end of the period of registration to which they relate.

## History

1974, c. 574; 1979, c. 595.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-54*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-54. Contracts between charitable or civic organizations and professional fund-raising counsel or professional solicitors

**A.**Every contract or agreement between professional fund-raising counsel and a charitable or civic organization must be in writing and shall be filed with the Commissioner within ten days after such contract or written agreement is entered into.

**B.**Every contract, or a written statement of the nature of the arrangement to prevail in the absence of a contract, between a professional solicitor and a charitable or civic organization shall be filed with the Commissioner at least ten days prior to commencement of the contract.

**C.**All agreements and arrangements between professional fund-raising counsel and charitable or civic organizations must be reduced to writing before executed or acted upon.

## History

1974, c. 574; 1979, c. 595; 1983, c. 374; 1988, c. 322.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-55*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-55. Repealed

Repealed by Acts 1980, c. 445.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

## *Va. Code Ann. § 57-55.1*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-55.1. Repealed

Repealed by Acts *1990, c. 711*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-55.2*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

**VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS**

## § 57-55.2. Charitable solicitation disclosure

Every professional solicitor who solicits contributions from a prospective contributor in the Commonwealth: (i) shall identify himself and his employer; (ii) shall disclose that he is a paid solicitor; and (iii) shall further disclose, in writing, the fact that a financial statement for the last fiscal year is available from the Department of Agriculture and Consumer Services.

## History

1987, c. 561; *2013, c. 24*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-55.2:1*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-55.2:1. Solicitations by for-profit organizations

**A.**Every solicitor for an organization which is for-profit which solicits contributions from a prospective contributor in the Commonwealth shall disclose that the organization is not exempt from taxation under *§ 501(c) of the Internal Revenue Code*.

**B.**For every contribution received for five dollars or more, a for-profit organization shall, within thirty days following receipt, send a written statement to such contributor disclosing that the organization is not exempt from taxation under *§ 501(c) of the Internal Revenue Code*.

## History

*1993, c. 240*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-55.3*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-55.3. Disclosure regarding financial statement required

Every charitable organization required to be registered pursuant to *§ 57-49* and every professional solicitor required to be registered pursuant to *§ 57-61* soliciting contributions from prospective contributors shall disclose to the potential donor contemporaneously at the point of a written request or on a written receipt for donations made in response to an oral request that a financial statement is available from the Department of Agriculture and Consumer Services upon request.

## History

*1990, c. 930*; *2003, c. 576*; *2013, c. 24*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-55.4*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-55.4. Collection receptacles; required disclosures

No (i) business as defined in *§ 58.1-3700.1*, other than a charitable or civic organization to which contributions are deductible under *§ 170 of the Internal Revenue Code*, or (ii) professional solicitor shall place or maintain a receptacle in public view for the purpose of collecting donated clothing, household items, or other items for future resale unless such person or professional solicitor places on the receptacle a permanent sign or label in a prominent place that includes the following information printed in letters that are no less than three inches in height and no less than one-half inch in width and in a color that contrasts with the color of the receptacle, which sign or label shall be placed immediately below the opening in the receptacle used to deposit donations:

1. The name, business address, and telephone number of the person engaged in such business or the professional solicitor; and

2. a. For a receptacle placed or maintained by a person engaged in such business, a statement that reads: "This donation receptacle is operated by a for-profit business. Items donated here support a for-profit business."; or

   b. For a receptacle placed or maintained by the professional solicitor, a statement that reads: "This donation receptacle is operated by a professional solicitor. Items donated here support, in part, the professional solicitor, which is a for-profit entity."

Enforcement of a violation of this section shall be limited to subsections B through E of *§ 57-59*.

## History

*2015, c. 476*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-56*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-56. Information filed to become public records

Registration statements, reports, professional fund-raising counsel contracts or professional solicitor contracts and all other documents and information required to be filed under this chapter shall become public records in the office of the Commissioner, and shall be open to the general public for inspection at such time and under such conditions as the Commissioner may prescribe. A charge not exceeding one dollar per page may be made for any copy of such documents and information as may be furnished any person by the Commissioner.

## History

1974, c. 574; 1979, c. 595.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-57*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-57. Prohibited acts

**A.**No charitable organization shall use or exploit the fact of registration under this chapter so as to lead the public to believe that such registration in any manner constitutes an endorsement or approval by this Commonwealth. The use of the following statement shall not be deemed a prohibited exploitation, "Registered with the Commissioner as required by law. Registration does not imply endorsement of a public solicitation for contributions."

**B.**No person shall, in connection with the solicitation of contributions or the sale of tangible personal property or services represent, or lead anyone by any manner, means, practice or device whatsoever to believe, that the person on whose behalf such solicitation or sale is being conducted is a bona fide charitable organization or that the proceeds of such solicitation or sale will be used for charitable purposes, if he has reason to believe such not to be the fact.

**C.**No person shall, in connection with the solicitation of contributions or the sale of tangible personal property or services for charitable purposes, represent or lead anyone by any manner, means, practice or device whatsoever to believe, that any other person sponsors or endorses such solicitation of contributions, sale of tangible personal property or services for charitable purposes or approves of such charitable purposes or a charitable organization connected therewith when such other person has not given written consent to the use of his name for these purposes.

Any member of the board of directors or trustees of a charitable organization or any other person who has agreed either to serve or to participate in any voluntary capacity in the campaign shall be deemed thereby to have given his consent to the use of his name in said campaign. Nothing contained in this section shall prevent the publication of names of contributors without their written consents, in an annual or other periodic report issued by a charitable organization for the purpose of reporting on its operations and affairs to its membership or for the purpose of reporting contributions to contributors.

**D.**No person shall denominate any membership fee or purchase price of goods or services sold, as a contribution or as a donation or in any other manner represent or imply that the member or the purchaser of such goods or services will be entitled to an income tax deduction for his cost or any portion thereof unless:

1. A signed opinion of counsel or an Internal Revenue Service ruling or determination letter holding such cost to be deductible has been obtained; or

2. The member or purchaser is informed in writing that such cost may not be deductible.

No person shall represent or imply that a contributor will be entitled to an income tax deduction for his contribution unless a signed opinion of counsel or an Internal Revenue Service ruling or determination letter holding gifts to such organization to be deductible has been obtained.

**E.**No person shall make any representation that he is soliciting contributions for or on behalf of a charitable or civic organization or shall use or display any emblem, device or printed matter belonging to or associated with a charitable or civic organization for the purpose of soliciting or inducing contributions from the public without first being authorized to do so by the charitable or civic organization.

Va. Code Ann. § 57-57

**F.** No professional solicitor shall solicit in the name of or on behalf of any charitable or civic organization unless such solicitor has:

1. Written authorization of two officers of such organization, a copy of which shall be filed with the Commissioner. Such written authorization shall bear the signature of the solicitor and shall expressly state on its face the period for which it is valid, which shall not exceed one year from the date issued.

2. Such authorization with him when making solicitations and exhibits it on request to persons solicited, police officers, or agents of the Commissioner.

**G.** No charitable or civic organization shall accept any contribution exceeding $ 5 in cash or tangible property without providing, on request of the donor, a written receipt acknowledging such contribution on behalf of the organization.

**H.** No person, and no organization of which such person is an officer, professional fund-raising counsel or professional solicitor, shall solicit within this Commonwealth if:

1. Such person has been convicted in any jurisdiction of embezzlement, larceny or other crime involving the obtaining of money or property by false pretenses or the misapplication of funds impressed with a trust, unless such person has received a pardon for such offense or the public is informed of such conviction in a manner approved in writing by the Commissioner before any solicitation occurs; or

2. Such person has ever been enjoined by any court or otherwise prohibited from soliciting in any jurisdiction, unless the Commissioner first determines in writing that such person is entitled to solicit in such jurisdiction at the time of soliciting within this Commonwealth or that the reason for such injunction or prohibition does not involve moral turpitude.

**I.** No person shall solicit within this Commonwealth for the benefit of any other person located without the Commonwealth, if such other person refuses to supply any information which the Commissioner deems necessary to assure himself that the provisions of this chapter are complied with. A solicitation shall be deemed to be on behalf of every person who or which receives, directly or indirectly, more than 10 percent of the gross amount collected.

**J.** No charitable or civic organization shall allow a professional solicitor to solicit on its behalf if the professional solicitor has not registered pursuant to § 57-61.

**K.** No charitable or civic organization, professional fund-raising counsel or professional solicitor shall solicit in this Commonwealth without being duly registered or granted the appropriate exempt status under this chapter.

**L.** No person shall employ in any solicitation or collection of contributions for a charitable purpose any device, scheme or artifice to defraud or obtain money or property by any misrepresentation or misleading statement.

**M.** No officer, agent, director or trustee of any charitable or civic organization, professional fund-raising counsel or professional solicitor shall refuse or fail, after notice, to produce to the Commissioner any books and records of such organization.

**N.** No person shall use or permit the use of the funds raised by a charitable solicitation for any purpose other than the solicited purpose or, with respect to funds raised by general appeals, the general purposes of the charitable or civic organization on whose behalf the solicitation was made.

**O.** No person shall knowingly and willfully make any false statements in any registration application or statement, report or other disclosure required by this chapter.

**P.** No professional solicitor shall solicit on behalf of a charitable or civic organization unless the charitable or civic organization has registered or been granted the appropriate exempt status under this chapter.

**Q.** No person shall represent, in any solicitation, that tickets to events will be donated for use by another unless he complies with the following requirements:

1. He shall have obtained commitments, in writing, from persons or charitable or civic organizations stating that they will accept donated tickets and specifying the number of persons for whom they are willing to accept tickets;

Va. Code Ann. § 57-57

2. He shall not collect or accept more contributions for donated tickets than the number of ticket commitments he has received from persons or charitable or civic organizations;

3. He shall have printed in advance on each ticket the exact number of persons to be admitted by the ticket and the dollar price or value of each ticket;

4. He shall distribute the tickets in a timely fashion to those having given commitments; and

5. He shall maintain during the solicitation and for a period of three years thereafter: (i) records reflecting the name and address of each contributor and the amount of money and number of tickets donated by each such contributor; and (ii) the written commitments of each person or charitable or civic organization to accept tickets and specifying the number of persons on whose behalf tickets were to be accepted, as required in subdivision 1 of subsection Q of this section.

**R.**No person shall knowingly use or permit the use of funds raised by a solicitation or by contribution to benefit or provide support, directly or indirectly, in cash or in kind, to terrorists, terrorist organizations, terrorist activities or to family members of any terrorist.

## History

1974, c. 574; 1979, c. 595; 1983, c. 374; 1987, c. 561; 1988, c. 322; *1990, c. 711*; *2003, cc. 977*, *1009*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

## *Va. Code Ann. § 57-58*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-58. Ratio of fund-raising expenses to contributions to be included in registration statement

Each charitable organization shall, as a part of its registration statement, compute the percentage that its fund-raising expenses for its preceding fiscal year bore to its support received directly from the public during such year.

  Each federated fund-raising organization shall clearly disclose on any registration the percentage that is withheld from a donation designated for a member agency.

## History

1974, c. 574; *2003, c. 810*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-59*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

# § 57-59. Enforcement of chapter; seizure of property connected with terrorism; penalties

**A.**Any person who willfully and knowingly violates or causes to be violated any provision of this chapter, or who willfully and knowingly gives false or incorrect information to the Commissioner in filing statements or reports required by this chapter, whether such report or statement is verified or not, shall be guilty of a misdemeanor and, upon conviction thereof, shall be punished for the first offense by a fine of not less than $ 100 and not more than $ 1,000 or by confinement in jail for not more than six months, or both, and for the second and any subsequent offense by a fine of not less than $ 500 and not more than $ 2,500 or by confinement in jail for not more than one year, or both.

The following property shall be subject to lawful seizure by any law-enforcement officer charged with enforcing the provisions of this chapter: all moneys or other property, real or personal, together with any interest or profits derived from the investment of such money and used in substantial connection with an act of terrorism as defined in *§ 18.2-46.4.* All seizures and forfeitures under this section shall be governed by the procedures contained in Chapter 22.1 (*§ 19.2-386.1* et seq.) of Title 19.2.

**B.**Whenever the Commissioner has reasonable cause to believe that a violation of this chapter may have occurred, the Commissioner, upon his own motion or upon complaint of any person, may investigate any charitable or civic organization, commercial co-venturer, professional fund-raising counsel or professional solicitor to determine whether such charitable or civic organization, commercial co-venturer, professional fund-raising counsel or professional solicitor has violated the provisions of this chapter. In the conduct of such investigation, the Commissioner may:

1. Require or permit any person to file a statement in writing, under oath or otherwise as the Commissioner determines, as to all facts and circumstances concerning the matter to be investigated.

2. Administer oaths or affirmations and, upon his motion or upon request of any party, subpoena witnesses, compel their attendance, take evidence, and require the production of any matter which is relevant to the investigation, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangibles and the identity and location of persons having knowledge of relevant facts or any other matter reasonably calculated to lead to the discovery of material evidence.

Any proceedings or hearings by the Commissioner under this chapter, where witnesses are subpoenaed and their attendance is required for evidence to be taken or any matter is to be produced to ascertain material evidence, shall take place within the City of Richmond.

Upon failure to obey a subpoena and upon reasonable notice to all persons affected thereby, the Commissioner may apply to the Circuit Court of the City of Richmond for an order imposing punishment for contempt of the subpoena or compelling compliance.

**C.**Whenever the Attorney General has reasonable cause to believe that any person has operated, is operating or is about to operate in violation of the provisions of this chapter, the Attorney General may issue a civil investigative demand. The provisions of *§ 59.1-9.10* shall apply mutatis mutandis to civil investigative demands issued pursuant to this subsection.

**D.**Whenever the Attorney General, or any attorney for the Commonwealth or the attorney for any city, county or town has reason to believe that any charitable or civic organization, commercial co-venturer, professional fund-raising counsel or professional solicitor has operated, is operating or is about to operate in violation of the provisions of this chapter, the Attorney General, attorney for the Commonwealth or the attorney for any city, county or town, in addition to all other actions authorized by law, may bring an action in the name of the Commonwealth against such charitable or civic organization, commercial co-venturer, professional fund-raising counsel or professional solicitor, or their officers, directors, or other agents to enjoin the continuation of such violation, solicitation or collection, or the engaging therein, or the conducting of any acts in furtherance thereof and for such other relief as the court deems appropriate.

**E.**In any action brought under subsection D, the court may also award to the Commonwealth a civil penalty of not more than $ 5,000 per violation, to be paid to the Literary Fund, reasonable expenses incurred by the state or local agency in investigating and preparing the case, not to exceed $ 250 per violation, and attorney's fees. Such expenses and attorney's fees shall be paid into the general fund of the Commonwealth or of the county, city, or town which such attorney represented.

## History

1974, c. 574; 1979, c. 595; 1983, c. 374; 1987, c. 561; *1990, c. 711*; *1991, c. 710*; *1999, c. 81*; *2000, c. 755*; *2003, cc. 576*, *977*, *1009*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

*Va. Code Ann. § 57-60*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-60. Exemptions

**A.** The following persons shall be exempt from the registration requirements of *§ 57-49*, but shall otherwise be subject to the provisions of this chapter:

1. Educational institutions that are accredited by the Board of Education, by a regional accrediting association or by an organization affiliated with the National Commission on Accrediting, the Association Montessori Internationale, the American Montessori Society, the Virginia Independent Schools Association, or the Virginia Association of Independent Schools, any foundation having an established identity with any of the aforementioned educational institutions, and any other educational institution confining its solicitation of contributions to its student body, alumni, faculty and trustees, and their families.

2. Persons requesting contributions for the relief of any individual specified by name at the time of the solicitation when all of the contributions collected without any deductions whatsoever are turned over to the named beneficiary for his use.

3. Charitable organizations that do not intend to solicit and receive, during a calendar year, and have not actually raised or received, during any of the three next preceding calendar years, contributions from the public in excess of $ 5,000, if all of their functions, including fund-raising activities, are carried on by persons who are unpaid for their services and if no part of their assets or income inures to the benefit of or is paid to any officer or member. Nevertheless, if the contributions raised from the public, whether all of such are or are not received by any charitable organization during any calendar year, shall be in excess of $ 5,000, it shall, within 30 days after the date it has received total contributions in excess of $ 5,000, register with and report to the Commissioner as required by this chapter.

4. Organizations that solicit only within the membership of the organization by the members thereof.

5. Organizations that have no office within the Commonwealth, that solicit in the Commonwealth from without the Commonwealth solely by means of telephone or telegraph, direct mail or advertising in national media, and that have a chapter, branch, or affiliate within the Commonwealth that has registered with the Commissioner.

6. Organizations that have been granted tax-exempt status under *§ 501(c)(3) of the Internal Revenue Code* and that are organized wholly as Area Health Education Centers in accordance with *§ 32.1-122.7.*

7. Health care institutions defined herein as any facilities that have been granted tax-exempt status under *§ 501(c)(3) of the Internal Revenue Code*, and that are (i) licensed by the Department of Health or the Department of Behavioral Health and Developmental Services; (ii) designated by the Health Care Financing Administration (HCFA) as federally qualified health centers; (iii) certified by the HCFA as rural health clinics; or (iv) wholly organized for the delivery of health care services without charge; and any supporting organization that exists solely to support any such health care institutions. For the purposes of clause (iv), "delivery of health care services without charge" includes the delivery of dental, medical or other health services where a reasonable minimum fee is charged to cover administrative costs.

8. Civic organizations as defined herein.

9. Agencies providing or offering to provide debt management plans for consumers that are licensed pursuant to Chapter 20 (*§ 6.2-2000* et seq.) of Title 6.2.

Va. Code Ann. § 57-60

10. Agencies designated by the Virginia Department for Aging and Rehabilitative Services pursuant to subdivision A 6 of *§ 51.5-135* as area agencies on aging.

11. Labor unions, labor associations and labor organizations that have been granted tax-exempt status under *§ 501(c)(5) of the Internal Revenue Code*.

12. Trade associations that have been granted tax-exempt status under *§ 501(c)(6) of the Internal Revenue Code*.

13. Organizations that have been granted tax-exempt status under *§ 501(c)(3) of the Internal Revenue Code* and that are organized wholly as regional emergency medical services councils in accordance with *§ 32.1-111.4:2.*

14. Nonprofit organizations that have been granted tax-exempt status under *§ 501(c)(3) of the Internal Revenue Code* and that solicit contributions only through (i) grant proposals submitted to for-profit corporations, (ii) grant proposals submitted to other nonprofit organizations that have been granted tax-exempt status under *§ 501(c)(3) of the Internal Revenue Code*, or (iii) grant proposals submitted to organizations determined to be private foundations under *§ 509(a) of the Internal Revenue Code*.

**B.** A charitable organization shall be subject to the provisions of *§§ 57-57* and *57-59*, but shall otherwise be exempt from the provisions of this chapter for any year in which it confines its solicitations in the Commonwealth to five or fewer contiguous cities and counties, and in which it has registered under the charitable solicitations ordinance, if any, of each such city and county. No organization shall be exempt under this subsection if, during its next preceding fiscal year, more than 10 percent of its gross receipts were paid to any person or combination of persons, located outside the boundaries of such cities and counties, other than for the purchase of real property, or tangible personal property or personal services to be used within such localities. An organization that is otherwise qualified for exemption under this subsection that solicits by means of a local publication, or radio or television station, shall not be disqualified solely because the circulation or range of such medium extends beyond the boundaries of such cities or counties.

**C.** No charitable or civic organization shall be exempt under this section unless it submits to the Commissioner, who in his discretion may extend such filing deadline prospectively or retrospectively for good cause shown, on forms to be prescribed by him, the name, address and purpose of the organization and a statement setting forth the reason for the claim for exemption. Parent organizations may file consolidated applications for exemptions for any chapters, branches, or affiliates that they believe to be exempt from the registration provisions of this chapter. If the organization is exempted, the Commissioner shall issue a letter of exemption, which may be exhibited to the public. A registration fee of $ 10 shall be required of every organization requesting an exemption after June 30, 1984. The letter of exemption shall remain in effect as long as the organization continues to solicit in accordance with its claim for exemption.

**D.** Nothing in this chapter shall be construed as being applicable to the American Red Cross or any of its local chapters.

# History

1974, c. 574; 1975, c. 221; 1979, cc. 55, 595, 598, 626; 1980, c. 559; 1983, c. 374; 1984, c. 268; *1991, c. 184*; *1995, c. 312*; *1996, c. 461*; *1997, c. 162*; *1998, cc. 104*, *232*; *1999, c. 1021*; *2000, c. 921*; *2002, c. 85*; *2003, c. 576*; *2004, cc. 580*, *790*; *2005, c. 316*; *2009, cc. 813*, *840*; *2010, cc. 680*, *794*; *2011, c. 534*; *2012, cc. 803*, *835*; *2015, cc. 502*, *503*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

## *Va. Code Ann. § 57-61*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

# § 57-61. Registration of professional fund-raising counsels and solicitors

**A.**No person shall act as a professional fund-raising counsel or professional solicitor for a charitable or civic organization, unless he has first registered with the Commissioner. Applications for registration shall be in writing under oath or affirmation in the form prescribed by the Commissioner and contain such information as he may require. The application shall be accompanied by an annual fee of $ 100 for the professional fund-raising counsel. The fee for a professional solicitor shall be $ 500. Any professional solicitor who fails to register prior to any solicitation shall be required to pay a late filing fee of $ 250. A partnership or corporation which is a professional fund-raising counsel or professional solicitor, may register for and pay a single fee on behalf of all its members, officers, agents and employees.

**B.**Each professional solicitor shall, at the time of making application, file with and have approved by the Commissioner a bond in which the applicant shall be the principal obligor in the sum of $ 20,000 with one or more sureties satisfactory to the Commissioner, whose liability in the aggregate as such sureties will at least equal $ 20,000, and maintain the bond in effect so long as the registration is in effect. The bond shall run to the Commonwealth of Virginia for the use of the bonds in reimbursement for any penalties or losses resulting from malfeasance, nonfeasance or misfeasance in the conduct of solicitation activities. A partnership or corporation which is a professional solicitor may file a consolidated bond on behalf of all its members, officers, agents and employees.

**C.**Each registration shall be valid throughout the Commonwealth of Virginia for a period of one year from the date of issue and may be renewed for additional one-year periods upon written application, under oath or affirmation, in the form prescribed by the Commissioner and the payment of the fee prescribed herein.

**D.**At least ten days prior to the commencement of each solicitation campaign, the solicitor shall file with the Commissioner a copy of the contract entered into with any charitable or civic organization and shall file a completed "Solicitation Notice" on forms prescribed by the Commissioner. The Solicitation Notice shall be in writing and under oath, and shall include a description of the solicitation event or campaign, the projected starting and ending dates of the campaign, and the location and telephone number from which the solicitation will be conducted. The charitable or civic organization on whose behalf the solicitor is acting shall certify that the Solicitation Notice and accompanying material are true and complete.

**E.**Professional solicitors shall file a final accounting report with the Commissioner after the completion of the solicitation campaign, showing all funds collected and such other information as the Commissioner may require. The final accounting report shall be filed within ninety days of the campaign's completion. Professional solicitors may file a written request with the Commissioner for an extension, not to exceed ninety days, for filing the final accounting report. The extension period shall be calculated from the first day following the expiration of the initial ninety-day period for filing the report.

A late filing fee of twenty-five dollars shall be imposed for each thirty-day period, or any portion thereof, that an extension request or the final accounting report is not timely filed with the Commissioner. No late fees shall be imposed for the period between the date the extension request is filed with the Commissioner through 180 days following the completion of the solicitation campaign. An additional late filing fee of twenty-five dollars shall be imposed for each thirty-day period, or any portion thereof, that the final

accounting report is not filed with the Commissioner, calculated from the end of any extension period. The late filing fees shall be in addition to all other penalties authorized by law.

**F.**The solicitor shall maintain during each solicitation campaign and for not less than three years after its completion, the following records: (i) the name and address of each contributor and the date and amount of the contribution, provided that the Commissioner shall not disclose this information except to the extent necessary for investigative or law-enforcement purposes; (ii) the name and residence address of each employee, agent, or other person involved in the solicitation; (iii) records of all expenses incurred in the course of the solicitation campaign; and (iv) the account number and location of all bank accounts where receipts from the campaign will be deposited.

**G.**All funds collected by the solicitor shall be deposited in a bank account. The bank account shall include the name of the charitable or civic organization with whom the solicitor has contracted. The professional solicitor shall promptly provide to the charitable or civic organization a copy of all monthly bank statements.

**H.**Any change in information filed with the Commissioner pursuant to this section shall be reported in writing to the Commissioner within seven days after the change occurs.

## History

1974, c. 574; 1979, c. 595; 1983, c. 374; 1984, c. 268; 1987, c. 561; 1988, c. 322; *1990, c. 711*; *1996, c. 461*; *1999, c. 40*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-61.1*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-61.1. Time and effect of registration

**A.**Registrations by charitable organizations, professional solicitors, and professional fund-raising counsel are effective, if complete, upon receipt by the Commissioner. Incomplete registration forms and registration forms lacking required accompanying documents are not effective until completed or until the required accompanying documents are received by the Commissioner. No person shall be considered registered under this chapter for any purpose until his registration is complete.

**B.**If the Commissioner at any time determines that (i) the requirements of *§ 57-49* or *§ 57-61* have not been met or (ii) the registrant is violating any requirement of *§§ 57-54*, *57-55.2* or *§ 57-57* or any regulations adopted pursuant to *§ 57-66*, then the Commissioner may suspend the registration until the registrant meets the requirements or complies and provides evidence thereof satisfactory to the Commissioner. The suspension may be based upon an informal conference pursuant to *§ 2.2-4019* of the Administrative Process Act (*§ 2.2-4000* et seq.).

**C.**If the Commissioner finds that the public health, safety or welfare requires urgent action, and if he also finds reasonable cause to believe that the registrant has failed to comply with *§ 57-49* or *§ 57-61* or is violating *§§ 57-54*, *57-55.2* or *§ 57-57* or any regulations adopted pursuant to *§ 57-66*, then the Commissioner may provide advance notice of as little as twenty-four hours for the conduct of the informal conference under *§ 2.2-4019* of the Administrative Process Act.

## History

1987, c. 561; 1988, c. 322; *1990, c. 711*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

## *Va. Code Ann. § 57-61.2*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-61.2. Commercial co-ventures

**A.**No commercial co-venturer shall conduct any charitable sales promotion in the Commonwealth on behalf of a charitable or civic organization unless the charitable or civic organization is duly registered or granted the appropriate exempt status as provided by this chapter.

**B.**Prior to any charitable sales promotion in the Commonwealth, the commercial co-venturer shall have a written agreement with the charitable or civic organization on whose behalf the charitable sales promotion is to be conducted. Such agreement shall be signed by an authorized representative of the commercial co-venturer and two officers of the charitable or civic organization.

**C.**The commercial co-venturer shall maintain all records in connection with the charitable sales promotion for a period of three years after the end date of the charitable sales promotion. All such records shall be made available to the Commissioner upon request.

## History

*2003, c. 576*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-62*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-62. Liability imposed by other laws not decreased

Nothing contained in this chapter shall be construed as making lawful any act or omission which is now unlawful, or as decreasing the liability, civil or criminal, of any person, imposed by existing laws.

## History

1974, c. 574.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-63*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-63. Local ordinances

**A.**The governing body of any city, town or county may by ordinance not inconsistent with this chapter provide for the regulation and licensing of charitable or civic organizations soliciting within the city, town or county, and for penalties for violation thereof, subject to the following limitations:

　1. No local license tax or fee in excess of ten dollars shall be required of any charitable organization.

　2. No charitable organization exempt from registration under subdivision A 1, A 4, A 6 or A 7 of *§ 57-60* shall be required to be licensed. Any such organization may obtain a local license, without payment of any license tax or fee, upon compliance with all such requirements of the local ordinance as would have been applicable had it been registered with the Commissioner during each year in which it obtained an exemption letter under subsection C of *§ 57-60*.

　3. No charitable organization that has registered with the Commissioner for the current and next preceding three years, or exempt for such years under *§ 57-50*, shall be required to provide any financial information.

　4. No charitable or civic organization that solicits within the Commonwealth from a place outside the Commonwealth solely by telephone, telegraph, direct mail or advertising in national media, and having no chapter, branch, area or office within the Commonwealth, shall be required to be licensed.

　5. No museum that has registered with the Commissioner as required by *§ 57-49* and that has been granted tax-exempt status under *§ 501 (c) (3) of the Internal Revenue Code* shall be required to comply with the regulation or licensing provisions of any local charitable solicitations ordinance.

　6. If a charitable or civic organization shall designate by power of attorney filed with the Commissioner one or more persons authorized to sign on its behalf, the signature, verification or affirmation of any such persons shall be sufficient for all purposes of any local charitable solicitations ordinance.

**B.**Any ordinance adopted pursuant to this section may provide, inter alia, for procedures whereby charitable organizations may, for valid reasons, after an administrative hearing, be denied a local license or whereby a license may be revoked. Valid reasons for denial or revocation of a local license may be defined to include, without limitation, the expenditure of charitable assets for noncharitable purposes, any misrepresentation to the public or to any prospective donor, and any violation of state or local law. Any charitable organization which is denied a license may, within fifteen days from the date of such denial, apply for relief to the circuit court of such city or county or of the county in which such town is located. If the court is satisfied that the denial was for any reason erroneous, it shall provide such relief as may be appropriate.

**C.**No ordinance, or amendment thereto, adopted pursuant to this section shall be valid for any calendar year beginning after December 31, 1978, unless, before September 1 of that year, there shall have been filed with the Commissioner, on forms to be prescribed by him, information deemed by him to be sufficient for the purpose of advising charitable or civic organizations of the necessity for them to be licensed by such city, town or county.

**D.**No charitable organization shall be required to comply with the provisions of local ordinances if such organization has registered with the Commissioner or if such organization is a chapter, branch or affiliate included in the consolidated report of an organization or federated organization registered with the

Va. Code Ann. § 57-63

Commissioner, except that such charitable organization shall not be exempted from that portion of any local ordinance that requires such organization to register its name, the names of its solicitors and the dates and times that they will be soliciting in the locality.

## History

1974, c. 574; 1977, c. 401; 1979, cc. 55, 595; 1983, cc. 282, 374; 1985, c. 82; *1998, cc. 104*, *232*; *2002, c. 85*.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-64*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-64. Out-of-state enforcement proceedings

Any state of the United States shall have the right to sue in the courts of Virginia to enforce the civil provisions of any statute thereof general in application regulating charitable solicitations, when the like right is accorded this Commonwealth by such state, whether such right is granted by statutory authority or as a matter of comity.

## History

1974, c. 574.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

End of Document

## *Va. Code Ann. § 57-65*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-65. Fees and charges

All fees and charges collected by the Commissioner as provided in this chapter shall be paid into a special fund of the state treasury. Such funds shall be used to finance the administration and operation of this program.

## History

1974, c. 574; 1975, c. 221; 1979, c. 595; 1984, c. 268.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-66*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-66. Rules and regulations; model ordinance

The Board shall have the power to make and publish reasonable rules and regulations not inconsistent with this chapter, or other applicable laws, or the Constitution of the Commonwealth, or the Constitution of the United States, for the enforcement of the provisions of this chapter and for the achievement of uniform regulation of charitable solicitations throughout the Commonwealth. The Commissioner shall promulgate a model ordinance which may be used by localities in their regulation of charitable solicitations.

## History

1974, c. 574; 1979, c. 595.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-67*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

## § 57-67. Application to court for relief

Any person aggrieved by any final order of the Commissioner is entitled to judicial review in accordance with the provisions of the Administrative Process Act (*§ 2.2-4000* et seq.). Either party may appeal any final order of such court to the Court of Appeals in the same manner as provided by law in cases of appeals of right.

## History

1974, c. 574; 1979, c. 595; 1984, c. 703; 1986, c. 615.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-68*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

*VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS*

# § 57-68. Repealed

Repealed by Acts *2015, c. 709*, cl. 2.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

## *Va. Code Ann. § 57-69*

Current through the 2019 Regular Session of the General Assembly and Acts 2020, cc. 1, 198, 201, 202, 249, 255, 278, 356.

***VA - Code of Virginia (Annotated)  >  TITLE 57. RELIGIOUS AND CHARITABLE MATTERS; CEMETERIES  >  CHAPTER 5. SOLICITATION OF CONTRIBUTIONS***

## § 57-69. Effective date

Notwithstanding any other section of this chapter to the contrary, no charitable organization, professional fund-raising counsel, or professional solicitor shall be required to register with the Commissioner hereunder until July 1, 1978.

## History

1975, c. 221; 1977, c. 401; 1979, c. 595.

Copyright © 2020 by Matthew Bender & Company, Inc. a member of the LexisNexis Group. All rights reserved.

**End of Document**

# CHAPTER 309

# SOCIAL AND CHARITABLE ORGANIZATIONS

**REGULATION OF CHARITABLE SOLICITATIONS**

| | |
|---|---|
| 309.50 | SOLICITATION OF CHARITABLE FUNDS; DEFINITIONS. |
| 309.515 | EXEMPTIONS. |
| 309.52 | STATEMENT REQUIREMENT. |
| 309.53 | ANNUAL REPORT. |
| 309.531 | REGISTRATION OF PROFESSIONAL FUND-RAISERS. |
| 309.533 | INVESTIGATIONS. |
| 309.54 | RECORDS. |
| 309.55 | PROHIBITED PRACTICES. |
| 309.556 | PUBLIC DISCLOSURE REQUIREMENTS. |
| 309.56 | SERVICE OF PROCESS. |
| 309.57 | DISTRICT COURT JURISDICTION, PENALTIES, ENFORCEMENT. |
| 309.581 | VIOLATIONS; PENALTIES. |
| 309.582 | CONSULTANTS. |
| 309.59 | CONSTRUCTION; POWERS OF ATTORNEY GENERAL. |
| 309.591 | RULEMAKING POWER. |
| 309.60 | RECIPROCAL AGREEMENTS, OTHER STATES. |
| 309.61 | SEVERABILITY. |

**ACQUIRING INTERESTS IN INSURANCE**

| | |
|---|---|
| 309.72 | ACQUISITION OF INTERESTS IN INSURANCE. |

**PRUDENT MANAGEMENT OF INSTITUTIONAL FUNDS**

| | |
|---|---|
| 309.73 | SHORT TITLE. |
| 309.735 | DEFINITIONS. |
| 309.74 | STANDARD OF CONDUCT IN MANAGING AND INVESTING INSTITUTIONAL FUND. |
| 309.745 | APPROPRIATION FOR EXPENDITURE OR ACCUMULATION OF ENDOWMENT FUND; RULES OF CONSTRUCTION. |
| 309.75 | DELEGATION OF MANAGEMENT AND INVESTMENT FUNCTIONS. |
| 309.755 | RELEASE OR MODIFICATION OF RESTRICTIONS ON MANAGEMENT, INVESTMENT, OR PURPOSE. |
| 309.76 | REVIEWING COMPLIANCE. |
| 309.765 | APPLICATION TO EXISTING INSTITUTIONAL FUNDS. |
| 309.77 | RELATION TO ELECTRONIC SIGNATURES IN GLOBAL AND NATIONAL COMMERCE ACT. |

**309.01** [Repealed, 1951 c 550 s 78]

**309.02** [Repealed, 1951 c 550 s 78]

**309.023** [Repealed, 1951 c 550 s 78]

**309.03** [Repealed, 1951 c 550 s 78]

**309.04** [Repealed, 1951 c 550 s 78]

**309.05** [Repealed, 1951 c 550 s 78]

**309.06** [Repealed, 1951 c 550 s 78]

**309.07** [Repealed, 1951 c 550 s 78]

**309.08** [Repealed, 1951 c 550 s 78]

**309.09** [Repealed, 1951 c 550 s 78]

**309.10** [Repealed, 1971 c 568 s 27]

**309.11** [Repealed, 1971 c 568 s 27]

**309.12** [Repealed, 1971 c 568 s 27]

**309.13** [Repealed, 1971 c 568 s 27]

**309.14** [Repealed, 1971 c 568 s 27]

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

**309.15** [Repealed, 1971 c 568 s 27]

**309.16** [Repealed, 1971 c 568 s 27]

**309.17** [Repealed, 1971 c 568 s 27]

**309.171** [Repealed, 1971 c 568 s 27]

**309.175** [Repealed, 1971 c 568 s 27]

**309.176** [Repealed, 1973 c 494 s 6; 1973 c 651 s 4]

**309.18** [Repealed, 1951 c 550 s 78]

**309.19** [Repealed, 1951 c 550 s 78]

**309.20** [Repealed, 1951 c 550 s 78]

## REGULATION OF CHARITABLE SOLICITATIONS

### 309.50 SOLICITATION OF CHARITABLE FUNDS; DEFINITIONS.

Subdivision 1. **Scope.** As used in sections 309.50 to 309.61 the words, terms and phrases, defined in this section have the meanings given them.

Subd. 2. **Person.** "Person" means any individual, organization, group, firm, copartnership, association, partnership, corporation, company, trust or joint stock association, church, religious sect, religious denomination, society, or league, and includes any trustee, receiver, assignee, agent or other similar representative thereof.

Subd. 3. **Charitable purpose.** "Charitable purpose" means any charitable, benevolent, philanthropic, patriotic, religious, social service, welfare, educational, eleemosynary, cultural, artistic, or public interest purpose, either actual or purported.

Subd. 4. **Charitable organization.** "Charitable organization" means any person who engages in or purports to engage in solicitation for a charitable purpose and includes a chapter, branch, area office or similar affiliate or any person soliciting contributions within the state for a parent charitable organization, but does not include an organization whose primary purpose is supporting or opposing any candidate for elective office, or influencing the nomination for election or the election of any candidate for elective office.

Subd. 5. **Contribution.** "Contribution" means the promise or grant of any money or property of any kind or value, including the promise to pay, or payment for merchandise or rights of any other description when representation is made by or on behalf of the seller or solicitor that the whole or any part of the price will be applied to a charitable purpose. "Contributions" shall not include any funds obtained by a charitable organization through grants from any governmental agency. "Contributions" shall include, in the case of a charitable organization offering goods and services to the public, the difference between the direct cost of the goods and services to the charitable organization and the price at which the charitable organization or any person acting on its behalf resells those goods or services to the public.

Subd. 6. **Professional fund-raiser.** "Professional fund-raiser" means any person who for financial compensation or profit performs for a charitable organization any service in connection with which contributions are, or will be, solicited in this state by the compensated person or by any compensated person the person employs, procures, or engages to solicit; or any person who for compensation or profit plans,

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

manages, advises, consults, or prepares material for, or with respect to, the solicitation in this state of contributions for a charitable organization. No investment adviser, investment adviser representative, broker-dealer, or agent licensed pursuant to chapter 80A, or lawyer, accountant, or banker who advises a person to make a charitable contribution or who provides legal, accounting, or financial advice in the ordinary course of a profession or business shall be deemed, as a result of the advice, to be a professional fund-raiser. A bona fide salaried officer, employee, or volunteer of a charitable organization is not a professional fund-raiser.

Subd. 6a. **Accounting year.** "Accounting year" means the 12 month period on which a charitable organization keeps its financial records.

Subd. 7. [Repealed, 1969 c 112 s 17]

Subd. 8. [Repealed, 2006 c 212 art 1 s 26]

Subd. 9. **Parent organization.** "Parent organization" is that part of a charitable organization which coordinates, supervises or exercises control over policy, fund-raising, and expenditures, or assists or advises one or more chapters, branches or affiliates in the state.

Subd. 10. **Solicit; solicitation.** "Solicit" and "solicitation" mean the request directly or indirectly for any contribution, regardless of which party initiates communication, on the plea or representation that such contribution will or may be used for any charitable purpose, and include any of the following methods of securing contributions:

(1) oral or written request;

(2) the distribution, circulation, mailing, posting, or publishing of any handbill, written advertisement, or publication;

(3) the making of any announcement to the press, over the radio, by television, by telephone, or telegraph concerning an appeal, assemblage, athletic or sports event, bazaar, benefit, campaign, contest, dance, drive, entertainment, exhibition, exposition, party, performance, picnic, sale, or social gathering, which the public is requested to patronize or to which the public is requested to make a contribution;

(4) the sale of, offer, or attempt to sell, any advertisement, advertising space, book, card, magazine, merchandise, subscription, ticket of admission, or any other thing, or the use of the name of any charitable person in any offer or sale as an inducement or reason for purchasing any such item, or the making of any statement in connection with any such sale, that the whole or any part of the proceeds from any such sale will be used for any charitable purpose. A "solicitation" shall be deemed completed when made, whether or not the person making the same receives any contribution or makes any such sale.

Subd. 11. **Management and general costs.** "Management and general costs" means costs determined to be management and general by generally accepted accounting principles.

Subd. 12. **Fund-raising costs.** "Fund-raising costs" means costs determined to be fund-raising by generally accepted accounting principles.

Expenses incurred in planning or developing a fund-raising campaign, regardless of whether the expenses are incurred before, during, or after that campaign, constitute fund-raising costs.

**History:** *1961 c 309 s 1; 1969 c 112 s 1; 1973 c 762 s 1-4; 1978 c 601 s 1-4; 1980 c 516 s 2; 1983 c 75 s 1; 1983 c 289 s 114 subd 1; 1984 c 655 art 1 s 92; 1986 c 444; 1987 c 336 s 27*

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

**309.501** [Repealed, 2007 c 101 s 4]

**309.502** [Repealed, 1993 c 192 s 110]

**309.51** [Repealed, 1973 c 762 s 18]

**309.515 EXEMPTIONS.**

Subdivision 1. **Registration and reporting exemption.** Subject to the provisions of subdivision 2, sections 309.52 and 309.53 shall not apply to any of the following:

(a) Charitable organizations:

(1) which did not receive total contributions in excess of $25,000, exclusive of the direct cost of prizes given to the public by the charitable organization in connection with lawful gambling conducted in compliance with chapter 349, from the public within or without this state during the accounting year last ended, and

(2) which do not plan to receive total contributions in excess of such amount from the public within or without this state during any accounting year, and

(3) whose functions and activities, including fund-raising, are performed wholly by persons who are unpaid for their services, and

(4) none of whose assets or income inure to the benefit of or are paid to any officer.

For purposes of this chapter, a charitable organization shall be deemed to receive in addition to contributions solicited from the public by it, the contributions solicited from the public by any other person and transferred to it. Any organization constituted for a charitable purpose receiving an allocation from a community chest, united fund or similar organization shall be deemed to have solicited that allocation from the public.

(b) A religious society or organization which is exempt from filing a federal annual information return pursuant to Internal Revenue Code, section 6033(a)(2)(A)(i) and (iii), and Internal Revenue Code, section 6033(a)(2)(C)(i).

(c) Any educational institution which is under the general supervision of the commissioner of education, the Board of Trustees of the Minnesota State Colleges and Universities, or the University of Minnesota or any educational institution which is accredited by the University of Minnesota or the North Central Association of Colleges and Secondary Schools, or by any other national or regional accrediting association.

(d) A fraternal, patriotic, social, educational, alumni, professional, trade or learned society which limits solicitation of contributions to persons who have a right to vote as a member. The term "member" shall not include those persons who are granted a membership upon making a contribution as the result of a solicitation.

(e) A charitable organization soliciting contributions for any person specified by name at the time of the solicitation if all of the contributions received are transferred to the person named with no restrictions on the person's expenditure of it and with no deductions whatsoever.

(f) A private foundation, as defined in section 509(a) of the Internal Revenue Code of 1954, which did not solicit contributions from more than 100 persons during the accounting year last ended.

(g) An auctioneer licensed and bonded under chapter 330 who is conducting a live auction who has no access to the proceeds of the auction is not subject to the registration and reporting requirements of this chapter, and is not considered a professional fund-raiser for the purposes of subdivision 2.

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

Subd. 2. **Limitation.** Where any such group or association or person soliciting for the benefit of such group or association described in subdivision 1, clauses (a) and (d), employs a professional fund-raiser to solicit or assist in the solicitation of contributions, sections 309.52 and 309.53 shall apply and such group or association or person shall file a registration statement as provided in section 309.52 and an annual report as provided in section 309.53.

Subd. 3. [Repealed, 1987 c 336 s 47]

**History:** *1973 c 349 s 2; 1973 c 762 s 5; 1975 c 321 s 2; 1978 c 601 s 5; 1983 c 284 s 17; 1985 c 248 s 70; 1986 c 444; 1987 c 336 s 28; 1989 c 151 s 1; 1996 c 395 s 18; 1998 c 398 art 5 s 55; 2003 c 130 s 12; 2008 c 181 s 1; 2019 c 50 art 1 s 101*

## 309.52 STATEMENT REQUIREMENT.

Subdivision 1. **Filing; contents.** No charitable organization, except as otherwise provided in section 309.515, shall solicit contributions from persons in this state by any means whatsoever unless, prior to any solicitation, there shall be on file with the attorney general upon forms provided by the attorney general, a registration statement containing, without limitation, the following information:

(a) Legally established name.

(b) Name or names under which it solicits contributions.

(c) Form of organization.

(d) Date and place of organization.

(e) Address of principal office in this state, or, if none, the name and address of the person having custody of books and records within this state.

(f) Names and addresses of, and total annual compensation paid to, officers, directors, trustees, and chief executive officer.

(g) Federal and state tax exempt status.

(h) Denial at any time by any governmental agency or court of the right to solicit contributions.

(i) Date on which accounting year of the charitable organization ends.

(j) General purposes for which organized.

(k) General purposes for which contributions to be solicited will be used.

(l) Methods by which solicitation will be made.

(m) Copies of contracts between charitable organization and professional fund-raisers relating to financial compensation or profit to be derived by the professional fund-raisers. Where any such contract is executed after filing of the registration statement, a copy thereof shall be filed within seven days of the date of execution.

(n) Board, group or individual having final discretion as to the distribution and use of contributions received.

(o) The amount of total contributions received during the accounting year last ended.

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

(p) Such other information as the attorney general may by rule or order require to promote fairness of the solicitation and to assure full and fair disclosure of all material information to the attorney general.

Subd. 1a. **Certain charitable organizations.** A charitable organization whose total contributions received during any accounting year are in excess of $25,000, exclusive of the direct cost of prizes given to the public by the charitable organization in connection with lawful gambling conducted in compliance with chapter 349, shall file a registration statement with the attorney general within 30 days after the date on which the organization's total contributions exceeded $25,000, exclusive of the direct cost of prizes given to the public by the charitable organization in connection with lawful gambling conducted in compliance with chapter 349. The registration shall exist unless revoked by a court of competent jurisdiction, or the attorney general, or as provided in subdivision 7. This subdivision shall not apply to a charitable organization which had filed a registration statement pursuant to this section for the accounting year last ended or to organizations described in section 309.515, subdivision 1.

Subd. 2. **Registration fee and financial statement.** The registration statement filed by a charitable organization shall include a registration fee of $25 and a financial statement of the organization's operation for its most recent 12 months period immediately preceding the filing of the first registration statement.

Subd. 3. **How executed.** The registration statement shall be executed by any two duly constituted officers of the charitable organization who shall acknowledge that it was executed pursuant to resolution of the board of directors or trustees, or if there be no such board, then by its managing group which has approved the content of the registration statement, and shall certify that the board of directors or trustees, or if there be no such board, its managing group, have assumed, and will continue to assume responsibility for determining matters of policy and have supervised, and will continue to supervise the finances of the charitable organization.

Subd. 4. **Affiliate filing on behalf of parent.** Where any chapter, branch, area office or similar affiliate of a charitable organization is supervised and controlled by a parent organization located within or outside the state, the affiliate may file a registration statement on behalf of the parent organization in addition to or as part of its own registration statement, or the parent organization may file a registration statement on behalf of the affiliate in addition to or as part of its own registration statement.

Subd. 5. [Repealed, 1978 c 601 s 29]

Subd. 6. [Repealed, 1978 c 601 s 29]

Subd. 7. **Failure to file.** In no event shall the registration of a charitable organization continue in effect after the date such organization should have filed, but has failed to file an annual report, including the payment of all required fees, in accordance with the requirements of section 309.53, and such organization, if in default under such section, shall not be eligible to file a new registration statement until it shall have filed the required annual report with the attorney general.

Subd. 8. [Repealed, 1978 c 601 s 29]

Subd. 9. **Special purpose organization.** A charitable organization that is organized and operated primarily for the purpose of offering and paying rewards for information leading to the apprehension or conviction of criminal suspects and that satisfies subdivision 10 shall not be required to include in its registration statement the information described in subdivision 1, clauses (f) and (o), or the financial statement described in subdivision 2, and notwithstanding subdivision 3, its registration statement may be executed by the mayor, city manager, or chief of police of the municipality, if any, with which the organization is primarily associated.

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

Subd. 10. **Application of subdivision 9 to certain organizations.** Subdivision 9 applies to an organization whose financial statement described in subdivision 2 has been audited and reported on by a certified public accountant and made available with the accountant's report for inspection by its members and by the mayor, city manager, or chief of police of the municipality, if any, with which the organization is primarily associated, and whose registration statement contains a certificate of compliance with this subdivision.

**History:** *1961 c 309 s 3; 1969 c 112 s 3-6; 1969 c 1129 art 4 s 4; 1973 c 762 s 6; 1976 c 239 s 90; 1978 c 601 s 6,7; 1982 c 585 s 1,2; 1987 c 336 s 29,30,46; 1992 c 503 s 1; 1995 c 235 s 2,3*

## 309.53 ANNUAL REPORT.

Subdivision 1. **Required filing.** Every charitable organization that is required to file or that files a registration statement pursuant to section 309.52 shall file an annual report with the attorney general upon forms provided by the attorney general or on forms identical thereto on or before July 15 of each year if its books are kept on a calendar year basis, or on or before the 15th day of the seventh month following the close of its fiscal year if its books are kept on a fiscal year basis. For cause shown the attorney general may extend the time for filing the annual report for a period not to exceed four months.

Subd. 1a. [Repealed, 1995 c 235 s 17]

Subd. 2. **Contents; effect of filing and failure to file.** Such annual report shall include a financial statement covering the immediately preceding 12-month period of operation, shall be executed by any two duly constituted officers of the charitable organization, and shall be executed pursuant to resolution of the board of directors or trustees, or if there be no such board, then by its managing group which has approved the content of the annual report. Except as provided in section 309.55, subdivision 1, the annual report shall also include a copy of all tax or information returns, including all schedules and amendments, submitted by the charitable organization to the Internal Revenue Service for the period covered by the annual report except any schedules of contributors to the organization.

A charitable organization which files the annual report required under this subdivision with the attorney general is not required to file the tax return with the commissioner of revenue. An organization which fails to file the annual report on or before the date required or allowed under this section shall pay a late fee of $50. This late fee shall be in addition to all other fees, costs, and penalties which may be imposed pursuant to this section or section 309.57.

Subd. 3. **Financial statement requirements.** The financial statement shall include a balance sheet, statement of income and expense, and statement of functional expenses, shall be consistent with forms furnished by the attorney general, and shall be prepared in accordance with generally accepted accounting principles so as to make a full disclosure of the following, including necessary allocations between each item and the basis of such allocations:

(a) total receipts and total income from all sources;

(b) cost of management and general;

(c) program services;

(d) cost of fund-raising;

(e) cost of public education;

(f) funds or properties transferred out of state, with explanation as to recipient and purpose;

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

(g) total net amount disbursed or dedicated within this state, broken down into total amounts disbursed or dedicated for each major purpose, charitable or otherwise;

(h) names of professional fund-raisers used during the accounting year and the financial compensation and profit resulting to each professional fund-raiser; and

(i) a list of the five highest paid directors, officers, and employees of the organization and its related organizations, as that term is defined by section 317A.011, subdivision 18, that receive total compensation of more than $100,000, together with the compensation paid to each. For purposes of this subdivision, "compensation" is defined as the total amount reported on Form W-2 (Box 5) or Form 1099-MISC (Box 7) issued by the organization and its related organizations to the individual. The value of fringe benefits and deferred compensation paid by the charitable organization and all related organizations as that term is defined by section 317A.011, subdivision 18, shall also be reported as a separate item for each person whose compensation is required to be reported pursuant to this subdivision.

Unless otherwise required by this subdivision, the financial statement need not be certified.

A financial statement of a charitable organization which has received total revenue in excess of $750,000 for the 12 months of operation covered by the statement shall be accompanied by an audited financial statement prepared in accordance with generally accepted accounting principles that has been examined by an independent certified public accountant for the purpose of expressing an opinion. In preparing the audit the certified public accountant shall take into consideration capital, endowment or other reserve funds, if any, controlled by the charitable organization. For purposes of calculating the $750,000 total revenue threshold provided by this subdivision, the value of donated food to a nonprofit food shelf may not be included if the food is donated for subsequent distribution at no charge, and not for resale.

Subd. 3a. **Filing of federal tax return.** The federal tax return may be filed in lieu of other financial statements if it is prepared in accordance with generally accepted accounting principles and meets the requirements for financial statements set forth in subdivisions 2, 3, and 4.

Subd. 4. **Registered parent organization.** Where a registration statement has been filed by a parent organization or affiliate as provided in section 309.52, subdivision 4, the registered parent organization may file the annual report required under this section on behalf of the chapter, branch, area office, similar affiliate, or person in addition to or as part of its own report or the registered affiliate may file the annual report required under this section on behalf of the parent organization in addition to or as part of its own report. The accounting information required under this section shall be set forth separately and not in consolidated form with respect to every chapter, branch, area office, similar affiliate, or person within the state which raises or expends more than $25,000, exclusive of the direct cost of prizes given to the public by the charitable organization in connection with lawful gambling conducted in compliance with chapter 349. The attorney general may permit any chapter, branch, area office, similar affiliate, or person to file a consolidated statement with any other chapter, branch, area office, similar affiliate, or person or parent organization if the interests of the charitable beneficiaries will not be prejudiced thereby and separate accounting information is not required for proper supervision.

Subd. 5. [Repealed, 1978 c 601 s 29]

Subd. 6. **Special purpose organization.** A charitable organization that is organized and operated primarily for the purpose of offering and paying rewards for information leading to the apprehension or conviction of criminal suspects and that satisfies subdivision 7 shall not be required to include in its annual report the financial statement described in subdivisions 2 and 3, and notwithstanding subdivision 2, its annual

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

report may be executed by the mayor, city manager, or chief of police of the municipality, if any, with which the organization is primarily associated.

Subd. 7. **Application of subdivision 6 to certain organizations.** Subdivision 6 applies to an organization whose financial statement described in subdivisions 2 and 3 has been audited and reported on by a certified public accountant and made available with the accountant's report for inspection by its members and by the mayor, city manager, or chief of police of the municipality, if any, with which the organization is primarily associated, and whose annual report contains a certificate of compliance with this subdivision.

Subd. 8. **Reregistration fee.** A reregistration fee of $25 shall be paid by every charitable organization submitting the annual report required by this section.

**History:** *1961 c 309 s 4; Ex1967 c 49 s 2; 1969 c 112 s 7-10; 1969 c 1129 art 4 s 4; 1973 c 762 s 7; 1978 c 601 s 8-10; 1981 c 148 s 1; 1982 c 585 s 3,4; 1983 c 284 s 18,19; 1983 c 289 s 114 subd 1; 1983 c 301 s 184,185; 1984 c 655 art 1 s 92; 1987 c 336 s 31-34,46; 1994 c 465 art 1 s 37; 1995 c 235 s 4-7; 1996 c 384 s 3; 2000 c 302 s 1; 2001 c 45 s 1,2; 2008 c 318 art 1 s 13; 2009 c 88 art 12 s 11; 2011 c 25 s 1*

## 309.531 REGISTRATION OF PROFESSIONAL FUND-RAISERS.

Subdivision 1. **General requirements.** No person shall act as a professional fund-raiser unless registered with the attorney general. The registration statement must be in writing, under oath, in the form prescribed by the attorney general and must be accompanied by a registration fee of $200. Each registration is effective for a period of not more than 12 months and in any event expires on April 30 next following the date of registration. The registration may be renewed for additional one-year periods on application and payment of all required fees. A professional fund-raiser failing to register on the date required by this section or failing to file the financial report required by this section on or before the date provided shall pay a late fee of $300. This late fee shall be in addition to all other fees, costs, and penalties which may be imposed pursuant to this section or section 309.57.

Subd. 2. **Required registration statement.** The registration statement of the professional fund-raiser shall consist of the following:

(a) If the professional fund-raiser at any time has custody of or access to contributions from a solicitation, or if any person the professional fund-raiser employs, obtains, or engages has custody of or access to contributions from a solicitation, the registration statement shall include a bond, in which the professional fund-raiser shall be the principal obligor. The bond shall be in the sum of $20,000, with one or more responsible sureties whose liability in the aggregate as the sureties will at least equal that sum. In order to maintain the registration, the bond shall be in effect for the full term of the registration. The bond, which may be in the form of a rider to a larger blanket liability bond, shall run to the state and to any person who may have a cause of action against the principal obligor of the bond for any liabilities resulting from the obligor's conduct of any activities subject to sections 309.50 to 309.61 or arising out of a violation of the statutes or a rule adopted under the statutes.

(b) If the professional fund-raiser, or any person the professional fund-raiser employs, procures, or engages, solicits in this state, the registration statement shall include a completed "solicitation notice" on a form provided by the attorney general. The solicitation notice shall include a copy of the contract described in paragraph (c), the projected dates when soliciting will commence and terminate, the location and telephone number from where the solicitation will be conducted, the name and residence address of each person responsible for directing and supervising the conduct of the campaign, a statement as to whether the professional fund-raiser will at any time have custody of contributions, and a description of the charitable program for which the solicitation campaign is being carried out. The charitable organization on whose

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

behalf the professional fund-raiser is acting shall certify that the solicitation notice and accompanying material are true and complete to the best of its knowledge.

(c) The professional fund-raiser shall also include, as part of the registration statement, a copy of the contract between the charitable organization and the professional fund-raiser. The contract shall:

(1) be in writing;

(2) contain information as will enable the attorney general to identify the services the professional fund-raiser is to provide, including whether the professional fund-raiser will at any time have custody of contributions; and

(3) if the professional fund-raiser or any person the professional fund-raiser employs, procures, or engages, directly or indirectly, solicits in this state, the contract shall disclose the percentage or a reasonable estimate of the percentage of the total amount solicited from each person which shall be received by the charitable organization for charitable purposes.

The stated percentages required by this section and section 309.556, subdivision 2, shall exclude any amount which the charitable organization is to pay as expenses of the solicitation campaign, including the cost of merchandise or services sold or events staged.

(d) The registration statement shall also include the financial report for previous campaigns conducted by the professional fund-raiser in this state as set forth in subdivision 4.

Subd. 3. **Solicitations on behalf of charity; written authorization.** No professional fund-raiser shall use the name of or solicit on behalf of any charitable organization unless such solicitor has written authorization from two officers of such organization, a copy of which shall be filed with the attorney general. Such written authorization shall conform to the requirements of the contract described in subdivision 2, clause (c).

Subd. 4. **Solicitation campaign; financial report.** Within 90 days after a solicitation campaign has been completed, and 90 days following the anniversary of the commencement of a solicitation campaign lasting more than one year, the professional fund-raiser who solicited contributions in this state in conjunction with a charitable organization shall file with the attorney general a financial report for the campaign, including gross revenue and an itemization of all expenses incurred. The report shall be completed on a form prescribed by the attorney general. The report shall be signed by an authorized official of the professional fund-raiser and an authorized official from the charitable organization and they shall certify, under oath, that it is true to the best of their knowledge.

**History:** *1973 c 762 s 8; 1987 c 336 s 35; 1987 c 358 s 115; 1989 c 151 s 2; 1994 c 465 art 3 s 10; 1995 c 235 s 8,9*

**309.532** [Repealed, 1987 c 336 s 47]

**309.533 INVESTIGATIONS.**

Subdivision 1. **Attorney general investigation powers.** The attorney general:

(a) may make public or private investigations within or outside the state as deemed necessary by the attorney general to determine whether any person has violated or is about to violate any provision of sections 309.50 to 309.61 or any rule or order thereunder, or to aid in the enforcement of sections 309.50 to 309.61 in the prescribing of rules and forms thereunder, and may publish information, concerning the violation of sections 309.50 to 309.61 or any rule or order thereunder.

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

(b) may require or permit any person to file a statement in writing, under oath or otherwise as the attorney general determines, as to all facts and circumstances concerning the matter being investigated.

Subd. 2. [Repealed, 1987 c 336 s 47]

Subd. 3. [Repealed, 1987 c 336 s 47]

Subd. 4. [Repealed, 1987 c 336 s 47]

Subd. 5. **Attorney general discovery powers.** In connection with an investigation under this section, the attorney general may obtain discovery from any person regarding any matter, fact, or circumstance, not privileged, that is relevant to the subject matter involved in the investigation, in accordance with the provisions of section 8.31.

**History:** *1978 c 601 s 11; 1986 c 444; 1987 c 336 s 36,46*

**309.534** [Repealed, 1987 c 336 s 47]

## 309.54 RECORDS.

Subdivision 1. **Filed documents are public records.** Registration statements, annual reports, and other documents required to be filed shall become public records in the Office of the Attorney General.

Subd. 2. **Inspection by attorney general.** Every person subject to sections 309.50 to 309.61 shall maintain, for not less than three years from the date of preparation, accurate and detailed books and records to provide the information required by sections 309.50 to 309.61. All such books and records shall be open to inspection at all reasonable times by the attorney general.

Subd. 3. **Retention of books and records.** Every charitable organization which is required to file an annual report under section 309.53 shall keep and maintain, at the place designated in its registration statement, the original books and records, or true copies thereof, pertaining to all money or other property collected from residents of this state and to the disbursement of such money or property. Such books and records shall be preserved for a period of not less than three years from the date of preparation thereof.

**History:** *1961 c 309 s 5; 1969 c 112 s 11,12; 1969 c 1129 art 4 s 4; 1973 c 762 s 9; 1987 c 336 s 37; 1995 c 235 s 10*

## 309.55 PROHIBITED PRACTICES.

Subdivision 1. **Use of names.** No charitable organization or person acting for a charitable organization shall use the name of any other person (except that of an officer, director or trustee of the charitable organization by or for which contributions are being solicited) in public solicitation literature without the written consent of such other person. Nothing herein contained shall prevent the publication of names of contributors, without their written consent, in an annual or other periodic report issued by a charitable organization for the purpose of reporting to its membership. Nothing in section 309.52 or 309.53 shall require the disclosure in any registration statement or annual report of the names of individual contributors and the amount contributed by each one individually.

Subd. 2. **Confusing or misleading names, symbols, or statements.** No charitable organization soliciting contributions shall use a name, symbol or statement so closely related or similar to that used by another charitable organization or governmental agency that the use thereof would tend to confuse or mislead the public.

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

Subd. 3. **Misrepresentation of registration.** Registration under sections 309.50 to 309.61 shall not be deemed to constitute an endorsement by the state of Minnesota of the charitable organizations so registered, and no person shall directly or indirectly misrepresent the registration hereunder to any donor or prospective donor.

Subd. 4. **Use of uniformed state or local personnel.** No charitable organization and no person acting on behalf of a charitable organization shall use any uniformed personnel of any local, state or federal agency or department to solicit contributions. This subdivision shall not apply to firefighters who solicit contributions in uniform.

Subd. 5. **False or deceptive practices.** No charitable organization and no person acting on behalf of a charitable organization shall use or employ any fraud, false pretense, false promise, misrepresentation, misleading statement, misleading name, mark or identification, or deceptive practice, method or device, with the intent that others should rely thereon in connection with any charitable solicitation, including any such actions or omissions designed to confuse or mislead a person to believe that such organization is another organization having the same or like purposes; or to believe that the funds being solicited are or will be used for purposes and programs conducted within or for persons located within the state of Minnesota when such is not the case; or to otherwise present purposes and uses of the funds which are not as provided within the purposes and uses filed upon registration of said organization under this chapter, or if no such registration has been filed, then as provided under the exemption of said organization from federal and state income taxes as an organization formed and operating for charitable purposes as defined herein.

Subd. 6. **Sale of contributor list.** No person shall, either as an individual or as agent, officer or employee of a charitable organization sell or otherwise furnish for a consideration to any other person any list of contributors unless the contributor has consented to the transaction.

Subd. 7. **Soliciting organization payments to unregistered organization.** No moneys solicited within the state by any organization subject to this chapter shall be paid or contributed by the soliciting organization to any other charitable organization not registered under this chapter by which it is controlled or with which it is affiliated by contract, franchise or otherwise, whose purposes, policies, articles or bylaws are in conflict with those of the soliciting organization upon any material matter unless such other organization to which such moneys are to be paid or delivered shall agree to be bound by the purposes, policies, articles and bylaws of the soliciting organization.

**History:** *1961 c 309 s 6; 1973 c 762 s 10; 1974 c 367 s 1; 1975 c 386 s 1,2; 1977 c 429 s 63; 1986 c 444; 1987 c 336 s 38*

**309.555** [Repealed, 1987 c 336 s 47]

**309.556 PUBLIC DISCLOSURE REQUIREMENTS.**

Subdivision 1. **Identity of organization; percentage of deductibility; description of program.** Prior to orally requesting a contribution or contemporaneously with a written request for a contribution, the following information shall be clearly disclosed:

(a) the name and location by city and state of each charitable organization on behalf of which the solicitation is made;

(b) the tax deductibility of the contribution; and

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

(c) a description of the charitable program for which the solicitation campaign is being carried out; and, if different, a description of the programs and activities of the organization on whose behalf the solicitation campaign is being carried out.

If the solicitation is made by direct personal contact, the required information shall also be disclosed prominently on a written document which shall be exhibited to the person solicited. If the solicitation is made by radio, television, letter, telephone, or any other means not involving direct personal contact, the required information shall be clearly disclosed in the solicitation.

Subd. 2. **Identity of professional fund-raiser.** In addition to the disclosures required by subdivision 1, any professional fund-raiser soliciting contributions in this state shall also disclose the name of the professional fund-raiser as on file with the attorney general and that the solicitation is being conducted by a "professional fund-raiser." The disclosures required by this subdivision shall be given in the same manner as the disclosures required by subdivision 1.

**History:** *1973 c 762 s 12; 1984 c 527 s 1; 1987 c 336 s 39; 1989 c 151 s 3; 1995 c 235 s 11*

## 309.56 SERVICE OF PROCESS.

Subdivision 1. **Manner.** Any charitable organization or professional fund-raiser which solicits contributions in this state, but does not maintain an office within the state shall be subject to service of process, as follows:

(a) By service thereof on its registered agent within the state, or if there be no such registered agent, then upon the person, if any, who has been designated in the registration statement as having custody of books and records within this state; where service is effected upon the person so designated in the registration statement a copy of the process shall, in addition, be mailed to the charitable organization or professional fund-raiser at its last known address;

(b) When a charitable organization or professional fund-raiser has solicited contributions in this state, but maintains no office within the state, has no registered agent within the state, and no designated person having custody of its books and records within the state, or when a registered agent or person having custody of its books and records within the state cannot be found as shown by the return of the sheriff of the county in which such registered agent or person having custody of books and records has been represented by the charitable organization or professional fund-raiser as maintaining an office, service may be made as in any other civil suit, or in the manner provided by section 5.25, or in a manner as the court may direct.

Subd. 2. **Consent to service.** The solicitation of any contribution within this state shall be deemed to be the agreement of the charitable organization or professional fund-raiser that any process against it which is so served in accordance with the provisions of this section shall be of the same legal force and effect as if served personally within this state.

**History:** *1961 c 309 s 7; 1969 c 1129 art 4 s 4; 1973 c 762 s 13; 1978 c 601 s 14; 1978 c 674 s 60; 1986 c 444; 1987 c 336 s 40; 1995 c 128 art 1 s 10*

## 309.57 DISTRICT COURT JURISDICTION, PENALTIES, ENFORCEMENT.

Subdivision 1. **General.** Upon the application of the attorney general the district court is vested with jurisdiction to restrain, enjoin, and redress violations of sections 309.50 to 309.61. The court may make any necessary order or judgment including, but not limited to, injunctions, restitution, appointment of a receiver for the defendant or the defendant's assets, suspension of the defendant's registration, awards of reasonable attorney fees, and costs of investigation and litigation, and may award to the state civil penalties up to $25,000

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

for each violation of sections 309.50 to 309.61. In ordering injunctive relief, the attorney general shall not be required to establish irreparable harm but only a violation of statute or that the requested order promotes the public interest. The court may, as appropriate, enter a consent judgment or decree without the finding of illegality.

Subd. 2. **Assurance of discontinuance.** The attorney general may accept an assurance of discontinuance of any method, act, or practice in violation of sections 309.50 to 309.61 from any person alleged to be engaged or to have been engaged in the method, act, or practice. The assurance may, among other terms, include a stipulation for the voluntary payment by the person of the costs of investigation, or of an amount to be held in escrow pending the outcome of an action or as restitution to aggrieved persons, or both. Any assurance of discontinuance shall be in writing and be filed with the district court of the county of the violator's residence or principal place of business or in Ramsey County. An assurance shall not be considered an admission of a violation for any purpose. Failure to comply with the assurance of discontinuance shall be punishable as contempt.

**History:** *1961 c 309 s 8; 1987 c 336 s 41; 1989 c 151 s 4*

**309.58** [Repealed, 1987 c 336 s 47]

## 309.581 VIOLATIONS; PENALTIES.

Any person who willfully and knowingly violates any provision of sections 309.50 to 309.61, or who willfully and knowingly gives false information to the attorney general in statements, reports, or contracts required to be filed by sections 309.50 to 309.61 shall be guilty of a misdemeanor.

**History:** *1969 c 112 s 14; 1969 c 1129 art 4 s 4; 1976 c 2 s 123; 1987 c 336 s 46*

## 309.582 CONSULTANTS.

The attorney general may retain as consultants such accountants or other experts as the administration of this chapter may require.

**History:** *1969 c 112 s 15*

**309.583** [Repealed, 1976 c 2 s 124]

## 309.59 CONSTRUCTION; POWERS OF ATTORNEY GENERAL.

Sections 309.50 to 309.61 shall not be construed to limit or to restrict the exercise of the powers or the performance of the duties of the attorney general which the attorney general otherwise is authorized to exercise or perform under any other provision of law.

**History:** *1961 c 309 s 10; 1986 c 444*

## 309.591 RULEMAKING POWER.

The attorney general may promulgate such rules as are reasonably necessary to carry out and make effective the provisions and purposes of this chapter.

**History:** *1973 c 762 s 15; 1980 c 516 s 2; 1983 c 289 s 114 subd 1; 1984 c 655 art 1 s 92; 1987 c 336 s 46*

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

## 309.60 RECIPROCAL AGREEMENTS, OTHER STATES.

The attorney general may enter into reciprocal agreements with a like authority of any other state or states for the purpose of exchanging information made available to the attorney general or to such other like authority.

**History:** *1961 c 309 s 11; 1969 c 1129 art 4 s 4; 1973 c 762 s 16; 1987 c 336 s 46*

## 309.61 SEVERABILITY.

If any provision of sections 309.50 to 309.61 or the application thereof to any person or circumstance is held invalid the invalidity shall not affect other provisions or application of said sections which can be given effect without the invalid provision or application, and to this end the provisions of said sections are severable.

**History:** *1961 c 309 s 12*

**309.62** [Repealed, 2008 c 188 s 10]

**309.63** [Repealed, 2008 c 188 s 10]

**309.64** [Repealed, 2008 c 188 s 10]

**309.65** [Repealed, 2008 c 188 s 10]

**309.66** [Repealed, 2008 c 188 s 10]

**309.67** [Repealed, 2008 c 188 s 10]

**309.68** [Repealed, 2008 c 188 s 10]

**309.69** [Repealed, 2008 c 188 s 10]

**309.70** [Repealed, 2008 c 188 s 10]

**309.71** [Repealed, 2008 c 188 s 10]

## ACQUIRING INTERESTS IN INSURANCE

## 309.72 ACQUISITION OF INTERESTS IN INSURANCE.

An organization described in section 170(c) of the Internal Revenue Code of 1986, as amended through December 31, 1991, may purchase, accept, or otherwise acquire an interest in a life insurance policy as beneficiary or owner, as provided in section 60A.0783, subdivision 2, paragraph (f).

**History:** *1992 c 483 s 3; 2010 c 382 s 63*

## PRUDENT MANAGEMENT OF INSTITUTIONAL FUNDS

## 309.73 SHORT TITLE.

Sections 309.73 to 309.77 may be cited as the "Uniform Prudent Management of Institutional Funds Act."

**History:** *2008 c 188 s 1*

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

## UNIFORM DECEPTIVE
## TRADE PRACTICES

### 325D.43 DEFINITIONS.

Subdivision 1. **Scope.** As used in sections 325D.43 to 325D.48, unless the context otherwise requires, the terms defined in this section have the meanings ascribed to them.

Subd. 2. **Article.** "Article" means a product as distinguished from its trademark, label, or distinctive dress in packaging.

Subd. 3. **Certification mark.** "Certification mark" means a mark used in connection with the goods or services of a person other than the certifier to indicate geographic origin, material, mode of manufacture, quality, accuracy, or other characteristics of the goods or services or to indicate that the work or labor on the goods or services was performed by members of a union or other organization.

Subd. 4. **Collective mark.** "Collective mark" means a mark used by members of a cooperative, association, or other collective group or organization to identify goods or services and distinguish them from those of others, or to indicate membership in the collective group or organization.

Subd. 5. **Mark.** "Mark" means a word, name, symbol, device, or any combination of the foregoing in any form or arrangement.

Subd. 6. **Service mark.** "Service mark" means a mark used by a person to identify services and to distinguish them from the services of others.

Subd. 7. **Trademark.** "Trademark" means a mark used by a person to identify goods and to distinguish them from the goods of others.

Subd. 8. **Trade name.** "Trade name" means a word, name, symbol, device, or any combination of the foregoing in any form or arrangement used by a person to identify the person's business, vocation, or occupation and distinguish it from the business, vocation, or occupation of others.

**History:** *1973 c 216 s 1; 1986 c 444*

### 325D.44 DECEPTIVE TRADE PRACTICES.

Subdivision 1. **Acts constituting.** A person engages in a deceptive trade practice when, in the course of business, vocation, or occupation, the person:

(1) passes off goods or services as those of another;

(2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(4) uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

(6) represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) disparages the goods, services, or business of another by false or misleading representation of fact;

(9) advertises goods or services with intent not to sell them as advertised;

(10) advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;

(12) in attempting to collect delinquent accounts, implies or suggests that health care services will be withheld in an emergency situation; or

(13) engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Subd. 2. **Proof.** In order to prevail in an action under sections 325D.43 to 325D.48, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

Subd. 3. **Other law.** This section does not affect unfair, deceptive, or misleading trade practices otherwise actionable at common law or under other statutes of this state.

**History:** *1973 c 216 s 2; 1986 c 444; 1988 c 592 s 11*

## 325D.45 REMEDIES.

Subdivision 1. **Injunctive relief.** A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.

Subd. 2. **Costs and attorney fees.** Costs shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party if (1) the party complaining of a deceptive trade practice has brought an action knowing it to be groundless, or (2) the party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

Subd. 3. **Remedies cumulative.** The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state.

**History:** *1973 c 216 s 3; 1986 c 444*

## 325D.46 APPLICATION.

Subdivision 1. **Nonapplication.** Sections 325D.43 to 325D.48 do not apply to:

(1) conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency; or

(2) actions or appeals pending on July 1, 1973.

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

Subd. 1a. **Publishers, broadcasters, and printers.** Sections 325D.43 to 325D.48 shall apply to publishers, broadcasters, printers, or other persons engaged in the dissemination of information or reproduction of printed or pictorial matters who publish, broadcast, or reproduce material only if the persons have either knowledge of the deceptive trade practice or a financial interest in the goods or services being deceptively offered for sale.

Subd. 2. **Good faith use of trade identification.** Section 325D.44, subdivision 1, clauses (2) and (3) do not apply to the use of a service mark, trademark, certification mark, collective mark, trade name, or other trade identification that was used and not abandoned before July 1, 1973, if the use was in good faith and is otherwise lawful except for sections 325D.43 to 325D.48.

Subd. 3. **Deceptive telephone-related directory listings and print advertisements.** (a) The practices described in this subdivision are practices described in section 325D.44, clauses (2) and (4).

(b) For purposes of this subdivision, "business is located within the geographic area," "geographic location of the business," or similar term means that at least one owner or employee of the business regularly performs services on behalf of the business at that location. Renting use of a street address, post office box, or mail-drop does not constitute having a business at that location.

(c) A person operating a business misrepresents the geographic location of its business in a listing of the business in a telephone directory, other directory assistance database, or on the Internet, if the name of the business, or the name under which the business is listed, indicates that the business is located within a geographic area and all of the following apply:

(1) the business is not located within the geographic area indicated;

(2) the listing fails to identify the actual municipality and state of the business's geographic location; and

(3) telephone calls to the local telephone number listed in the telephone directory, directory assistance database, or on the Internet routinely are forwarded or transferred to a location that is outside the calling area covered by the telephone directory or directory assistance database in which the number is listed, or outside the local calling area for the local telephone number posted on the Internet.

(d) A person operating a business misrepresents the geographic location of the business in print advertisement if a fictitious or assumed business name is listed in print advertisement and both of the following apply:

(1) the name used misrepresents the geographic location of the business; and

(2) a telephone call to the local telephone number listed in the print advertisement routinely is forwarded or transferred to a location that is outside the calling area for the local telephone number listed.

(e) This subdivision does not limit the application of sections 325D.43 to 325D.48.

**History:** *1973 c 216 s 4; 1975 c 364 s 1,2; 2010 c 235 s 1*

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

## 325D.47 UNIFORMITY OF APPLICATION AND CONSTRUCTION.

Sections 325D.43 to 325D.48 shall be so applied and construed as to effectuate its general purpose to make uniform the law with respect to the subject of sections 325D.43 to 325D.48 among those states which enact it.

**History:** *1973 c 216 s 5*

## 325D.48 CITATION.

Sections 325D.43 to 325D.48 may be cited as the Uniform Deceptive Trade Practices Act.

**History:** *1973 c 216 s 6*

**COMBINATIONS IN
RESTRAINT OF TRADE**

## 325D.49 CITATION.

Sections 325D.49 to 325D.66 may be cited as the "Minnesota Antitrust Law of 1971."

**History:** *1971 c 865 s 1*

## 325D.50 DEFINITIONS.

Subdivision 1. **Scope.** Unless a different meaning is clearly indicated by the context, for the purposes of sections 325D.49 to 325D.66, the terms defined in this section have the meanings ascribed to them.

Subd. 2. **Commodity.** "Commodity" means any goods, merchandise, wares, produce, chose in action, land, article of commerce, or any other tangible or intangible property, real, personal, or mixed, for use, consumption, enjoyment, or resale.

Subd. 3. **Service.** "Service" means any kind of activity performed in whole or in part for financial gain.

Subd. 4. **Contract, combination, or conspiracy.** "Contract, combination, or conspiracy" means any agreement, arrangement, collusion, or understanding. "Contract" includes a purchase, a contract to purchase, a sale, a contract to sell, a lease, a contract to lease, a license, or a contract to license. "Combination" includes a trust, common selling or purchasing agent, pool, or holding company.

Subd. 5. **Person.** "Person" means any individual, corporation, firm, partnership, incorporated and unincorporated association, or any other legal or commercial entity.

Subd. 6. **Trade or commerce.** "Trade or commerce" means any economic activity of any type whatsoever involving any commodity or service whatsoever.

**History:** *1971 c 865 s 2*

## 325D.51 UNREASONABLE RESTRAINT OF TRADE OR COMMERCE.

A contract, combination, or conspiracy between two or more persons in unreasonable restraint of trade or commerce is unlawful.

**History:** *1971 c 865 s 3*

Copyright © 2019 by the Revisor of Statutes, State of Minnesota. All Rights Reserved.

## *N.J. Stat. § 56:8-1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

# § 56:8-1. Definitions

**(a)**The term "advertisement" shall include the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan;

**(b)**The term "Attorney General" shall mean the Attorney General of the State of New Jersey or any person acting on his behalf;

**(c)**The term "merchandise" shall include any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale;

**(d)**The term "person" as used in this act shall include any natural person or his legal representative, partnership, corporation, company, trust, business entity or association, and any agent, employee, salesman, partner, officer, director, member, stockholder, associate, trustee or cestuis que trustent thereof;

**(e)**The term "sale" shall include any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute;

**(f)**The term "senior citizen" means a natural person 60 years of age or older.

# History

L. 1960, c. 39, §  1; amended 1967, c. 301, §  1; *1999, c. 298*, §  2, eff. June 20, 2000.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-1.1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

# § 56:8-1.1. Temporary help service; inclusion within definition of merchandise; rules or regulations; fees, charges on firms; transport of workers regulated

Services provided by a temporary help service firm shall constitute services within the term "merchandise" pursuant to P.L.1960, c.39, s.1 (*C.56:8-1(c)*), and the provisions of P.L.1960, c.39 (*C.56:8-1* et seq.) shall apply to the operation of a temporary help service firm.

The Attorney General shall promulgate rules and regulations pursuant to section 4 of P.L.1960, c.39 (*C.56:8-4*). The Attorney General shall, by rule or regulation, establish, prescribe or change an annual registration fee or other charge on temporary help service firms to such extent as shall be necessary to defray all proper expenses incurred by his office in the performance of its duties under this section of this act but such registration fees or other charges shall not be fixed at a level that will raise amounts in excess of the amount estimated to be so required. In addition to any other appropriate requirements, the Attorney General shall, by rule or regulation require the following:

a. Each temporary help service firm operating within the State of New Jersey shall, prior to the effective date of this act or commencement of operation and annually thereafter, notify the Attorney General as to its appropriate name, if applicable; the trade name of its operation; its complete address, including street and street number of the building and place where its business is to be conducted; and the names and resident addresses of its officers. Each principal or owner shall provide an affidavit to the Attorney General setting forth whether such principal or owner has ever been convicted of a crime.

b. When a temporary help service firm utilizes any location other than its primary location for the recruiting of applicants, including mobile locations, it shall notify the Office of the Attorney General of such fact in writing or by telephone, and subsequently confirm in writing prior to the utilization of such facility.

c. Each temporary help service firm shall at the time of its initial notification to the Attorney General, and annually thereafter, post a bond of $1,000.00 with the Attorney General to secure compliance with P.L.1960, c.39 (*C.56:8-1* et seq.), provided however that the Attorney General may waive such bond for any corporation or entity having a net worth of $100,000 or more.

d. Any temporary help service firm, as the term is used in P.L.1960, c.39 (*C.56:8-1* et seq.), *P.L.1989, c.331* (*C.34:8-43* et seq.) or this section, which places individuals in work which requires them to obtain transportation services to get to, or return from, the site of the work shall be subject to the provisions of this subsection, except that the provisions of this subsection shall not apply if the firm requires the individuals to use their own vehicles or other transportation of their choice, for transportation to and from work and shall not apply if public transportation is available at the times needed for them to get to, and return from, the site of the work and the firm permits them to use the public transportation. If the firm provides transportation services with any vehicle owned, leased or otherwise under the control of the firm, the firm shall be responsible for compliance with the provisions of *R.S.48:4-3* et seq. and any

N.J. Stat. § 56:8-1.1

other applicable law or regulation regarding the vehicle and its use and shall keep records in the manner required by regulations adopted by the Attorney General in consultation with the New Jersey Motor Vehicle Commission. If the firm does not provide transportation services, but refers, directs or requires the individuals to use any other provider or providers of transportation services, or provides no practical alternative to the use of services of the provider or providers, the firm shall obtain, and keep on file, documentation that each provider is in compliance with the provisions of *R.S.48:4-3* et seq. and any other applicable law or regulation in the manner required by regulations adopted by the Attorney General in consultation with the New Jersey Motor Vehicle Commission. The firm may not require the individuals to use transportation provided by the firm or another provider of transportation services if they have other transportation available. A failure to comply with the provisions of this subsection, including all record-keeping requirements of this subsection, shall be regarded as an unlawful practice and a violation of this section, of P.L.1960, c.39 (*C.56:8-1* et seq.) and of *R.S.48:4-3* et seq. and a temporary help service firm found to be in violation shall be subject to penalties provided for violations of those acts, and shall be jointly and severally liable with the provider of transportation services for any injury which occurs to the individuals while being transported in a vehicle owned, leased or otherwise under the control of the provider. In the case of noncompliance with the provisions of this section on more than one occasion, the Attorney General may suspend or revoke the firm's registration as a temporary help service firm for the purposes of this section, P.L.1960, c.39 (*C.56:8-1* et seq.) and *P.L.1989, c.331* (*C.34:8-43* et seq.).

## History

L. 1981, c. 1, § 14; amended *2007, c. 14*, § 1, eff. Jan. 24, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-1.2*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-1.2. Unlawful withholding of diversion of wages by temporary help service firm; penalty

It shall be an unlawful practice for a temporary help service firm, as the term is used in P.L.1960, c.39 (*C.56:8-1* et seq.), section 14 of P.L.1981, c.1 (*C.56:8-1.1*) and *P.L.1989, c.331* (*C.34:8-43* et seq.), to willfully withhold or divert wages for any purpose not expressly permitted by section 4 of P.L.1965, c.173 (*C.34:11-4.4*). In addition to any fine or penalty, the Attorney General may refuse to issue or renew, and may suspend or revoke a firm's registration to operate as a temporary help service firm for the purposes of P.L.1960, c.39 (*C.56:8-1* et seq.), section 14 of P.L.1981, c.1 (*C.56:8-1.1*), *P.L.1989, c.331* (*C.34:8-43* et seq.) and related regulations for a violation of this section. A refusal, suspension or revocation shall not be made except upon reasonable notice to, and the opportunity to be heard by, the applicant or registrant.

## History

L. *2007, c. 15*, §  1, eff. Jan. 24, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2. Fraud, etc., in connection with sale or advertisement of merchandise or real estate as unlawful practice

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

## History

L. 1960, c. 39, p. 138, 2; Amended by L. 1967, c. 301, 2, eff. Feb. 15, 1968; L. 1971, c. 247, 1, eff. June 29, 1971; L. 1975, c. 294, 1, eff. Jan. 19, 1976.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.1. Operation simulating governmental agency as unlawful practice

It shall be an unlawful practice for any person to operate under a name or in a manner which wrongfully implies that such person is a branch of or associated with any department or agency of the Federal Government or of this State or any of its political subdivisions, or use any seal, insignia, envelope or other format which simulates that of any governmental department or agency.

## History

L. 1968, c. 448, 1, eff. Feb. 19, 1969.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

### N.J. Stat. § 56:8-2.2

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.2. Scheme to not sell item or service advertised

The advertisement of merchandise as part of a plan or scheme not to sell the item or service so advertised or not to sell the same at the advertised price is an unlawful practice and a violation of the act to which this act is a supplement.

## History

L. 1969, c. 131, 1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.3*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.3. Advertising plan involving notification of winning of prize and other requirements unlawful.

The notification to any person by any means, as a part of an advertising plan or scheme, that he has won a prize and requiring him to do any act, purchase any other item or submit to a sales promotion effort is an unlawful practice and a violation of the act to which this act is a supplement.

## History

L. 1969, c. 131, §  2.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-2.4

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.4. Advertisement of unassembled merchandise as assembled in picture or illustration; prohibition

It shall be an unlawful practice for a person to advertise merchandise for sale accompanied by a picture or illustration of the merchandise in an assembled condition when it is intended to be sold unassembled, unless the advertisement bears the notation that the merchandise is to be sold unassembled.

## History

L. 1973, c. 225, 1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.5*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.5. Sale, attempt to sell or offer for sale of merchandise without tag or label with selling price

It shall be an unlawful practice for any person to sell, attempt to sell or offer for sale any merchandise at retail unless the total selling price of such merchandise is plainly marked by a stamp, tag, label or sign either affixed to the merchandise or located at the point where the merchandise is offered for sale.

## History

L. 1973, c. 308, 1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-2.6

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18) > Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.6. Daily failure to tag as separate violation

For the purposes of this act, each day for which the total selling price is not marked in accordance with the provisions of this act for each group of identical merchandise shall constitute a separate violation of this act and the act of which this act is a supplement.

## History

L. 1973, c. 308, 2.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-2.7

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18) > Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.7. False representation unlawful practice.

It shall be an unlawful practice for any person to solicit funds or a contribution of any kind, or to sell or offer for sale any goods, wares, merchandise, or services, by telephone or otherwise, where it has been falsely represented by such person or where the consumer has been falsely led to believe that such person is soliciting by or on behalf of any charitable or nonprofit organization, or that a contribution to or purchase from such person shall substantially benefit persons with disabilities.

## History

L. 1975, c. 293, 1, eff. Jan. 9, 1976; amended *2017, c. 131*, § 216, eff. July 21, 2017.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-2.8

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

**LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)**

## § 56:8-2.8. "Going out of business sale"; time limits

It shall be an unlawful practice for any person to advertise merchandise for sale as a "going out of business sale" or in terms substantially similar to "going out of business sale" for a period in excess of 90 days or to advertise more than one such sale in 360 days. The 360-day period shall commence on the first day of such sale. For any person in violation of this act, each day in violation shall constitute an additional, separate and distinct violation.

## History

L. 1979, c. 103, 1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-2.9*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.9. Misrepresentation of identity of food in menus or advertisements of eating establishments

It shall be an unlawful practice for any person to misrepresent on any menu or other posted information, including advertisements, the identity of any food or food products to any of the patrons or customers of eating establishments including but not limited to restaurants, hotels, cafes, lunch counters or other places where food is regularly prepared and sold for consumption on or off the premises. This section shall not apply to any section or sections of a retail food or grocery store which do not provide facilities for on the premises consumption of food or food products.

## History

L. 1979, c. 347, 1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.10*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.10. Acts constituting misrepresentation of identity of food

The identity of said food or food products shall be deemed misrepresented if:

**a.**Its description is false or misleading in any particular;

**b.**Its description omits information which by its omission renders the description false or misleading in any particular;

**c.**It is served, sold, or distributed under the name of another food or food product;

**d.**It purports to be or is represented as a food or food product for which a definition of identity and standard of quality has been established by custom and usage unless it conforms to such definition and standard.

## History

L. 1979, c. 347, § 2.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.11*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.11. Violations; liability

Any person violating the provisions of the within act shall be liable for a refund of all moneys acquired by means of any practice declared herein to be unlawful.

## History

L. 1979, c. 347, 3.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

End of Document

## *N.J. Stat. § 56:8-2.12*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)***

## § 56:8-2.12. Recovery of refund in private action

The refund of moneys herein provided for may be recovered in a private action or by such persons authorized to initiate actions pursuant to P.L.1975, c. 376 (*C. 40:23-6.47* et seq.).

## History

L. 1979, c. 347, 4.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

---

**End of Document**

## *N.J. Stat. § 56:8-2.13*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.13. Cumulation of rights and remedies; construction of act

The rights, remedies and prohibitions accorded by the provisions of this act are hereby declared to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of this State, and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition.

## History

L. 1979, c. 347, 5.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.14*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.14. Short title  [Refund Policy Disclosure Act]

This act shall be known and may be cited as the "Refund Policy Disclosure Act."

## History

L. 1982, c. 29, §  1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.15*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)***

# § 56:8-2.15. Definitions

As used in this act:

**a.** "Merchandise" means any objects, wares, goods, commodities, or any other tangible items offered, directly or indirectly, to the public for sale.

**b.** "Proof of purchase" means a receipt, bill, credit card slip, or any other form of evidence which constitutes reasonable proof of purchase.

**c.** "Retail mercantile establishment" means any place of business where merchandise is exposed or offered for sale at retail to members of the consuming public.

# History

L. 1982, c. 29, 2.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.16*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18) > Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

# § 56:8-2.16. Posting of signs; locations

Every retail mercantile establishment shall conspicuously post its refund policy as to all merchandise on a sign in at least one of the following locations:

**a.**Attached to the item itself, or

**b.**Affixed to each cash register or point of sale, or

**c.**So situated as to be clearly visible to the buyer from the cash register, or

**d.**Posted at each store entrance used by the public.

# History

L. 1982, c. 29, 3.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.17*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.17. Signs; contents

Any sign required by section 3 of this act to be posted in retail mercantile establishments shall state whether or not it is a policy of such establishment to give refunds and, if so, under what conditions, including, but not limited to, whether a refund will be given:

**a.** On merchandise which has been advertised as "sale" merchandise or marked "as is" ;

**b.** On merchandise for which no proof of purchase exists;

**c.** At any time or not beyond a point in time specified; or

**d.** In cash, or as credit or store credit only.

## History

L. 1982, c. 29, 4.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.18*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18) > Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.18. Penalties; refunds or credits to buyers

A retail mercantile establishment violating any provision of this act shall be liable to the buyer, for up to 20 days from the date of purchase, for a cash refund or a credit, at the buyer's option, provided that the merchandise has not been used or damaged by the buyer.

## History

L. 1982, c. 29, 5.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.19*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.19. Posting of signs; exceptions

The provisions of section 3 shall not apply to retail mercantile establishments or departments that have a policy of providing, for a period of not less than 20 days after the date of purchase, a cash refund for a cash purchase or providing a cash refund or issuing a credit for a credit purchase, which credit is applied to the account on which the purchase was debited, in connection with the return of its unused and undamaged merchandise.

## History

L. 1982, c. 29, 6.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.20*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.20. Motor vehicle; perishables; custom merchandise; non-returnable merchandise; application of act

This act shall not apply to sales of motor vehicles, or perishables and incidentals to such perishables, or to custom ordered, custom finished merchandise, or merchandise not returnable by law.

## History

L. 1982, c. 29, 7.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.21*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18) > Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.21. Jurisdiction; penalties; cash refund; credit; damages

**a.** An individual action for a violation of this act may be brought in a municipal court in whose jurisdiction the sale was made.

**b.** In addition to the penalties provided for in section 5, a retail mercantile establishment that fails to comply with the requirements of this act and, in practice, does not have a policy as provided in section 6 and has refused to accept the return of the merchandise shall be liable to the consumer for:

**(1)** A cash refund or a credit, at the buyer's option, provided the merchandise has not been used or damaged, and

**(2)** Damages of not more than $200.00.

## History

L. 1982, c. 29, 8.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

End of Document

## *N.J. Stat. § 56:8-2.22*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.22. Copy of transaction or contract; provision to consumer

It shall be an unlawful practice for a person in connection with a sale of merchandise to require or request the consumer to sign any document as evidence or acknowledgment of the sales transaction, of the existence of the sales contract, or of the discharge by the person of any obligation to the consumer specified in or arising out of the transaction or contract, unless he shall at the same time provide the consumer with a full and accurate copy of the document so presented for signature but this section shall not be applicable to orders placed through the mail by the consumer for merchandise.

## History

L. 1982, c. 98, 1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-2.23*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.23. Disclosure of profit-making nature

It shall be an unlawful practice for any person, other than a charitable or nonprofit organization, engaged in the business of selling used goods, wares or merchandise for profit to solicit, by telephone, by the placement of collection boxes or otherwise, donations of used goods, wares or merchandise for resale for profit, without first disclosing to the person solicited the profit-making nature of the business, or if profits are to be shared with a charitable or nonprofit organization, the portion of profits which that organization will receive. For the purposes of this act, "engaged in the business of selling used goods, wares or merchandise" means anyone who conducts sales more than five times a year.

## History

L. 1985, c. 254, 1, eff. July 31, 1985.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

### *N.J. Stat. § 56:8-2.24*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.24. Repealed by L. *1998, c. 5*, §  2, eff. April 3, 1998

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-2.25*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

# § 56:8-2.25. Transaction of business under assumed name, misrepresented geographic origin, location

**a.** It shall be an unlawful practice for any person conducting or transacting business under an assumed name and filing a certificate pursuant to *R.S.56:1-2* to intentionally misrepresent that person's geographic origin or location or the geographic origin or location of any merchandise.

**b.** A person engaged in the business of advertising shall be immune from liability under this section for receiving, accepting or publishing any advertisement, irrespective of the medium or format, submitted or developed for any person conducting or transacting business under an assumed name.

## History

L. *1997, c. 346*, §  1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-2.26

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.26. Charging of discriminatory, unusual rates for towing, storage [Repealed]

## History

L. *1997, c. 387*, §  5, eff. Jan. 19, 1998; repealed by L. *2007, c. 193*, §  24, eff. Oct. 18, 2008.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-2.27*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.27. Sale of baby food, non-prescription drugs, cosmetics, certain; unlawful

It shall be an unlawful practice for any person to sell or offer to sell to the public:

**a.**any non-prescription drug, infant formula or baby food, which is subject to expiration dating requirements issued by the federal Food and Drug Administration, if the date of expiration has passed; and

**b.**any infant formula or baby food which is subject to expiration dating requirements issued by the federal Food and Drug Administration, any non-prescription drug, or any cosmetic as defined in subsection h. of *R.S.24:1-1*, unless that person presents, within five days of the request, a written record of the purchase of that product, which record or invoice shall specifically identify the product being sold by the product name, quantity purchased, that quantity being denoted by item, box, crate, pallet or otherwise, and date of purchase and shall contain the complete name or business name, address and phone number of the person from whom that product was purchased. The provisions of this subsection shall not apply to a transaction involving less than $50 of product between persons selling that product in the same general market area on the same day.

## History

L. *1998, c. 5*, §  1, eff. July 2, 1998.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.28*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.28. Short title  [Raincheck Policy Disclosure Act]

This act [*C.56:8-2.28* through *C.56:8-2.32*] shall be known and may be cited as the "Raincheck Policy Disclosure Act."

## History

L. *2006, c. 59*, §  1, eff. Mar. 1, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.29*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.29. Definitions relative to raincheck policy disclosure

As used in this act [*C.56:8-2.28* through *C.56:8-2.32*]:

"Advertised" means any attempt, other than by use of a price tag, catalogue or any offering for sale of a motor vehicle, to directly or indirectly induce the purchase or rental of merchandise at retail, appearing in any newspaper, magazine, periodical, circular, in-store or out-of-store sign or other written matter placed before the consuming public, or in any radio or television broadcast.

"Merchandise" means any objects, wares, merchandise, commodities, services or anything offered directly or indirectly to the public for sale or rental at retail.

"Raincheck" means a written statement issued by a retail mercantile establishment allowing the purchase of designated merchandise at a previously advertised price.

"Retail mercantile establishment" means any place of business where merchandise is exposed or offered for sale at retail to members of the consuming public.

## History

L. *2006, c. 59*, §  2, eff. Mar. 1, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.30*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.30. Posting of raincheck policy by retail mercantile establishment

Every retail mercantile establishment which issues rainchecks to consumers for the sale of advertised merchandise that is not available throughout the advertised period shall conspicuously post its raincheck policy on a sign in at least one of the following locations:

**a.** Affixed to a cash register or location of the point of sale;

**b.** So situated as to be clearly visible to the buyer;

**c.** Posted at each store entrance used by the public;

**d.** At the location where the merchandise was offered for sale;

**e.** In an advertisement for merchandise; or

**f.** Printed on the receipt of sale.

## History

L. *2006, c. 59*, §  3, eff. Mar. 1, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.31*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.31. Unlawful practices by retail mercantile establishment relative to rainchecks

It shall be an unlawful practice for any retail mercantile establishment which provides a raincheck for any advertised merchandise that is not available for immediate purchase to fail to:

**a.**Honor or satisfy that raincheck within 60 days of issuance, unless an extension of such time period is agreed to by the holder of the raincheck, provided that if after a good faith effort a retail mercantile establishment cannot procure for the holder of the raincheck the advertised merchandise within the 60-day period, the retail mercantile establishment may offer the holder of the raincheck a different item of merchandise of substantially the same kind, quality and price of the original advertised merchandise; and

**b.**For all merchandise with an advertised price greater than $15 per unit, give written or telephonic notice to the holder of the raincheck when the merchandise is available and inform the holder of the raincheck that the advertised merchandise will be held for a period of no less than 10 days from the date of notification or to the end of the 60-day period for which the raincheck is valid, whichever is longer; and

**c.**Offer a raincheck to all customers who are unable, due to the unavailability of the merchandise, to purchase the advertised merchandise during the period of time that the merchandise has been advertised as available for sale.

## History

L. *2006, c. 59*, §  4, eff. Mar. 1, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.32*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)***

## § 56:8-2.32. Regulations

The Director of the Division of Consumer Affairs in the Department of Law and Public Safety may promulgate regulations pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (*C.52:14B-1* et seq.) to effectuate the provisions of this act.

## History

L. *2006, c. 59*, §  5, eff. Mar. 1, 2007.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-2.33*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-2.33. Discrimination against cash-paying customers prohibited; violations, penalties; exceptions

**a.**A person selling or offering for sale goods or services at retail shall not require a buyer to pay using credit or to prohibit cash as payment in order to purchase the goods or services. A person selling or offering for sale goods or services at retail shall accept legal tender when offered by the buyer as payment.

**b.**A person in violation of subsection a. of this section shall be subject to a civil penalty of up to $2,500 for a first offense and up to $5,000 for a second offense, to be collected in a civil action by a summary proceeding under the "Penalty Enforcement Law of 1999," *P.L.1999, c.274* (*C.2A:58-10* et seq.). The Superior Court shall have jurisdiction of proceedings for the enforcement of the penalty provided by this section.

A third violation of subsection a. of this section is an unlawful practice under P.L.1960, c.39 (*C.56:8-1* et seq.), and for the purposes of this subsection shall be considered a first offense under P.L.1960, c.39 (*C.56:8-1* et seq.).

A fourth or subsequent violation of subsection a. of this section is an unlawful practice under P.L.1960, c.39 (*C.56:8-1* et seq.), and for the purposes of this subsection shall be considered a subsequent offense under P.L.1960, c.39 (*C.56:8-1* et seq.).

**c.**The provisions of this section shall not apply to:

**(1)**any person selling goods or services at an airport, provided that at least two persons selling food at each terminal within the airport accept cash as payment;

**(2)**any parking facility owned by a municipality, regardless of whether the facility is operated by the municipality, a parking authority, or an independent third party;

**(3)**any parking facility that accepts mobile payment, provided that the facility does not accept payment by any means other than mobile payment; and

**(4)**any company in the business of renting motor vehicles, provided that the company accepts a cashier's check or a certified check when offered by a buyer as payment.

**d.**As used in this section, "at retail" shall include any retail transaction conducted in person and exclude any telephone, mail, or Internet-based transaction.

## History

L. *2019, c. 50*, § 1, eff. Mar. 18, 2019.

N.J. Stat. § 56:8-2.33

Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-3*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-3. Investigation by attorney general; powers and duties

When it shall appear to the Attorney General that a person has engaged in, is engaging in, or is about to engage in any practice declared to be unlawful by this act, or when he believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in or is about to engage in, any such practice, he may:

**(a)**Require such person to file on such forms as are prescribed a statement or report in writing under oath or otherwise, as to all the facts and circumstances concerning the sale or advertisement of merchandise by such person, and such other data and information as he may deem necessary;

**(b)**Examine under oath any person in connection with the sale or advertisement of any merchandise;

**(c)**Examine any merchandise or sample thereof, record, book, document, account or paper as he may deem necessary; and

**(d)**Pursuant to an order of the Superior Court impound any record, book, document, account, paper, or sample of merchandise that is produced in accordance with this act, and retain the same in his possession until the completion of all proceedings in connection with which the same are produced.

## History

L. 1960, c. 39, p. 138, 3.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

*N.J. Stat. § 56:8-3.1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-3.1. Violations; penalty

Upon receiving evidence of any violation of the provisions of chapter 39 of the laws of 1960, the Attorney General, or his designee, is empowered to hold hearings upon said violation and upon finding the violation to have been committed, to assess a penalty against the person alleged to have committed such violation in such amount within the limits of chapter 39 of the laws of 1966 as the Attorney General deems proper under the circumstances. Any such amounts collected by the Attorney General shall be paid forthwith into the State Treasury for the general purposes of the State.

## History

L. 1967, c. 97, 1, eff. June 8, 1967; Amended by L. 1971, c. 247, 11, eff. June 29, 1971.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-4*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-4. Additional powers

To accomplish the objectives and to carry out the duties prescribed by this act, the Attorney General, in addition to other powers conferred upon him by this act, may issue subpoenas to any person, administer an oath or affirmation to any person, conduct hearings in aid of any investigation or inquiry, promulgate such rules and regulations, and prescribe such forms as may be necessary, which shall have the force of law.

## History

L. 1960, c. 39, p. 139, 4.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-5*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-5. Service of notice by attorney general

Service by the Attorney General of any notice requiring a person to file a statement or report, or of a subpoena upon any person, shall be made personally within this State, but if such cannot be obtained, substituted service therefor may be made in the following manner:

**(a)**Personal service thereof without this State; or

**(b)**The mailing thereof by registered mail to the last known place of business, residence or abode, within or without this State of such person for whom the same is intended; or

**(c)**As to any person other than a natural person, in accordance with the Rules Governing the Courts of the State of New Jersey pertaining to service of process, provided, however, that service shall be made by the Attorney General; or

**(d)**Such service as the Superior Court may direct in lieu of personal service within this State.

## History

L. 1960, c. 39, p. 139, 5.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-6*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-6. Failure or refusal to file statement or report or obey subpoena issued by attorney general; punishment

If any person shall fail or refuse to file any statement or report, or obey any subpoena issued by the Attorney General, the Attorney General may apply to the Superior Court and obtain an order:

**(a)**Adjudging such person in contempt of court;

**(b)**Granting injunctive relief without notice restraining the sale or advertisement of any merchandise by such persons;

**(c)**Vacating, annulling, or suspending the corporate charter of a corporation created by or under the laws of this State or revoking or suspending the certificate of authority to do business in this State of a foreign corporation or revoking or suspending any other licenses, permits or certificates issued pursuant to law to such person which are used to further the allegedly unlawful practice; and

**(d)**Granting such other relief as may be required; until the person files the statement or report, or obeys the subpoena.

## History

L. 1960, c. 39, p. 139, 6.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-7*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-7. Self-incrimination; exemption from prosecution or punishment

If any person shall refuse to testify or produce any book, paper or other document in any proceeding under this act for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him, convict him of a crime, or subject him to a penalty or forfeiture, and shall, notwithstanding, be directed to testify or to produce such book, paper or document, he shall comply with such direction.

A person who is entitled by law to, and does assert such privilege, and who complies with such direction shall not thereafter be prosecuted or subjected to any penalty or forfeiture in any criminal proceeding which arises out of and relates to the subject matter of the proceeding. No person so testifying shall be exempt from prosecution or punishment for perjury or false swearing committed by him in giving such testimony.

## History

L. 1960, c. 39, p. 140, 7.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

End of Document

## *N.J. Stat. § 56:8-8*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-8. Injunction against unlawful practices; appointment of receiver; additional penalties

Whenever it shall appear to the Attorney General that a person has engaged in, is engaging in or is about to engage in any practice declared to be unlawful by this act he may seek and obtain in a summary action in the Superior Court an injunction prohibiting such person from continuing such practices or engaging therein or doing any acts in furtherance thereof or an order appointing a receiver, or both. In addition to any other remedy authorized herein the court may enjoin an individual from managing or owning any business organization within this State, and from serving as an officer, director, trustee, member of any executive board or similar governing body, principal, manager, stockholder owning 10% or more of the aggregate outstanding capital stock of all classes of any corporation doing business in this State, vacate or annul the charter of a corporation created by or under the laws of this State, revoke the certificate of authority to do business in this State of a foreign corporation, and revoke any other licenses, permits or certificates issued pursuant to law to such person whenever such management, ownership, activity, charter authority license, permit or certificate have been or may be used to further such unlawful practice. The court may make such orders or judgments as may be necessary to prevent the use or employment by a person of any prohibited practices, or which may be necessary to restore to any person in interest any moneys or property, real or personal which may have been acquired by means of any practice herein declared to be unlawful.

## History

L. 1960, c. 39, p. 140, 8; Amended by L. 1971, c. 247, 2, eff. June 29, 1971.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-9*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

# § 56:8-9. Powers and duties of receiver

When a receiver is appointed by the court pursuant to this act, he shall have the power to sue for, collect, receive and take into his possession all the goods and chattels, rights and credits, moneys and effects, lands and tenements, books, records, documents, papers, choses in action, bills, notes and property of every description, derived by means of any practice declared to be illegal and prohibited by this act, including property with which such property has been mingled, if it cannot be identified in kind because of such commingling, and to sell, convey, and assign the same and hold and dispose of the proceeds thereof under the direction of the court. Any person who has suffered damages as a result of the use or employment of any unlawful practices and submits proof to the satisfaction of the court that he has in fact been damaged, may participate with general creditors in the distribution of the assets to the extent he has sustained out-of-pocket losses. In the case of a corporation, partnership or business entity the receiver shall settle the estate and distribute the assets under the direction of the court, and he shall have all the powers and duties conferred upon receivers by the provisions of Title 14, Corporations, General, so far as the provisions thereof are applicable. The court shall have jurisdiction of all questions arising in such proceedings and may make such orders and judgments therein as may be required.

# History

L. 1960, c. 39, p. 141, 9.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-10*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-10. Claims against persons acquiring money or property by unlawful practices

Subject to an order of the court terminating the business affairs of any person after receivership proceedings held pursuant to this act, the provisions of this act shall not bar any claim against any person who has acquired any moneys or property, real or personal, by means of any practice herein declared to be unlawful.

## History

L. 1960, c. 39, p. 142, 10.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-11*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)***

## § 56:8-11. Costs in actions or proceedings brought by attorney general

In any action or proceeding brought under the provisions of this act, the Attorney General shall be entitled to recover costs for the use of this State.

## History

L. 1960, c. 39, p. 142, 11.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-12*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)***

## § 56:8-12. Partial invalidity

If any provision of this law or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the law which can be given effect without the invalid provision or application, and to this end the provisions of this law are severable.

## History

L. 1960, c. 39, p. 142, 12.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-13*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-13. Penalties

Any person who violates any of the provisions of the act to which this act is a supplement shall, in addition to any other penalty provided by law, be liable to a penalty of not more than $10,000 for the first offense and not more than $20,000 for the second and each subsequent offense. The penalty shall be exclusive of and in addition to any moneys or property ordered to be paid or restored to any person in interest pursuant to section 2 of P.L. 1966, c. 39 (*C. 56:8-14*) or section 3 of P.L. 1971, c. 247 (*C. 56:8-15*).

## History

L. 1966, c. 39, § 1; amended 1971, c. 247, § 9; *1991, c. 332*; *1999, c. 298*, § 3, eff. June 20, 2000; *2001, c. 394*, § 10, eff. Apr. 8, 2002.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-14*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-14. Enforcement of penalty; process

The Superior Court and every municipal court shall have jurisdiction of proceedings for the collection and enforcement of a penalty imposed because of the violation, within the territorial jurisdiction of the court, of any provision of the act to which this act is a supplement. Except as otherwise provided in this act the penalty shall be collected and enforced in a summary proceeding pursuant to "the penalty enforcement law" (*N.J.S. 2A:58-1* et seq.). Process shall be either in the nature of a summons or warrant and shall issue in the name of the State, upon the complaint of the Attorney General or any other person.

In any action brought pursuant to this section to enforce any order of the Attorney General or his designee the court may, without regard to jurisdictional limitations, restore to any person in interest any moneys or property, real or personal, which have been acquired by any means declared to be unlawful under this act, except that the court shall restore to any senior citizen twice the amount or value, as the case may be, of any moneys or property, real or personal, which have been acquired by any means declared to be unlawful under P.L. 1960, c. 39 (*C. 56:8-1* et seq.).

In the event that any person found to have violated any provision of this act fails to pay a civil penalty assessed by the court, the court may issue, upon application by the Attorney General, a warrant for the arrest of such person for the purpose of bringing him before the court to satisfy the civil penalty imposed.

A person who fails to restore any moneys or property, real or personal, found to have been acquired unlawfully from a senior citizen shall be subject to punishment for criminal contempt pursuant to *N.J.S. 2C:29-9*, which is a crime of the fourth degree.

## History

L. 1966, c. 39, §  2; amended 1971, c. 247, §  10; *1991, c. 91*, §  526; *1999, c. 298*, §  4, eff. June 20, 2000.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-14.1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-14.1. Office of consumer affairs entitled to penalties, fines or fees

In any action in a court of appropriate jurisdiction initiated by the director of any certified county or municipal office of consumer affairs, the office of consumer affairs shall be entitled, if successful in the action, to such penalties, fines or fees as may be authorized pursuant to chapter 8 of Title 56 of the Revised Statutes and awarded by the court, and to the reasonable costs of any such action, including investigative and legal costs, as may be filed with and approved by the court. Such costs shall be in addition to the taxed costs authorized in successful proceedings under the Rules Governing the Courts of the State of New Jersey.

As used in this section, "court of appropriate jurisdiction" includes a municipal court in the municipality where the offense was committed or where the defendant may be found and a central municipal court in the county where the offense was committed or where the defendant may be found. However, the term shall not include a municipal court in a city of the first class if the Chief Justice of the Supreme Court approves a recommendation submitted by the assignment judge of the vicinage in which the court is located to exempt that court from such jurisdiction.

All moneys collected pursuant to this section shall be paid to the officer lawfully charged with the custody of the general funds of the county or municipality.

## History

L. 1981, c. 178, §  1; amended *1991, c. 149*, §  1; *2011, c. 181*, §  2, eff. Mar. 17, 2012.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-14.2*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-14.2. Definitions relative to certain deceptive consumer practices.

As used in *P.L.1999, c.129* (*C.56:8-14.2* et seq.):

"Fund" means the Consumer Fraud Education Fund created pursuant to section 5 of *P.L.1999, c.129* (*C.56:8-14.6*).

"Pecuniary injury" shall include, but not be limited to: loss or encumbrance of a primary residence, principal employment, or source of income; loss of property set aside for retirement or for personal or family care and maintenance; loss of payments received under a pension or retirement plan or a government benefits program; or assets essential to the health or welfare of the senior citizen or person with a disability.

"Person with a disability" means a natural person who has a physical disability, infirmity, malformation, or disfigurement which is caused by bodily injury, birth defect, or illness including epilepsy, and which shall include, but not be limited to, any degree of paralysis, amputation, lack of physical coordination, blindness or visual impairment, deafness or deaf-blindness or hearing impairment, inability to speak or speech impairment, or physical reliance on a service animal, wheelchair, or other remedial appliance or device, or from any mental, psychological, or developmental disability resulting from anatomical, psychological, physiological, or neurological conditions which prevents the normal exercise of any bodily or mental functions or is demonstrable, medically or psychologically, by accepted clinical or laboratory diagnostic techniques.

"Senior citizen" means a natural person 60 years of age or older.

## History

L. *1999, c. 129*, §  1, eff. June 25, 1999; amended *2001, c. 339*, eff. Jan. 5, 2002; *2017, c. 131*, § 217, eff. July 21, 2017.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 56:8-14.3*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-14.3. Additional penalties for violation of *C.56:8-1* et seq

**a.**In addition to any other penalty authorized by law, a person who violates the provisions of P.L.1960, c.39 (*C.56:8-1* et seq.) shall be subject to additional penalties as follows:

**(1)**A penalty of not more than $10,000 if the violation caused the victim of the violation pecuniary injury and the person knew or should have known that the victim is a senior citizen or a person with a disability; or

**(2)**A penalty of not more than $30,000 if the violation was part of a scheme, plan, or course of conduct directed at senior citizens or persons with disabilities in connection with sales or advertisements.

The requirement of actual or constructive knowledge is applicable to the additional penalty provided under paragraph (1) of this subsection only, and is not required to prove a violation of any other provision of P.L. 1960, c. 39 (*C.56:8-1* et seq.).

**b.**The civil penalties authorized and collected under subsection a. of this section shall be paid to the State Treasurer and credited to the Consumer Fraud Education Fund created pursuant to section 5 of *P.L.1999, c.129* (*C.56:8-14.6*).

## History

L. *1999, c. 129*, §  2, eff. June 25, 1999.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-14.4

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

**LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)**

## § 56:8-14.4. Restoration of money, property given priority

Restoration of money or property ordered pursuant to section 2 of P.L.1966, c.39 (*C.56:8-14*) or section 3 of P.L.1971, c.247 (*C.56:8-15*) shall be given priority over imposition of the additional civil penalties authorized under section 2 of *P.L.1999, c.129* (*C.56:8-14.3*).

## History

L. *1999, c. 129*, §  3, eff. June 25, 1999.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-14.5*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-14.5. Educational program about consumer protection laws, rights

The Director of the Division of Consumer Affairs in the Department of Law and Public Safety, in consultation with the Director of the Division of Aging Services in the Department of Human Services, the directors of the New Jersey Association of Area Agencies on Aging, and the New Jersey Association of County Offices for Disabled Persons, shall develop and implement an educational program to inform senior citizens and persons with disabilities about consumer protection laws and consumer rights, subject to funds made available pursuant to subsection b. of section 5 of *P.L.1999, c.129* (*C.56:8-14.6*) or any other source. Functions of the program may include:

**a.** The preparation of educational materials regarding consumer protection laws and consumer rights that are of particular interest to senior citizens and persons with disabilities and distribution of those materials to the appropriate State and county agencies for dissemination to senior citizens, persons with disabilities and the public; and

**b.** The underwriting of educational seminars and other forms of educational projects for the benefit of senior citizens and persons with disabilities.

## History

L. *1999, c. 129*, §  4, eff. June 25, 1999; amended *2012, c. 17*, §  432, eff. June 29, 2012.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-14.6*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

# § 56:8-14.6. Consumer Fraud Education Fund

**a.**There is established in the General Fund a special fund to be known as the Consumer Fraud Education Fund. The State Treasurer shall credit to the fund all moneys received by the State for penalties assessed pursuant to section 2 of *P.L.1999, c.129* (*C.56:8-14.3*). The fund shall be continuing and nonlapsing. The fund shall be administered by the State Treasurer, and any interest earned on moneys in the fund shall be credited to the fund.

**b.**The Division of Consumer Affairs may draw upon the fund to effectuate the purposes of section 4 of *P.L.1999, c.129* (*C.56:8-14.5*) and to pay reasonable and necessary administrative expenses incurred in implementing the provisions of this act to the extent that moneys are available.

# History

L. *1999, c. 129*, §  5, eff. June 25, 1999.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-14.7*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-14.7. Rules, regulations

The Director of the Division of Consumer Affairs shall, pursuant to the provisions of the "Administrative Procedure Act," P.L.1968, c.410 (*C.52:14B-1* et seq.), promulgate rules and regulations necessary to effectuate the provisions of this act.

## History

L. *1999, c. 129*, §  6, eff. June 25, 1999.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## N.J. Stat. § 56:8-15

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-15. Additional penalties

In addition to the assessment of civil penalties, the Attorney General or his designee may, after a hearing as provided in P.L. 1967, c. 97 (*C. 56:8-3.1*) and upon a finding of an unlawful practice under this act and the act hereby amended and supplemented, order that any moneys or property, real or personal, which have been acquired by means of such unlawful practice be restored to any person in interest, except that if any moneys or property, real or personal, have been acquired by means of an unlawful practice perpetrated against a senior citizen, the amount of moneys or property, real or personal, ordered restored shall be twice the amount acquired.

## History

L. 1971, c. 247, §  3; amended *1999, c. 298*, §  5, eff. June 20, 2000.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-16

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

**LexisNexis® New Jersey Annotated Statutes > Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18) > Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)**

# § 56:8-16. Remission of penalties

In assessing any penalty under this act and the act hereby amended and supplemented, the Attorney General or his designee may provide for the remission of all or any part of such penalty conditioned upon prompt compliance with the requirements thereof and any order entered thereunder.

# History

L. 1971, c. 247, 4, eff. June 29, 1971.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-17*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-17. Noncompliance; penalties

Upon the failure of any person to comply within 10 days after service of any order of the Attorney General or his designee directing payment of penalties or restoration of moneys or property, the Attorney General may issue a certificate to the Clerk of the Superior Court that such person is indebted to the State for the payment of such penalty and the moneys and property ordered restored. A copy of such certificate shall be served upon the person against whom the order was entered. Thereupon the clerk shall immediately enter upon his record of docketed judgments the name of the person so indebted, and of the State, a designation of the statute under which the penalty is imposed, the amount of the penalty imposed and the amount of moneys ordered restored, a listing of property ordered restored, and the date of the certification. Such entry shall have the same force and effect as the entry of a docketed judgment in the Superior Court. Such entry, however, shall be without prejudice to the right of appeal to the Appellate Division of the Superior Court from the final order of the Attorney General or his designee.

A person who fails to restore moneys or property found to have been acquired unlawfully from a senior citizen shall be subject to punishment for criminal contempt pursuant to *N.J.S. 2C:29-9*, which is a crime of the fourth degree.

## History

L. 1971, c. 247, §  5; amended *1999, c. 298*, §  6, eff. June 20, 2000.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-18

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)***

## § 56:8-18. Cease and desist order; violations; penalty

Where the Attorney General or his designee, after a hearing as provided in P.L.1967, c. 97, finds that an unlawful practice has been or may be committed, he may order the person committing such unlawful practice to cease and desist or refrain from committing said practice in the future. When it shall appear to the Attorney General that a person against whom a cease and desist order has been entered has violated said order, the Attorney General may initiate a summary proceeding in the Superior Court for the violation thereof. Any person found to have violated a cease and desist order shall pay to the State of New Jersey civil penalties in the amount of not more than $25,000.00 for each violation of said order. In the event that any person fails to pay a civil penalty assessed by the court for violation of a cease and desist order, the court assessing the unpaid penalty is authorized, upon application of the Attorney General, to grant any relief which may be obtained under any statute or court rule governing the collection and enforcement of penalties.

## History

L. 1971, c. 247, 6, eff. June 29, 1971.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## N.J. Stat. § 56:8-19

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-19. Action, counterclaim by injured person; recovery of damages, costs

Any person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act or the act hereby amended and supplemented may bring an action or assert a counterclaim therefor in any court of competent jurisdiction. In any action under this section the court shall, in addition to any other appropriate legal or equitable relief, award threefold the damages sustained by any person in interest. In all actions under this section, including those brought by the Attorney General, the court shall also award reasonable attorneys' fees, filing fees and reasonable costs of suit.

## History

L. 1971, c. 247, §  7; amended *1997, c. 359*.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-19.1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-19.1. Exemption from consumer fraud law, certain real estate licensees, circumstances

Notwithstanding any provision of P.L. 1960, c. 39 (*C. 56:8-1* et seq.) to the contrary, there shall be no right of recovery of punitive damages, attorney fees, or both, under section 7 of P.L. 1971, c. 247 (*C. 56:8-19*), against a real estate broker, broker-salesperson or salesperson licensed under *R.S. 45:15-1* et seq. for the communication of any false, misleading or deceptive information provided to the real estate broker, broker-salesperson or salesperson, by or on behalf of the seller of real estate located in New Jersey, if the real estate broker, broker-salesperson or salesperson demonstrates that he:

**a.**Had no actual knowledge of the false, misleading or deceptive character of the information; and

**b.**Made a reasonable and diligent inquiry to ascertain whether the information is of a false, misleading or deceptive character. For purposes of this section, communications by a real estate broker, broker-salesperson or salesperson which shall be deemed to satisfy the requirements of a "reasonable and diligent inquiry" include, but shall not be limited to, communications which disclose information:

**(1)**provided in a report or upon a representation by a person, licensed or certified by the State of New Jersey, including, but not limited to, an appraiser, home inspector, plumber or electrical contractor, or an unlicensed home inspector until December 30, 2005, of a particular physical condition pertaining to the real estate derived from inspection of the real estate by that person;

**(2)**provided in a report or upon a representation by any governmental official or employee, if the particular information of a physical condition is likely to be within the knowledge of that governmental official or employee; or

**(3)**that the real estate broker, broker-salesperson or salesperson obtained from the seller in a property condition disclosure statement, which form shall comply with regulations promulgated by the director in consultation with the New Jersey Real Estate Commission, provided that the real estate broker, broker-salesperson or salesperson informed the buyer that the seller is the source of the information and that, prior to making that communication to the buyer, the real estate broker, broker-salesperson or salesperson visually inspected the property with reasonable diligence to ascertain the accuracy of the information disclosed by the seller.

Nothing in this section shall be interpreted to affect the obligations of a real estate broker, broker-salesperson or salesperson pursuant to the "New Residential Construction Off-Site Conditions Disclosure Act," *P.L. 1995, c. 253* (*C. 46:3C-1* et seq.), or any other law or regulation.

## History

L. *1999, c. 76*, § 1, eff. April 30, 1999; amended *2004, c. 18*, § 2, eff. June 10, 2004.

N.J. Stat. § 56:8-19.1

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 56:8-20*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 56. Trade Names, Trade-Marks and Unfair Trade Practices (Chs. 1 — 18)  >  Chapter 8. Frauds, etc., in Sales or Advertisements or Merchandise (§§ 56:8-1 — 56:8-224)*

## § 56:8-20. Notice to attorney general of action or defense by injured person; intervention

Any party to an action asserting a claim, counterclaim or defense based upon violation of this act or the act hereby amended or supplemented shall mail a copy of the initial or responsive pleading containing the claim, counterclaim or defense to the Attorney General within 10 days after the filing of such pleading with the court. Upon application to the court wherein the matter is pending, the Attorney General shall be permitted to intervene or to appear in any status appropriate to the matter.

## History

L. 1971, c. 247, 8, eff. June 29, 1971.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

*N.J. Stat. § 45:17A-18*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-18. Short title

This act shall be known and may be cited as the "Charitable Registration and Investigation Act."

## History

L. *1994, c. 16*, §  1.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-19*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-19. Findings, declarations

The Legislature finds and declares that in order to protect the public from fraud and deceptive practices, it is essential that information concerning charitable fund raising activities of charitable organizations, professional fund raisers, commercial co-venturers and solicitors be readily available to the people of this State. The Legislature declares that information concerning the financial ends and means of charitable fund raising in this State must be more readily available to the citizens by whose generosity such funds are raised. The Legislature declares that, to accomplish these ends, it is necessary to require the registration of charitable organizations, professional fund raisers, and solicitors with the Attorney General, and that the Attorney General have the powers necessary to obtain and disseminate to the public data concerning fund raising practices of these persons.

## History

L. *1994, c. 16*, §  2.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

End of Document

*N.J. Stat. § 45:17A-20*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 45. Professions and Occupations (Subts. 1 — 2) > Subtitle 2. Other Regulated Occupations (Chs. 17 — 28) > Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-20. Definitions

As used in this act:

"Attorney General" means the Attorney General of the State of New Jersey or his designee.

"Charitable organization" means: (1) any person determined by the federal Internal Revenue Service to be a tax exempt organization pursuant to *section 501(c) (3) of the Internal Revenue Code of 1986*, 26 U.S.C. § *501(c) (3)*; or (2) any person who is, or holds himself out to be, established for any benevolent, philanthropic, humane, social welfare, public health, or other eleemosynary purpose, or for the benefit of law enforcement personnel, firefighters or other persons who protect the public safety, or any person who in any manner employs a charitable appeal as the basis of any solicitation, or an appeal which has a tendency to suggest there is a charitable purpose to any such solicitation.

"Charitable purpose" means: (1) any purpose described in *section 501(c) (3), of the Internal Revenue Code of 1986*, 26 U.S.C. § *501(c) (3)*; or (2) any benevolent, philanthropic, humane, social welfare, public health, or other eleemosynary objective, or an objective that benefits law enforcement personnel, firefighters, or other persons who protect the public safety.

"Charitable sales promotion" means an advertising or sales campaign, conducted by a commercial co-venturer, which represents that the purchase or use of goods or services offered by the commercial co-venturer will benefit a charitable organization or purpose.

"Commercial co-venturer" means any person, including, but not limited to, any assignee, subcontractor, independent contractor or successor in interest, who, for profit or other consideration is regularly and primarily engaged in trade or commerce other than in connection with the raising of funds or any other thing of value for a charitable organization, and who advertises that the purchase or use of his goods, services, entertainment or any other thing of value will benefit a charitable organization or charitable purpose.

"Contribution" means the conveyance, promise or pledge of money, credit, property, financial assistance or other thing of any kind or value in response to a solicitation. It does not include any of the following: bona fide fees, dues or assessments paid by members provided that membership is not conferred solely as consideration for making a contribution in response to a solicitation; moneys received pursuant to a governmental grant or contract; or, personal services rendered by a volunteer.

"Federated fund raising organization" means a federation of independent charitable organizations which have voluntarily joined together for purposes of raising and distributing money.

"Fund raising counsel" means any person, including, but not limited to, any assignee, subcontractor, independent contractor or successor in interest, who is retained by a charitable organization for a fixed fee or rate toplan, manage, advise, consult or prepare material for or with respect to the solicitation in this State of contributions for a charitable organization, but who does not solicit contributions or employ, procure or engage any compensated person to solicit contributions. A bona fide salaried officer, employee, or volunteer of a charitable organization shall not be deemed to be a fund raising counsel. No attorney, accountant or banker who renders professional services to a charitable organization or advises a person to

N.J. Stat. § 45:17A-20

make a charitable contribution during the course of rendering professional services to that person shall be deemed, as a result of the professional service or advice rendered, to be a fund raising counsel.

"Independent paid fund raiser" means any person, including, but not limited to, any assignee, subcontractor, independent contractor or successor in interest, who for compensation performs for or on behalf of a charitable organization any service in connection with which contributions are or will be solicited in this State by that compensated person or by any compensated person he employs, procures, or engages, directly or indirectly to solicit contributions. A bona fide salaried officer, employee, or volunteer of a charitable organization shall not be deemed to be an independent paid fund raiser. No attorney, accountant or banker who advises a person to make a charitable contribution during the course of rendering professional services to that person shall be deemed, as a result of that advice, to be an independent paid fund raiser.

"Local unit" means a charitable organization that is affiliated with a parent organization under terms specified in the parent organization's charter, articles of organization, agreement of association, instrument of trust, constitution or other organizational instrument or bylaws.

"Membership" means a relationship which entitles a person to the privileges, professional standing, honors or other direct benefit of the organization and either the right to vote or elect officers, or hold office in the organization. Membership shall not include any relationship granted solely upon making a contribution as a result of a solicitation.

"Parent organization" means a charitable organization which charters or affiliates local units under terms specified in the charitable organization's charter, articles of organization, agreement of association, instrument of trust, constitution or other organizational instrument or bylaws.

"Person" means an individual, corporation, association, partnership, trust, foundation or any other entity, however established within or without this State.

"Registrant" means any person who has filed a registration statement with the Attorney General required by this act.

"Registration statement" means an initial registration, renewal, financial report, or any other document or report required pursuant to section 6, 7, 8, 10 or 11 of this act to be filed with the Attorney General.

"Secretary of State" means the Secretary of State of the State of New Jersey.

"Solicitation" or "solicit" means the request, directly or indirectly, for money, credit, property, financial assistance, or other thing of any kind or value which will be used for a charitable purpose or benefit a charitable organization. Solicitation shall include, but not be limited to, the following methods of requesting or securing money, credit, property, financial assistance or other thing of value:

(1) Any oral or written request;

(2) The making of any announcement in the press, over the radio or television, by telephone, through the mail or any other media concerning an appeal or campaign by or for any charitable organization or purpose;

(3) The distribution, circulation, posting or publishing of any handbill, written advertisement or other publication which directly or by implication seeks to obtain a contribution;

(4) The offer of, attempt to sell, or sale of any advertising space, book, card, tag, coupon, device, magazine, membership, merchandise, subscription, flower, ticket, candy, cookies or other tangible item in connection with which any appeal is made for any charitable organization or purpose, or where the name of any charitable organization is used or referred to in any appeal as an inducement or reason for making any sale, or where any statement is made that the whole or any part of the proceeds from the sale will be used for any charitable purpose or benefit any charitable organization;

N.J. Stat. § 45:17A-20

**(5)** The use or employment of canisters, cards, receptacles or similar devices for the collection of money or other thing of value in connection with which any appeal is made for any charitable organization or purpose.

A solicitation shall take place whether or not the person making the solicitation receives any contribution, except that a charitable organization's use of its own name in any communication shall not alone be sufficient to constitute a solicitation.

"Solicitor" means any individual who attempts to solicit or solicits contributions for compensation. A bona fide salaried officer, employee, or volunteer of a charitable organization shall not be deemed to be a solicitor.

## History

L. *1994, c. 16*, § 3; *2005, c. 283*, § 1, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-21*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-21. Duties of Attorney General

The Attorney General shall:

**a.**Administer and enforce the provisions of this act;

**b.**Propose and adopt rules pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (*C. 52:14B-1* et seq.), to effectuate the purposes of this act;

**c.**Conduct hearings pursuant to the "Administrative Procedure Act," P.L.1968, c. 410 (*C. 52:14B-1* et seq.) including the authority to administer oaths to witnesses, and shall have the power to issue subpoenas for the compulsory attendance of witnesses and the production of pertinent documents, books, records, accounts, computer data, papers, or records;

**d.**Prosecute proceedings before any court of competent jurisdiction for the enforcement of the provisions of this act;

**e.**Keep a record of the names and addresses of all registered charitable organizations, fund raising counsels, independent paid fund raisers, and solicitors;

**f.**Prescribe the fees for all registration statements, and other filings required by this act and set all bonding amounts as necessary in accordance with the provisions of this act. All fees shall be prescribed pursuant to the "Administrative Procedure Act, "P.L.1968, c. 410 (*C. 52:14B-1* et seq.);

**g.**Publish and disseminate information concerning charities to the public;

**h.**Examine each contract, registration statement and supporting document, if any, and determine whether they satisfy the requirements of this act;

**i.**Perform any other functions and duties which may be necessary to carry out the provisions of this act.

# History

L. *1994, c. 16*, §  4.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 45:17A-22*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-22. Review of registration statement

If the Attorney General determines that the registration or contract requirements established by this act are not satisfied, the Attorney General shall notify the filing party or registrant within 10 business days of receipt of the registration or contract. If notification is not sent within 10 business days: (1) a registration statement is accepted; or (2) performance may begin on a contract. Within 10 business days after receipt of a notification that the requirements have not been satisfied, the charitable organization, fund raising counsel, independent paid fund raiser, commercial co-venturer or solicitor, as appropriate, may satisfy the requirements or request a hearing pursuant to the "Administrative Procedure Act," P.L.1968, c.410 (*C.52:14B-1* et seq.). Acceptance of a registration or performance of a contract pursuant to this section shall not foreclose the Attorney General from denying an application, enforcing the registration or contract requirements established by *P.L.1994, c.16* (*C.45:17A-18* et seq.) and the rules adopted pursuant thereto, or taking other appropriate action.

## History

L. *1994, c. 16*, §  5; *2005, c. 283*, §  2, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-23*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-23. Filing of registration statement, fees

**a.**A charitable organization, unless exempted from registration requirements pursuant to section 9 of this act, shall file a registration statement with the Attorney General on forms prescribed by the Attorney General.

**b.**It shall be unlawful for any charitable organization to solicit contributions or have contributions solicited in its behalf before the Attorney General has been given the opportunity to review the registration statement pursuant to section 5 of this act. A renewal statement must be filed annually within six months after the close of the charitable organization's fiscal year. For good cause shown, the Attorney General may extend the time for the annual filing of the renewal statement and financial report for a period not to exceed 180 days, during which time the previous registration shall remain in effect. The request for an extension shall be in writing and received by the Attorney General before the filing deadline.

**c.**All registration statements shall be signed by two authorized officers, including the chief fiscal officer of the organization, who shall certify that information contained in the registration statements is correct.

**d.**The Attorney General shall prescribe all fees for the filing of all registration statements according to the provisions of this act. The fees for the filing of registration statements by charitable organizations may be graduated based upon the amount of contributions received during the previous fiscal year. A parent organization filing on behalf of one or more local units shall pay a single annual registration fee for itself and a fee for each local unit included in the registration statement.

## History

L. *1994, c. 16*, §  6.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-24*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-24. Long form registration statement

**a.** Every charitable organization operating or soliciting within this State, except for those provided for in section 8 of this act or exempt pursuant to section 9 of this act, shall file a long form registration statement with the Attorney General.

**b.** The long form shall contain the following:

> **(1)** The name of the organization and any other name or names under which it intends to solicit contributions and the purposes for which it was organized;

> **(2)** The name, street address and telephone number of each officer, director and trustee and each principal salaried executive staff employee and whether the person has been adjudged liable in an administrative or civil action, or convicted in a criminal action, involving theft, fraud or deceptive business practices. For the purposes of this paragraph:

>> **(a)** a plea of guilty, non vult, nolo contendere or any similar disposition of alleged criminal activity shall be deemed a conviction;

>> **(b)** "each principal salaried executive staff employee" shall be limited to no more than the five most highly compensated employees in the organization; and

>> **(c)** a judgment of liability in an administrative or civil action shall include, but not be limited to, any finding or admission that the officer, director, trustee or principal salaried executive staff employee engaged in an unlawful practice or practices related to the solicitation of contributions or the administration of charitable assets, regardless of whether that finding was made in the context of an injunction, a proceeding resulting in the denial, suspension or revocation of an organization's registration, consented to in an assurance of voluntary compliance or any similar order or legal agreement with any state or federal agency.

> **(3)** A copy of the most recent Internal Revenue Service Form 990 and Schedule A (990) for every registrant if the organization filed these forms;

> **(4)** A clear description of the specific programs and charitable purpose for which contributions will be used and a statement whether such programs are planned or are in existence;

> **(5)** A statement disclosing pertinent information concerning whether any of the organization's officers, directors, trustees or principal salaried executive staff employees as defined in subparagraph (b) of paragraph (2) of subsection b. of this section:

>> **(a)** Are related by blood, marriage or adoption to each other or to any officers, agents or employees of any fund raising counsel or independent paid fund raiser under contract to the organization, or are related by blood, marriage or adoption to any chief executive employee, any other employee of the organization with a direct financial interest in the transaction, or any partner, proprietor, director, officer, trustee, or to any shareholder of the organization with more than a two percent interest of

N.J. Stat. § 45:17A-24

any supplier or vendor providing goods or services to the organization and, if so, the name and business and home address and telephone number of each related party; or

**(b)**Have a financial interest in any activity engaged in by a fund raising counsel or independent paid fund raiser under contract to the organization or any supplier or vendor providing goods or services to the organization and, if so, the name and business address and telephone number of each interested party.

**(6)**The amount of any grant or financial assistance from any agency of government in its preceding fiscal year;

**(7)**A statement setting forth the place where and the date when the organization was legally established and the form of the organization;

**(8)**The principal street address and telephone number of the organization and the address and telephone number of each office in this State. If the organization does not maintain an office in this State, the name and address of the individual having custody of its financial records pertaining to operations or solicitations in this State shall be disclosed;

**(9)**The name, street address and telephone number of each affiliate which shares in the contributions or other revenue raised in this State;

**(10)**The date when the organization's fiscal year ends;

**(11)**A statement whether:

**(a)**The organization is authorized by any other state to solicit contributions and, if so, a listing of the states in which authorization has been obtained;

**(b)**The organization is or has ever been enjoined in any jurisdiction from soliciting contributions or has been found to have engaged in unlawful practices in the solicitation of contributions or the administration of charitable assets;

**(c)**The organization's registration has been denied, suspended or revoked by any jurisdiction, together with the reasons for that denial, suspension or revocation; and

**(d)**The organization has voluntarily entered into an assurance of voluntary compliance agreement or any similar order or legal agreement with any jurisdiction or federal agency or officer;

**(12)**Whether the organization intends to solicit contributions from the general public; and

**(13)**Any other information as may be prescribed by rules adopted by the Attorney General. In prescribing the requirements of the long form, the Attorney General shall permit a charitable organization to incorporate by reference any information reported by the organization on its Service Form 990 and Schedule A (990).

**c.**With initial registration only, every charitable organization required to file a long form registration shall also file a copy of the organization's charter, articles of organization, agreement of association, instrument of trust, constitution or other organizational instrument and bylaws, and a statement setting forth the organization's tax exempt status with copies of federal or state tax exemption determination or exemption ruling letters; provided that any changes in the accuracy of this information shall be reported to the Attorney General pursuant to subsection e. of section 14 of this act.

**d.**

**(1)**Every charitable organization required to file a long form registration shall file an annual financial report with the Attorney General. The annual financial report shall include: a balance sheet; a statement of support revenue, expenses and changes in fund balance; a statement of functional expenses at least divided into program, management, general, and fund raising; and such other information as the Attorney General shall by rule require.

N.J. Stat. § 45:17A-24

**(2)** The annual financial report of every charitable organization which received gross revenue in excess of $250,000, or any greater amount that the Attorney General may prescribe by regulation during its most recently completed fiscal year shall be accompanied by: (a) a financial statement prepared in accordance with generally accepted accounting principles or other comprehensive basis of accounting approved for use by the Attorney General by regulation which has been audited in accordance with generally accepted auditing standards by an independent certified public accountant; and (b) any management letters prepared by the auditor in connection with the audit commenting on the internal accounting controls or management practices of the organization.

The annual financial reports of all organizations receiving more than $25,000 but less than $250,000, or any greater amount that the Attorney General may prescribe by regulation shall be certified by the organization's president or other authorized officer of the organization's governing board and at the request of the Attorney General, the organization shall submit: (a) a financial statement prepared in accordance with generally accepted accounting principles or other comprehensive basis of accounting approved for use by the Attorney General by regulation which has been audited in accordance with generally accepted auditing standards by an independent certified public accountant; and (b) any management letters prepared by the auditor in connection with the audit commenting on the internal accounting controls or management practices of the organization.

**(3)** The Attorney General may accept a copy of a current financial report previously prepared by a charitable organization for another state agency or officer in compliance with the laws of that state, provided that the report filed with the other state agency or officer shall be substantially similar in content to the report required by this subsection.

**(4)** An independent member agency of a federated fund raising organization shall independently comply with the provisions of this subsection.

**e.** In order to register its qualified local units pursuant to subsection d. of section 9 of this act, a parent organization registered pursuant to this section shall include with its initial registration and annual renewal statement a separate statement that provides the following:

**(1)** The name, principal street address, and phone number of all local units within this State that it is registering;

**(2)** The amount of gross contributions received by each such unit and the purpose or purposes for which these funds were raised in the preceding fiscal year; and

**(3)** A statement asserting that each such local unit has provided the parent organization with a written statement reporting the information included on its behalf and asserting that the local unit meets all of the requirements of subsection d. of section 9 of this act.

**f.** Any management letters prepared by the auditor in connection with the audit commenting on the internal accounting controls or management practices of the organization submitted pursuant to paragraph (2) of subsection d. of this section shall not be considered a public record under P.L. 1963, c. 73 (*C. 47:1A-1* et seq.) or *P.L. 2001, c. 404* (*C. 47:1A-5* et al.), shall not be made available for public inspection nor used for a purpose inconsistent with *P.L. 1994, c. 16* (*C. 45:17A-18* et seq.), and shall be removed from the record in the custody of the Attorney General at such time that such information is no longer necessary for the enforcement of that act. The records required pursuant to this section shall be maintained for a period of at least three years after the end of the period of time to which they relate.

# History

L. *1994, c. 16*, §  7; *2005, c. 283*, §  3, eff. July 8, 2006.

N.J. Stat. § 45:17A-24

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-25*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-25. Short form registration

**a.**The following charitable organizations shall be required to file a short form registration on forms prescribed by the Attorney General:

**(1)**Charitable organizations or organizations engaging in a charitable fund raising campaign which do not receive gross contributions in excess of $25,000 during a fiscal year, if all of their functions including fund raising activities are carried on by volunteers, members, officers or persons who are not compensated for soliciting contributions; except that, if the gross contributions, whether or not all is received by any charitable organization during any fiscal year, are in excess of $25,000 it shall, within 30 days after the date on which it shall have received the contributions, register with and report to the Attorney General as required by section 7 of this act;

**(2)**Fraternal, patriotic, social or alumni organizations, historical societies, and similar organizations organized under the provisions of Title 15 of the Revised Statutes or Title 15A of the New Jersey Statutes, when solicitation of contributions is confined to their membership and solicitation is performed by members of that organization;

**(3)**Persons requesting any contributions for the relief of any individual, specified by name at the time of the solicitation, if all of the contributions collected, without any deductions whatsoever, are turned over to the named beneficiary;

**(4)**Any local post, camp, chapter or similarly designated element, or a county unit of that element, of a bona fide veterans' organization which issues charters to the local elements throughout this State, or to any veterans' organization chartered under federal law or to any service foundation of such an organization recognized in its bylaws.

**b.**The short form shall contain the following:

**(1)**Name and street address of the organization;

**(2)**The name of any independent paid fund raiser, fund raising counsel or commercial co-venturer the charitable organization has engaged;

**(3)**The purpose for which the charitable organization is organized;

**(4)**The purposes for which the funds are raised;

**(5)**The tax status of the charitable organization;

**(6)**The reason the organization is eligible to file a short form registration;

**(7)**A copy of the organization's most recent Internal Revenue Service Form 990 and Schedule (A) 990 if the organization filed these forms;

**(8)**The name, street address and telephone number of each officer, director and trustee and each principal salaried executive staff employee and whether the person has been adjudged liable in an

N.J. Stat. § 45:17A-25

administrative or civil action, or convicted in a criminal action, involving theft, fraud or deceptive business practices. For the purposes of this paragraph:

> **(a)**a plea of guilty, non vult, nolo contendere or any similar disposition of alleged criminal activity shall be deemed a conviction;

> **(b)**"each principal salaried executive staff employee" shall be limited to no more than the five most highly compensated employees in the organization; and

> **(c)**a judgment of liability in an administrative or civil action shall include, but not be limited to, any finding or admission that the officer, director, trustee or principal salaried executive staff employee engaged in an unlawful practice or practices related to the solicitation of contributions or the administration of charitable assets, regardless of whether that finding was made in the context of an injunction, a proceeding resulting in the denial, suspension or revocation of an organization's registration, consented to in an assurance of voluntary compliance or any similar order or legal agreement with any state or federal agency.

**(9)**A statement whether:

> **(a)**The organization is authorized by any other state to solicit contributions and, if so, a listing of the states in which authorization has been obtained;

> **(b)**The organization is or has ever been enjoined in any jurisdiction from soliciting contributions or has been found to have engaged in unlawful practices in the solicitation of contributions or the administration of charitable assets;

> **(c)**The organization's registration has been denied, suspended or revoked by any jurisdiction, together with the reasons for that denial, suspension or revocation; and

> **(d)**The organization has voluntarily entered into an assurance of voluntary compliance agreement or any similar order or legal agreement with any jurisdiction or federal agency or officer; and

**(10)**Any other information as may be prescribed by rules adopted by the Attorney General.

**c.**In order to register its qualified local units pursuant to subsection d. of section 9 of this act, a parent organization registered pursuant to this section shall include with its initial registration, a copy of the parent organization's charter, articles of organization, agreement of association, instrument of trust, constitution or other organizational instrument and bylaws, and shall include with its initial registration and annual renewal statement a separate statement that provides the following:

> **(1)**The name, principal street address, and phone number of all local units within this State that it is registering;

> **(2)**The amount of gross contributions received by each such unit and the purpose or purposes for which these funds were raised in the preceding fiscal year;

> **(3)**A statement asserting that each such local unit has provided the parent organization with a written statement reporting the information included on its behalf and asserting that the local unit meets all of the requirements of subsection d. of section 9 of this act.

**d.**Nothing in subsection c. of this section shall be construed to require a parent organization to register any or all of its local units.

# History

L. *1994, c. 16*, §  8; *2005, c. 283*, §  4, eff. July 8, 2006.

N.J. Stat. § 45:17A-25

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

*N.J. Stat. § 45:17A-26*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-26. Exemptions from registration requirements

**a.**The registration requirements of this act shall not apply to any religious corporation, trust, foundation, association or organization incorporated under the provisions of Title 15 or 16 of the Revised Statutes or Title 15A of the New Jersey Statutes or established for religious purposes. Any agency or organization incorporated or established for charitable purposes and engaged in effectuating one or more charitable purposes, which is affiliated with, operated by, or supervised or controlled by a corporation, trust, foundation, association, or organization incorporated or established for religious purposes, or any other religious agency or organization shall also be exempt.

**b.**The registration requirements of this act shall not apply to any educational institution, the curriculums of which in whole or in part are registered or approved by the State Department of Education or the New Jersey Commission on Higher Education, either directly or by acceptance of accreditation by an accredited body recognized by these departments; an educational institution confining its solicitation of contributions to its student body, alumni, faculty and trustees, and their families; or a library registered by the State Department of Education, provided that the annual financial report of that institution or library shall be filed with the State Department of Education where it shall be open for public inspection.

**c.**The registration requirements of *P.L.1994, c.16* (*C.45:17A-18* et seq.) shall not apply to any charitable organization or organizations engaging in a charitable fund raising campaign which do not receive gross contributions in excess of $10,000 during a fiscal year, if all of its functions, including fund raising activities, are carried on by volunteers, members, officers or persons who are not compensated for soliciting contributions, except that if the gross contributions, whether or not all is received by any charitable organization during any fiscal year, are in excess of $10,000 the charitable organization shall, within 30 days after the date on which it shall have received the contributions, register with and report to the Attorney General as required by section 7 of *P.L.1994, c.16* (*C.45:17A-24*);

**d.**A charitable organization that meets all of the following requirements shall be considered registered as required by this act:

    **(1)**The charitable organization is a local unit of a parent organization which is registered pursuant to this act;

    **(2)**The parent organization has provided all information concerning the local unit required by subsection e. of section 7 or subsection c. of section 8 of this act;

    **(3)**All solicitations made by the local unit are made by members of the local unit or volunteers;

    **(4)**The local unit does not employ a fund raising counsel or independent paid fund raiser or utilize paid staff in preparation of materials or records concerning or related to the solicitations; and

    **(5)**

        **(a)**The local unit does not receive gross contributions in excess of $25,000 during the fiscal year; or

N.J. Stat. § 45:17A-26

**(b)**The local unit is an organization that limits membership to persons who are or formerly were employed as officers statutorily authorized to enforce the criminal laws of this State.

**e.**Nothing in subsection d. of this section shall be construed to require a parent organization to register any or all of its local units.

## History

L. *1994, c. 16*, §  9; *2005, c. 283*, §  5, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-27*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-27. Registration of fund raising counsel, independent paid fund raiser

**a.**It shall be unlawful for any person to act as a fund raising counsel or independent paid fund raiser unless registered annually with the Attorney General. Registration statements shall be on forms prescribed by the Attorney General. A registration statement shall be signed and sworn to by the principal officer of the fund raising counsel or independent paid fund raiser and shall contain information as prescribed by rules adopted by the Attorney General.

**b.**The registration statements shall be accompanied by a fee prescribed pursuant to the provisions of this act, except that a fund raising counsel or independent paid fund raiser which is a partnership or corporation which registers shall pay a single fee. Each registration shall expire on June 30.

**c.**The Attorney General shall examine the initial registration statement and supporting documents filed by a fund raising counsel or independent paid fund raiser pursuant to section 5 of this act.

**d.**The relationship between a charitable organization and a fund raising counsel or independent paid fund raiser shall be set forth in a written contract. The relationship between a fund raising counsel or independent paid fund raiser and any other fund raising counsel or independent paid fund raiser shall be set forth in a written contract. The fund raising counsel or independent paid fund raiser shall file a copy of all such contracts with the Attorney General at least 10 business days prior to the performance by the fund raising counsel or independent paid fund raiser of any service within this State. It shall be unlawful for any solicitation pursuant to any contract to begin before the Attorney General has reviewed the contract pursuant to section 5 of this act. All such contracts shall be signed by two authorized officials of the charitable organization, one of whom must be a member of the organization's governing body, and the authorized contracting officer for the fund raising counsel or independent paid fund raiser. Performance of any contract filed for review shall not foreclose the Attorney General from enforcing the contract requirements established by *P.L.1994, c.16* (*C.45:17A-18* et seq.) and the rules adopted pursuant thereto or taking other appropriate action. For the purposes of this subsection, the term "relationship" shall include, but not be limited to, any contract, agreement, assignment or arrangement or any other obligation relating to the solicitation of contributions.

**e.**All contracts for a fund raising counsel or independent paid fund raiser either of whom at any time has or intends to have custody, control, possession or access to a charitable organization's solicited contributions, shall contain the following:

    **(1)**A statement of the respective obligations of the fund raising counsel, the independent paid fund raiser, and the charitable organization;

    **(2)**A clear statement of the fees or rate which will be paid to the fund raising counsel or independent paid fund raiser;

    **(3)**The projected commencement and termination dates of the solicitation campaign;

N.J. Stat. § 45:17A-27

**(4)**A statement as to whether the fund raising counsel or independent paid fund raiser will have custody, control or access to contributions;

**(5)**A statement as to the guaranteed minimum percentage of the gross receipts from contributions which will be remitted to the charitable organization, if any, or if the solicitation involves the sale of goods, services or tickets to a fund raising event, the percentage of the purchase price which will be remitted to the charitable organization, if any. Any stated percentage shall exclude any amount which the charitable organization is to pay as fund raising costs;

**(6)**A statement of the percentage of the gross revenue from which the independent paid fund raiser will be compensated and the fixed fee or rate at which the fund raising counsel will be compensated. If the compensation of the independent paid fund raiser is not contingent upon the number of contributions or the amount of revenue received, its compensation shall be expressed as a reasonable estimate of the percentage of the gross revenue, and the contract shall clearly disclose the assumptions upon which the estimate is based. If the compensation of the fund raising counsel is calculated on the basis of a rate and time, the statement shall include a reasonable estimate of the total fee and the contract shall clearly disclose the assumptions upon which the estimate is based. With respect to any such contract, the stated assumptions shall be based upon all of the relevant facts known to the fund raising counsel or independent paid fund raiser regarding the solicitation to be conducted by the independent paid fund raiser;

**(7)**The bank and branch where all moneys will be deposited, each account number and, for each account, all authorized signatories for withdrawals; and

**(8)**Any other information as may be prescribed by the Attorney General.

**f.**A fund raising counsel or independent paid fund raiser, either of whom at any time has or intends to have custody, control, possession or access to a charitable organization's solicited contributions, shall, if requested by the Attorney General, make available the following information:

**(1)**Each location and telephone number from which the solicitation is conducted;

**(2)**The name, home address and telephone number of each person responsible for directing and supervising the conduct of the campaign and whether the person has been adjudged liable in an administrative or civil action or convicted in a criminal action, involving theft, fraud or deceptive business practices. For the purpose of this paragraph:

**(a)**a plea of guilty, non vult, nolo contendere or any similar disposition of alleged criminal activity shall be deemed a conviction; and

**(b)**a judgment of liability in an administrative or civil action shall include, but not be limited to, any finding or admission that the person responsible for directing and supervising the conduct of the campaign engaged in an unlawful practice or practices related to the solicitation of contributions or the administration of charitable assets, regardless of whether that finding was made in the context of an injunction, a proceeding resulting in the denial, suspension or revocation of an organization's registration, consented to in an assurance of voluntary compliance or any similar order or legal agreement with any state or federal agency; and

**(3)**A statement of the charitable purpose for which the solicitation campaign is being conducted.

**g.**If either a fund raising counsel or independent paid fund raiser at any time has or intends to have custody, control, possession or access to a charitable organization's solicited contributions, that fund raising counsel or independent paid fund raiser shall:

**(1)**At the time of making application for registration, file with the Attorney General a bond in which it shall be the principal obligor, which shall for the initial application be in the sum of $20,000 and thereafter shall be an amount prescribed by a rule adopted by the Attorney General pursuant to subsection f. of section 4 of this act. The bond shall provide for one or more sureties whose liability in the aggregate shall at least equal that sum. The fund raising counsel or independent paid fund raiser

shall maintain the bond in effect during the entire period of registration. The bond shall be payable to the Attorney General for the benefit of any person who may have a cause of action against the principal obligor of the bond for any violation of this act or for the purpose of satisfying any assessment against the principal obligor of the bond for any such violation;

**(2)**Deposit each contribution collected by the fund raising counsel or independent paid fund raiser, in its entirety and within five days of its receipt, in an account at a bank or other federally insured financial institution. The account shall be in the name of the charitable organization with whom the fund raising counsel or independent paid fund raiser has contracted and the charitable organization shall have sole benefit and control of the account and all withdrawals;

**(3)**Within 40 days after a solicitation campaign has been completed, or in the case of a campaign lasting more than 12 months, within 40 days of the end of the charitable organization's fiscal year, file with the Attorney General a financial report for the campaign on such forms as the Attorney General may prescribe. Those forms shall include, but not be limited to, gross revenues, an itemization of all expenses incurred and the bank and branch where all moneys are deposited. This report shall be signed and sworn to by two authorized officials, one from the charitable organization and one from the fund raising counsel or independent paid fund raiser; and

**(4)**Maintain a copy of each advertisement, publication, solicitation or other material used as part of the charitable sales promotion to directly or indirectly induce a contribution.

## History

L. *1994, c. 16*, § 10; *2005, c. 283*, § 6, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-28*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-28. Registration of solicitors

**a.**It shall be unlawful for any person to act as a solicitor of an independent paid fund raiser required to register pursuant to this act unless, prior to that person acting as a solicitor of the independent paid fund raiser, the independent paid fund raiser files registration information including the name, street address, telephone number, and any other information as may be prescribed by the Attorney General, of any such solicitor and files such registration information for that solicitor annually thereafter. Registration statements shall be on forms prescribed by the Attorney General and accompanied by a prescribed fee. The Attorney General shall review the statement pursuant to section 5 of this act and prescribe the fees pursuant to subsection f. of section 4 of this act.

**b.**It shall be unlawful for any independent paid fund raiser to engage a solicitor to solicit charitable contributions unless the independent paid fund raiser files the solicitor's registration information with the Attorney General pursuant to this section.

## History

L. *1994, c. 16*, §  11; *2005, c. 283*, §  7, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 45:17A-29*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-29. Written contract from commercial co-venturer

**a.**Every charitable organization which permits a charitable sales promotion to be conducted on its behalf shall obtain a written contract from the commercial co-venturer and shall file a copy of the agreement with the Attorney General at least 10 business days prior to the initiation of that charitable sales promotion. All parties to the contract shall be subject to the provisions of *P.L.1994, c.16* (*C.45:17A-18* et seq.) and any rules adopted pursuant thereto. Every contract shall contain a provision clearly and conspicuously stating that the parties are subject to this act and any rules adopted pursuant thereto.

**b.**A charitable organization shall file in writing on forms prescribed by the Attorney General the following information at the conclusion of the charitable sales promotion:

> **(1)**A certification from an officer or principal of the commercial co-venturer attesting to the gross amount of income received by the commercial co-venturer attributable to the charitable sales promotion, solicitation or venture undertaken;

> **(2)**The amount of money or other contribution remitted to the organization covering each event or portion of an extended charitable sales promotion;

> **(3)**A copy of each advertisement, publication, solicitation or other material used as part of the charitable sales promotion to directly or indirectly induce a contribution; and

> **(4)**Any other information as may be required by rules adopted by the Attorney General.

**c.**All filings pursuant to this section shall be accompanied by a fee prescribed pursuant to the provisions of this act.

**d.**The commercial co-venturer shall disclose in each advertisement for the charitable sales promotion the dollar amount or percent per unit of goods or services purchased or used that will benefit the charitable organization or purpose. If the actual dollar amount or percent cannot reasonably be determined prior to the final date of the charitable sales promotion, the commercial co-venturer shall disclose an estimated dollar amount or percent. Any such estimate shall be reasonable and shall be based upon all of the relevant facts known to the commercial co-venturer and the charitable organization regarding the charitable sales promotion.

## History

L. *1994, c. 16*, §  12; *2005, c. 283*, §  8, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

---

**End of Document**

## *N.J. Stat. § 45:17A-30*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-30. Disclosure of information prior to solicitation

**a.**Prior to soliciting a contribution, either orally or by written request, except for any in-person solicitation, any independent paid fund raiser, commercial co-venturer, solicitor, or charitable organization shall clearly and conspicuously disclose any information as prescribed by the rules adopted by the Attorney General.

**b.**In the case of any solicitation campaign conducted orally, whether by telephone or otherwise, except for any in-person solicitation, a written confirmation or receipt or written reminder shall, upon request of the contributor, be sent and shall include a clear and conspicuous disclosure of any information as prescribed by the rules adopted by the Attorney General.

**c.**Except as otherwise provided in section 14 of this act, registration statements, reports, notices, contracts or agreements between charitable organizations and fund raising counsels or independent paid fund raisers and commercial co-venturers and all other documents and information required to be filed under this act with the Attorney General are public records and shall be open to the general public at such time and under such conditions as the Attorney General may prescribe.

**d.**In addition to all other requirements imposed by this act, a charitable organization that limits its membership to persons who are or formerly were employed as officers statutorily authorized to enforce the criminal laws of this State or that is a parent organization that includes local units that so limit membership shall:

   **(1)**At least 10 days prior to initiating any solicitation campaign involving multiple solicitations, give written notice describing the nature, purpose and the proposed dates and location of the solicitations to the Attorney General and the county prosecutor of any county in which the solicitations will be made, unless the organization limits its membership to persons who are or were employed by the State, or is a parent organization with local units in more than one county, in which case notice shall be given to the Attorney General who shall notify the appropriate county prosecutors;

   **(2)**Upon request, make any records required by this act available for inspection or provide an audited financial statement of financial records concerning the organization's fund raising activities to the Attorney General.

**e.**In addition to all other requirements imposed by *P.L.1994, c.16* (*C.45:17A-18* et seq.), any charitable organization that is or holds itself out to be soliciting contributions through the use of any name, symbol or statement which implies or that would lead a reasonable person to believe that the charitable organization is in any way affiliated with, related to, recognized by, or organized for the benefit of emergency service employees, officers statutorily authorized to enforce the criminal laws of this State or a governmental agency shall disclose to the potential contributor the nature of the affiliation, relationship, recognition or organization, if any, or shall expressly state that no affiliation, relationship, recognition or organization exists between the charitable organization and emergency service employees, officers statutorily authorized to enforce the criminal laws of this State or governmental agency, as the case may be.

# History

N.J. Stat. § 45:17A-30

L. *1994, c. 16*, § 13; *2005, c. 283*, § 9, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

*N.J. Stat. § 45:17A-30.1*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-30.1. Caller identification blocking technology, use by solicitors, prohibited

Any person soliciting contributions shall not be permitted to use technology that blocks caller identification telephone systems used by any person in this State.

## History

L. *2005, c. 283*, §  13, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-31*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-31. Complete, accurate records required

**a.**Every charitable organization, unless exempted pursuant to subsection a. or b. of section 9 of this act, and every fund raising counsel, independent paid fund raiser and commercial co-venturer subject to the provisions of this act shall keep complete and accurate records of its activities in this State as may be required by this act, in such form as will enable them to accurately provide the information required by this act or regulations promulgated under the authority of this act. The records shall be made available upon demand by the Attorney General. Where such records include the names, addresses and telephone numbers of contributors and amounts contributed by them and home addresses and home telephone numbers of any of the organization's officers, directors, trustees, employees or vendors required to provide such information pursuant to paragraph (5) of subsection b. of section 7 of this act, this information shall not be considered a matter of public record and shall not be made available for public inspection, shall not be used for a purpose inconsistent with this act, and shall be removed from the record in the custody of the Attorney General at such time that such information is no longer necessary for the enforcement of this act. The records shall be maintained for a period of at least three years after the end of the period of time to which they relate.

**b.**In addition to subsection a. of this section, every fund raising counsel or independent paid fund raiser subject to subsection g. of section 10 of this act shall maintain during each solicitation campaign and for not less than three years after its completion, the following records:

**(1)**A record of all contributions, including the name and address of each contributor and the date and amount of the contribution, except that record keeping with regard to donations of goods and personal property shall be limited to the dollar value received by or accruing to the charitable organization and shall be determined by regulation;

**(2)**The name, location and account number of each bank or other financial institution in which the fund raising counsel or independent paid fund raiser has deposited revenue from the solicitation campaign; and

**(3)**Any other information as may be prescribed by rules adopted by the Attorney General.

**c.**In addition to subsections a. and b. of this section, a fund raising counsel or independent paid fund raiser subject to subsection g. of section 10 of this act shall also maintain during each solicitation campaign, and for not less than three years after the completion of such campaign, the following records, which shall be available for inspection upon demand by the Attorney General:

**(1)**The name, home address and telephone number of each employee, solicitor or other person involved in the solicitation;

**(2)**Records of all revenue received and expenses incurred in the course of the solicitation campaign; and

**(3)**Records of the name, address and telephone number of each contributor donating tickets and the number of tickets donated, and of the name, address and telephone number of each organization receiving donated tickets for use by others, including the number of tickets for use by others, if an

N.J. Stat. § 45:17A-31

independent paid fund raiser sells tickets to an event and represents that tickets will be donated for use by another.

**d.**A fund raising counsel or independent paid fund raiser who performs services for a charitable organization exempt pursuant to section 9 of this act shall nonetheless be subject to the requirements of this section.

**e.**Any material change in any information filed with the Attorney General pursuant to this act shall be reported in writing to the Attorney General within 10 business days of the change.

## History

L. *1994, c. 16*, §  14.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-32*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 45. Professions and Occupations (Subts. 1 — 2) > Subtitle 2. Other Regulated Occupations (Chs. 17 — 28) > Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-32. Statements required to be truthful; coercion prohibited; unlawful acts; practices

**a.**Any statement, whether oral or written, made by a charitable organization, or on behalf of a charitable organization by persons including, but not limited to commercial co-venturers, fund raising counsels, independent paid fund raisers or solicitors shall be truthful.

**b.**A charitable organization shall establish and exercise control over fund raising activities conducted for its benefit, including approval of all written contracts and agreements, and shall assure that fund raising activities are conducted without coercion.

**c.**The following acts and practices are declared unlawful as applied to the planning, conduct, or execution of any solicitation or charitable sales promotion:

**(1)**To misrepresent the purpose or nature of the charitable institution or the purpose or beneficiary of a solicitation; to solicit contributions for a purpose other than the charitable purpose expressed in the statement of the charitable organization or expend contributions in a manner inconsistent with that purpose, or to fail to disclose any material fact. A misrepresentation may be accomplished by words or conduct;

**(2)**To violate or fail to comply with any of the applicable provisions of this act or the rules adopted under authority of this act;

**(3)**To violate or fail to comply with any of the applicable provisions of the consumer fraud law, P.L.1960, c.39 (*C.56:8-1* et seq.) or the regulations adopted pursuant to that act;

**(4)**To utilize a name, symbol or statement so closely related or similar to that used by another charitable organization and registered by that organization with the United States Patent and Trademark Office or registered pursuant to *R.S.56:2-1* et seq. that its use would tend to confuse or mislead a solicited person or to solicit contributions in a manner or through representations that falsely imply or are likely to create the mistaken belief that the contributions are solicited by or on behalf of another charitable organization;

**(5)**To utilize or exploit registration so as to lead any person to believe that registration constitutes or implies an endorsement or approval by the State;

**(6)**To distribute any form of membership badges, shields, courtesy cards or cards of a similar nature identifying the organization in connection with or in any manner related to the solicitation of funds or contributions for or on behalf of the organization in the case of any charitable organization that limits its membership to persons who are or formerly were employed as officers statutorily authorized to enforce the criminal laws of this State or that is a parent organization that includes local units that so limit membership;

**(7)**To utilize information, statements or communications that, although literally true, are presented in a manner that has the capacity to mislead the average consumer;

N.J. Stat. § 45:17A-32

**(8)**To utilize a name, symbol or statement so closely related or similar to that used by any organization that is affiliated with, related to, recognized by or organized for the benefit of emergency service employees, officers statutorily authorized to enforce the criminal laws of this State, or a governmental agency in such a way that its use would tend to confuse or mislead a solicited person or to create the erroneous belief that the contributions are solicited by or on behalf of an organization affiliated with, related to, recognized by or organized for the benefit of emergency service employees, officers statutorily authorized to enforce the criminal laws of this State, or a governmental agency;

**(9)**To utilize a name, symbol or statement that misrepresents the geographic origin or location of a charitable organization or its intended beneficiaries; and

**(10)**To engage in other unlawful acts and practices as may be determined by rules adopted by the Attorney General.

**d.**It shall be unlawful for any charitable organization, fund raising counsel, independent paid fund raiser or commercial co-venturer to enter into any contract with any person who is required to have registered and failed to do so.

**e.**It shall be unlawful for any person to represent that tickets to events will be donated by another, unless the following requirements have been met:

**(1)**The fund raising counsel or independent paid fund raiser shall obtain commitments, in writing and notarized, from charitable organizations stating that they will accept donated tickets and specifying the number of tickets they are willing to accept and for which they are able to provide transportation; copies of such written commitments shall be filed with the Attorney General;

**(2)**The independent paid fund raiser has taken measures to prevent solicitation of contributions for donated tickets in excess of the number of ticket commitments received from charitable organizations; and

**(3)**The number of tickets sold will not be greater than the number of seats available at the facility for each event or performance.

# History

L. *1994, c. 16*, §  15; amended *1998, c. 123*, §  1, eff. Nov. 9, 1998; *2005, c. 283*, §  10, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

## *N.J. Stat. § 45:17A-33*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-33. Attorney General, designee constituted agency head; violations, penalties

**a.**For purposes of the "Administrative Procedure Act," P.L.1968, c.410 (*C.52:14B-1* et seq.), the Attorney General or his designee shall constitute the agency head and have the final decision making power.

**b.**After notice and an opportunity for a hearing, the Attorney General may revoke, or suspend any registration upon a finding that the registrant or any officer, director, trustee or principal salaried executive staff employee of a registrant or any other person subject to the provisions of *P.L.1994, c.16* (*C.45:17A-18* et seq.):

**(1)**Has filed a registration statement containing false or misleading facts or omitting material facts;

**(2)**Has violated or failed to comply with any of the provisions of this act or the rules adopted under authority of this act;

**(3)**Has engaged in the use or employment of dishonesty, fraud, deception, misrepresentation, false promise or false pretense;

**(4)**Has been convicted of any criminal offense committed in connection with the performance of activities regulated under this act or any criminal offense involving untruthfulness or dishonesty or any criminal offense relating adversely to the registrant's fitness to perform activities regulated by this act. For the purposes of this paragraph, a plea of guilty, non vult, nolo contendere or any other similar disposition of alleged criminal activity shall be deemed a conviction;

**(5)**Has had the authority to engage in charitable activities denied, revoked or suspended by New Jersey or any other state or jurisdiction;

**(6)**Has been adjudged liable in an administrative or civil proceeding involving theft, fraud or deceptive business practices including, but not limited to, any finding of unlawful practice or practices related to the solicitation of contributions or the administration of charitable assets, regardless of whether that finding was made in the context of an injunction, a proceeding resulting in penalties, consented to in an assurance of voluntary compliance or any similar order or legal agreement with any state or federal agency;

**(7)**Has engaged in other forms of misconduct as may be determined by rules adopted by the Attorney General.

**c.**Whenever it shall appear to the Attorney General that a person has engaged in, is engaging in, or is about to engage in, any act or practice declared unlawful by this act, or when the Attorney General determines it to be in the public interest to inquire whether a violation may exist, the Attorney General may:

**(1)**Require any person to file, on a form to be prescribed by the Attorney General, a statement or report in writing under oath, or otherwise, concerning any relevant and material information in connection with an act or practice subject to this act;

**(2)**Examine under oath any person in connection with any act or practice subject to this act;

N.J. Stat. § 45:17A-33

**(3)**Inspect any location from which the activity regulated by this act is conducted;

**(4)**Examine any goods, ware or items used in the rendering of any of the services contained in this act;

**(5)**Require an audited financial statement of the financial records of the organization or person registered, exempted or required to be registered under this act, prepared in accordance with generally accepted accounting principles or other comprehensive basis of accounting approved for use by the Attorney General by regulation which has been audited in accordance with generally accepted auditing standards by an independent certified public accountant and any management letters prepared by the auditor in connection with the audit commenting on the internal accounting controls or management practices of the organization;

**(6)**Examine any book, document, account, computer data, literature, publication or paper maintained by or for any organization or person registered, exempted or required to be registered under this act, in the course of engaging in the activities regulated by this act;

**(7)**Apply to Superior Court for an order to impound any record, book, document, account, computer data, literature, publication, paper, goods, ware, or item used or maintained by any organization or person registered, exempted or required to be registered under this act in the regular course of engaging in the activities regulated by this act or rules adopted under this act;

**(8)**In order to accomplish the objectives of this act, or the rules adopted under this act, hold investigative hearings as necessary and issue subpoenas to compel the attendance of any person or the production of books, records, computer data, literature, publication or papers at any investigative hearing or inquiry.

**d.**Any person who engages in any conduct or an act in violation of any provision of this act and who has not previously violated this act shall, in addition to any other relief authorized by this or any other law, be liable for a civil penalty of not more than $10,000 for the first violation of this act.

For a second violation of this act, or if a person is found liable for more than one violation of this act within a single proceeding, the liability for the second violation shall not exceed a civil penalty in the amount of $20,000.

For a third violation of this act, or if a person is found liable for more than two violations of this act within a single proceeding, the liability for a third or any succeeding violation shall not exceed a civil penalty in the amount of $20,000 for each additional violation.

In lieu of an administrative proceeding or an action in the Superior Court, the Attorney General may bring an action for the collection or enforcement of civil penalties for the violation of any provision of this act. The action may be brought in a summary manner, pursuant to the "Penalty Enforcement Law of 1999," *P.L.1999, c.274* (*C.2A:58-10* et seq.) and the Rules Governing the Courts of the State of New Jersey governing actions for the collection of civil penalties, in the Municipal Court or Special Civil Part of the Law Division of the Superior Court in the municipality or county where the offense occurred. Process in the action may be by summons or warrant. If the defendant in the action fails to answer the action, the court shall, upon finding that an unlawful act or practice has been committed by the defendant, issue a warrant for the defendant's arrest in order to bring the person before the court to satisfy the civil penalties imposed.

In an action commenced pursuant to this section, the court may order restored to any person in interest any moneys or property acquired by means of an unlawful act or practice. An action alleging the unregistered practice of the activities regulated by this act may be brought pursuant to this section or, where injunctive relief is sought, by an action commenced in the Superior Court. In an action brought pursuant to this act, the Attorney General or the court may order the payment of attorney's fees and costs for the use of the State.

**e.**Whenever it shall appear to the Attorney General that a violation of this act has occurred, is occurring, or will occur, the Attorney General, in addition to any other proceeding authorized by law, may seek and obtain in a summary proceeding in the Superior Court an injunction prohibiting the act or practice. In the proceeding the court may assess a civil penalty in accordance with the provisions of this act, order restoration to any person in

N.J. Stat. § 45:17A-33

interest of any moneys or property, real or personal, acquired by means of an unlawful act or practice and may enter any orders necessary to prevent the performance of an unlawful practice in the future and to remedy fully any past unlawful activity.

**f.**Upon the failure of any person to comply within 10 days after service of any order of the Attorney General directing payment of penalties, attorney's fees, costs or restoration of moneys or property as authorized by this act, the Attorney General may issue a certificate to the Clerk of the Superior Court that the person is indebted to the State for the payment. A copy of the certificate shall be served upon the person against whom the order was entered. The clerk shall immediately enter upon the record of docketed judgments the name of the person so indebted and of the State, a designation of the statute under which each payment was directed, the amount of each payment, a listing of property ordered restored, and the date of the certification. The entry shall have the same force and effect as the entry of a docketed judgment in the Superior Court and the Attorney General shall have all rights and remedies of a judgment creditor, in addition to exercising any other available remedies.

**g.**If a person fails or refuses to file any statement or report, or fails or refuses to grant access to premises from which activities regulated by this act are conducted in any lawfully conducted investigative matter, or fails to obey a subpoena issued pursuant to this act, the Attorney General may apply to the Superior Court and obtain an order:

    **(1)**Adjudging that person in contempt of court and assessing civil penalties in accordance with the amounts prescribed by this act;

    **(2)**Enjoining the conduct of any practice in violation of this act; or

    **(3)**Granting other relief as required.

**h.**If a person who refuses to testify or produce any computer data, book, paper, or document in any proceeding under this act for the reason that the testimony or evidence, documentary or otherwise, required of him may tend to incriminate him, or convict him of a crime, is directed to testify or to produce the computer data, book, paper, or document by the Attorney General, he shall comply with the direction.

    A person who is entitled by law to and does assert a privilege, and who complies with the direction of the Attorney General, shall not thereafter be prosecuted or subject to any penalty or forfeiture in any criminal proceeding which arises out of and relates to the subject matter of the proceeding. No person so testifying shall be exempt from prosecution or punishment for perjury or false swearing committed by him in giving the testimony or from any civil or administrative action arising from the testimony.

**i.**In addition or as an alternative to revocation or suspension of a registration, the Attorney General may, after affording an opportunity to be heard and finding a violation of this act:

    **(1)**Assess civil penalties in accordance with this act;

    **(2)**Direct that any person cease and desist from any act or practice in violation of this act or take necessary affirmative corrective action with regard to any unlawful act or practice;

    **(3)**Order any person to restore to any person aggrieved by an unlawful act or practice any money or property, real or personal, acquired by means of any unlawful act or practice, except that the Attorney General shall not order restoration in a dollar amount greater than those moneys received by the registrant or his agent or any other person violating this act;

    **(4)**Order the payment of attorney's fees and costs for the use of the State; or

    **(5)**Authorize the release of sums from any bond maintained pursuant to this act in satisfaction of assessments.

**j.**Whenever a person engages in any act or practice in violation of this act the Attorney General may, after notice and opportunity to be heard and upon a finding that the act or practice has occurred, enter an order:

    **(1)**Directing the person to cease and desist from that unlawful act or practice;

    **(2)**Assessing civil penalties in accordance with this act;

N.J. Stat. § 45:17A-33

**(3)** Directing that person restore to any person aggrieved by the unlawful act or practice any money or property, real or personal, acquired by means of the unlawful act or practice, except that the Attorney General shall not order restoration in a dollar amount greater than those moneys received by the registrant, agent or any other person violating this act;

**(4)** Directing payment of attorney's fees and costs for the use of the State; or

**(5)** Authorizing the release of sums from any bond maintained pursuant to *P.L.1994, c.16* (*C.45:17A-18* et seq.) in satisfaction of assessments.

**k.** When it shall appear to the Attorney General that a person against whom an order pursuant to this section has been entered has violated the order, the Attorney General may initiate a summary proceeding in the Superior Court for enforcement of the order. Any person found to have violated such an order shall be ordered to comply with the prior administrative order and may be ordered to pay civil penalties in the amount of not more than $25,000 for each violation of the order. If a person fails to pay a civil penalty assessed by the court for violation of an order, the court assessing the unpaid penalty is authorized, upon application of the Attorney General, to grant any relief which may be obtained under any statute or court rule governing the collection and enforcement of penalties.

**l.** In any administrative proceeding on a complaint alleging a violation of this act, the Attorney General may issue subpoenas to compel the attendance of witnesses or the production of computer data, books, records, or documents at the hearing on the complaint as provided by this act.

**m.** In addition to any other action or remedy available under this act, a charitable organization aggrieved by a violation of paragraph (4) or (8) of subsection c. of section 15 of this act may initiate a civil action or assert a counterclaim in any court of competent jurisdiction against the violator. Upon establishing the violation, the charitable organization shall recover treble its damages or treble the violator's profits, whichever is greater. In all actions under this subsection the court shall award reasonable attorney's fees, filing fees and reasonable costs of suit.

**n.** Notwithstanding any other provision of this section to the contrary, a parent organization may be held accountable for actions related to information filed on behalf of a local unit only if the parent organization has filed information knowing that the information is false or misleading or knowing that material facts are omitted.

**o.** Notwithstanding any other provision of this section to the contrary, any local unit that has provided to its parent organization timely, truthful and complete information and otherwise conducted itself in compliance with the provisions of this act, shall not be held accountable for the misconduct of a parent organization, including, but not limited to, the failure of the parent organization to file timely reports on behalf of the local unit.

## History

L. *1994, c. 16*, § 16; *2005, c. 283*, § 11, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes

Copyright © 2020 All rights reserved.

**End of Document**

### *N.J. Stat. § 45:17A-34*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

***LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)***

## § 45:17A-34. Powers of Attorney General unaffected

Nothing in this act shall be construed to limit, impair or modify any of the common law powers previously afforded to the Attorney General under the common law.

## History

L. *1994, c. 16*, §  17.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-35*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-35. Ability of municipality to enact rules, ordinances unaffected

Nothing in this act shall be construed to limit, impair or modify the ability of any municipality to enact rules or ordinances to regulate the solicitation of contributions within its jurisdiction, provided that those rules or ordinances are in addition to and not duplicative of or in conflict with the provisions of this act. To the extent that a municipal ordinance is violative of this act it is invalid.

## History

L. *1994, c. 16*, §  18.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-36*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes > Title 45. Professions and Occupations (Subts. 1 — 2) > Subtitle 2. Other Regulated Occupations (Chs. 17 — 28) > Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-36. Registrations previously issued not affected

Nothing in this act shall affect the validity of any registration previously issued by the Attorney General, but all persons currently registered shall in all other respects be subject to the provisions of this act.

## History

L. *1994, c. 16*, § 19.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-37*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-37. Establishment of telephone information line

**a.**The Attorney General shall establish a telephone information line which shall be readily accessible to the public which shall offer information concerning the charitable organizations, fund raising counsels, independent paid fund raisers and solicitors registered in accordance with the requirements of this act.

**b.**The information available to the public through the telephone information line shall include:

**(1)**The public information, as required by this act, provided by registration statements, reports, notices, contracts or agreements, including those between charitable organizations and fund raising counsels, independent paid fund raisers, and commercial co-venturers;

**(2)**The information provided by a solicitor in an application for registration and reregistration in accordance with section 11 of this act;

**(3)**any other information which the Attorney General deems appropriate.

## History

L. *1994, c. 16*, §  20.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

### *N.J. Stat. § 45:17A-38*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-38. Required statement regarding information on file

Any printed solicitation, written confirmation, receipt or written reminder of a contribution issued by a charitable organization, independent paid fund raiser or solicitor concerning a solicitation or contribution on behalf of a charitable organization that is registered pursuant to this act shall contain the following statement which shall be conspicuously printed:

"INFORMATION FILED WITH THE ATTORNEY GENERAL CONCERNING THIS CHARITABLE SOLICITATION AND THE PERCENTAGE OF CONTRIBUTIONS RECEIVED BY THE CHARITY DURING THE LAST REPORTING PERIOD THAT WERE DEDICATED TO THE CHARITABLE PURPOSE MAY BE OBTAINED FROM THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY BY CALLING 000-000-0000 AND IS AVAILABLE ON THE INTERNET AT *www.xxxxxxxxxx.xxx.* REGISTRATION WITH THE ATTORNEY GENERAL DOES NOT IMPLY ENDORSEMENT."

## History

L. *1994, c. 16*, §  21; *2005, c. 283*, §  12, eff. July 8, 2006.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

### *N.J. Stat. § 45:17A-39*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

## § 45:17A-39. Applicability of act

The provisions of this act shall apply to any person engaging in any of the activities regulated by this act, including persons whose principal place of business is located outside this State.

## History

L. *1994, c. 16*, §  22.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

**End of Document**

## *N.J. Stat. § 45:17A-40*

This section is current through New Jersey 219th First Annual Session, L. 2020, c. 37, and J.R. 1 (which is all 2020 legislation received through June 19, 2020)

*LexisNexis® New Jersey Annotated Statutes  >  Title 45. Professions and Occupations (Subts. 1 — 2)  >  Subtitle 2. Other Regulated Occupations (Chs. 17 — 28)  >  Chapter 17A. Charitable Registration and Investigation Act (§§ 17A-1 — 45:17A-40)*

# § 45:17A-40. Fees; recovery of costs

Fees shall be established, prescribed or charged by the Attorney General pursuant to his regulatory authority to the extent necessary to defray all proper expenses incurred by the Attorney General and any staff employed to administer this act, provided that fees shall not be fixed at a level that will raise amounts in excess of the amount estimated to be so required and provided, further, that any fees set by the Attorney General shall not exceed the following amounts:

**a.**A charitable organization which is required pursuant to section 8 of this act to file a short form registration statement and received gross contributions of not more than $10,000 during the most recently filed fiscal year shall not be required to pay an annual registration fee.

**b.**A charitable organization which is required pursuant to section 8 of this act to file a short form registration statement and received gross contributions in excess of $10,000 during the most recently filed fiscal year of the organization shall pay an annual registration fee of not more than $30 a year.

**c.**A charitable organization which is required pursuant to section 7 of this act to file a long form registration statement and received gross contributions of not more than $100,000 during the most recently filed fiscal year of the organization shall pay an annual registration fee of not more than $60 a year.

**d.**A charitable organization which is required pursuant to section 7 of this act to file a long form registration statement and received gross contributions of more than $100,000 but not more than $500,000 during the most recently filed fiscal year of the organization shall pay an annual registration fee of not more than $150 a year.

**e.**A charitable organization which is required pursuant to section 7 of this act to file a long form registration statement and received gross contributions of more than $500,000 during the most recently filed fiscal year of the organization shall pay an annual registration fee of not more than $250 a year.

**f.**Contract filing fees established pursuant to this act shall be set at not more than $30 for each such fee.

**g.**A parent organization that registers local units in accordance with the provisions of subsection e. of section 7 or subsection c. of section 8 of this act shall pay an additional fee not to exceed $10 for each local unit.

All fees payable to the Attorney General and any civil penalties imposed by the Attorney General in accordance with the provisions of this act shall be paid to the Attorney General and shall be forwarded to the State Treasurer and become part of the General Fund. These fees and penalties shall be available to the Attorney General on a nonlapsing basis to effectuate the purposes of this act.

# History

N.J. Stat. § 45:17A-40

L. *1994, c. 16*, §  23.

LexisNexis® New Jersey Annotated Statutes
Copyright © 2020 All rights reserved.

---

**End of Document**